STEPHEN P. PEPE  (S.B. #43615)
BRENT J. NORTH  (S.B. #186249)
RENEE M. SPIGARELLI (S.B. # 218036)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California  92660
Telephone: (949) 760-9600
Facsimile: (949) 823-6994

MARK E. REAGAN (S.B. #143438)
MARK A. JOHNSON (S.B. #191610)
HOOPER, LUNDY & BOOKMAN, INC.
180 Montgomery Street, Suite 650
San Francisco, CA  94104
Telephone: (415) 875-8500
Facsimile: (415) 875-8519

Attorneys for The Chamber of Commerce of the
United States, California Chamber of Commerce,
Employers Group, California Healthcare
Association, California Manufacturers and
Technology Association, California Association of
Health Facilities, California Association of Homes
& Services for the Aging, Bettec Corporation,
Marksherm Corporation, Zilaco, Inc., Zilaco, Del
Rio Healthcare Inc., Beverly Health &
Rehabilitation Services, Inc. dba Beverly Manor --
Costa Mesa, Internext Group.

STEPHEN A. BOKAT
National Chamber Litigation Center, Inc.
1615 H. Street, N.W.
Washington, DC  20062
Telephone: (202) 463-5337
Facsimile: (202) 463-5346
Of Counsel for The Chamber of Commerce of The
United States

FILED
CLERK, U.S. DISTRICT COURT

APR 1 1 2002

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

ENTER ON ICMS

1 8 2002

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| The Chamber of Commerce of the United States, California Chamber of Commerce, Employers Group, California Healthcare Association, California Manufacturers and Technology Association, California Association of Health Facilities, California Association of Homes & Services for the Aging, Bettec Corporation, Marksherm Corporation, | Case No. SACV 02-377 DOC (ANx) |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**[28 U.S.C. §§ 2201-2202]**

**[F.R.C.P. 65]**

NB1:557549.4

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1     Zilaco, Inc., Zilaco, Del Rio Healthcare

2     Inc., Beverly Health & Rehabilitation Services, Inc. dba Beverly Manor --

3     Costa Mesa, Internext Group

4               Plaintiffs,

5                v.

6     Bill Lockyer in his capacity as Attorney General of the State of

7     California, The Department of Health Services, Frank G. Vanacore as the

8     Chief of the Audit Review and Analysis Section of the California

9     Department of Health Services, and Diana M. Bontá, R.N., Dr., P.H. as

10     the Director of the California Department of Health Services and

11     DOES 1 through 10

12              Defendants.

13         Plaintiffs CHAMBER OF COMMERCE OF THE UNITED STATES

14 ("US Chamber"), CALIFORNIA CHAMBER OF COMMERCE ("California

15 Chamber"), EMPLOYERS GROUP, CALIFORNIA HEALTHCARE

16 ASSOCIATION ("CHA"), CALIFORNIA MANUFACTURERS AND

17 TECHNOLOGY ASSOCIATION ("CMTA"), CALIFORNIA ASSOCIATION OF

18 HEALTH FACILITIES ("CAHF"), CALIFORNIA ASSOCIATION OF HOMES

19 & SERVICES FOR THE AGING ("CAHSA"), BETTEC CORPORATION

20 ("Bettec"), MARKSHERM CORPORATION ("Marksherm"), ZILACO, INC.,

21 ZILACO, DEL RIO HEALTH CARE, INC. ("Del Rio"), BEVERLY HEALTH &

22 REHABILITATION SERVICES, INC. dba BEVERLY MANOR – COSTA MESA

23 ("Beverly Manor"), and THE INTERNEXT GROUP ("Internext"), (collectively,

24 "Plaintiffs"), by and through their counsel, for their complaint against defendants,

25 BILL LOCKYER, Attorney General of the State of California ("Attorney General")

26 the Department of Health Services, Frank G. Vanacore as the Chief of the Audit

27 Review and Analysis Section of the California Department of Health Services, and

28 Diana M. Bontá, R.N., Dr., P.H. as the Director of the California Department of

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Health Services and DOES 1 through 10 (collectively, "Defendants"), upon
knowledge and belief allege:

# I.
## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this suit
pursuant to 28 U.S.C. Section 1331 as Plaintiffs' claims arise under:

   a.     the due process and equal protection provisions of the
Fourteenth Amendment to the United States Constitution – which
incorporates the free speech provisions of the First Amendment.

   b.     Article VI of the United States Constitution which
designates the Constitution and Laws of the United States as the
supreme Law of the Land; and

   c.     the laws of the United States, namely, the National Labor
Relations Act, 29 U.S.C. Section 141 *et seq*, the Labor Management
Reporting and Disclosure Act, 29 U.S.C. Section 401 *et seq*, and the
Medicare Act and Medicaid Act, 42 U.S.C. Section 1395 *et seq*. and
1396 *et seq*.

2.     This Court has supplemental jurisdiction over this subject matter
pursuant to 28 U.S.C. Section 1367(a) as Plaintiffs' claims, arising under the
California Constitution, are so closely related to the federal question claims that
they form part of the same case or controversy under Article III of the United States
Constitution.

3.     Venue is proper in this Court pursuant to 28 U.S.C. Section
1391(b) as this Court is sited in the Federal judicial district where a substantial part
of the events giving rise to Plaintiffs' claims have occurred, are now occurring, and
will occur in the future if not curtailed through actions of this Court.  Employer
members of Plaintiffs US Chamber, California Chamber, Employers Group, CHA,
CMTA, CAHF, and CAHSA are situated in this district and are and will continue to

**COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF**

be adversely affected by the irreparable harms sought to be remedied and prevented by this Court's action upon this Complaint.  In addition, Plaintiffs CAHF, Bettec, Zilaco, Inc., Zilaco, Marksherm, Del Rio and Internext are situated in Los Angeles County and are and will continue to be affected by the harms sought to be remedied by this Complaint.  Beverly Manor is located in Orange County and is and will continue to be adversely affected by the harms sought to be remedied by this Complaint.

## II.
## NATURE OF ACTION

4.    This action seeks declaratory relief pursuant to the Declaratory Relief Act, 28 U.S.C. Sections 2201-2202, that California Assembly Bill 1889, contained in California Government Code Sections 16645 through 16649 ("AB 1889"), is unconstitutional under the Federal and California Constitutions, is preempted under the National Labor Relations Act, 29 U.S.C. Section 151 *et seq.* ("NLRA"), the Labor Management Reporting and Disclosure Act, 29 U.S.C. Section 401 *et seq.* ("LMRDA"), and is preempted by and violates the provisions of the California State Medicaid Plan established pursuant to the requirements of the Medicare Act, 42 U.S.C. Section 1395 *et seq.* ("Medicare Act") and Medicaid Act, 42 U.S.C. Section 1996 *et seq* ("Medicaid Act").  It also seeks preliminary and permanent injunctive relief enjoining the enforcement of AB 1889 and other related actions undertaken by defendants pursuant to its provisions.  (A copy of AB 1889 is attached hereto as Exhibit A.)

## III.
## PARTIES

5.    Plaintiff US Chamber is the world's largest business federation, representing an underlying membership of more than three million businesses and organizations of every size and in every industry sector and region of the country. It has approximately 11,000 members in the state of California.  A principle

4

**COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF**

1    function of the US Chamber is to represent the interests of its members on issues of

2    vital concern to the business community before the Congress, the Executive Branch

3    and the courts.

4                6.        More than one of the US Chamber's member employers receive

5    grants of state funds, have contracts with the State of California under which they

6    receive payments from the State in excess of $50,000 and receive state funds in

7    excess of $10,000 in a calendar year on account of their participation in state

8    programs.  Some of these employers provide services to the state in excess of

9    $50,000.  Some of these employers have employees who perform services on

10   service contracts for the state and seek reimbursement from the state.  Some of

11   these employers are currently experiencing organizing activities of labor

12   organizations, and expect to continue to experience such labor organizing activities

13   because a union representation election is scheduled in the future.  Some of these

14   employers have their supervisors and other management personnel inform

15   employees who perform work on state contracts of the potential drawbacks of

16   membership in a labor organization and the benefits of maintaining a direct

17   relationship with management.  Some of these employers pay legal counsel with

18   respect to the organizing activity to advise them of their legal rights and

19   responsibilities under the National Labor Relations Act and to assist them with

20   union organizing drives and election campaigns in an effort to inform employees of

21   the potential drawbacks of membership in a labor organization and the benefits of

22   maintaining a direct relationship with management.  Some of these employers pay

23   and retain consultants to assist them with organizing and election campaigns in an

24   effort to inform employees of the potential drawbacks of membership in a labor

25   organization and the benefits of maintaining a direct relationship with management.

26   Some of these employers pay their supervisory and management employees to

27   assist in communicating to employees the potential drawbacks of membership in a

28   labor organization and the benefits of maintaining a direct relationship with

**COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF**

management.  Some of these employers incur expenses related to the creation and distribution of print and other materials for the purpose of communicating to employees the potential drawbacks of membership in a labor organization and the benefits of maintaining a direct relationship with management.  Some of these employers lease property from the State of California to hold meetings with employees and supervisors for the purpose of informing employees of the potential drawbacks of membership in a labor organization and the benefits of maintaining a direct relationship with management.  These properties are not equally available to the general public to hold meetings free of charge.  The certification and reporting requirements of AB 1889 will cost these employers significant sums of money and resources.  In order to attempt to comply with the requirements of AB 1889, these employers must expend significant sums of money and resources.  Materials, products and services of these employers affect interstate commerce and cross state lines.

7.    Plaintiff California Chamber is an association of 13,000 employers who employ three million California employees.  One of the purposes of the California Chamber is to inform employees and assist member employers' efforts to inform employees about labor unions.  Specifically, one of the purposes of the California Chamber is to inform its member employers regarding how to lawfully advise their employees of the disadvantages of unionizing.  The California Chamber further exists to ease legislative and administrative burdens of California employers.  Protecting member employers' free speech rights, National Labor Relations Act rights, equal protection rights and right to counsel is directly germane to the purpose of the California Chamber.

8.    More than one of California Chamber's member employers receive grants of state funds, have contracts with the State of California under which they receive payments from the State in excess of $50,000 and receive state funds in excess of $10,000 in a calendar year on account of their participation in

NB1:557549.4

6

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

state programs.  Some of these employers provide services to the state in excess of $50,000.  Some of these employers have employees who perform services on service contracts for the state and seek reimbursement from the state.  Some of these employers are currently experiencing organizing activities of labor organizations, and expect to continue to experience such labor organizing activities because a union representation election is scheduled in the future.  Some of these employers have their supervisors and other management personnel inform employees who perform work on state contracts of the potential drawbacks of membership in a labor organization and the benefits of maintaining a direct relationship with management.  Some of these employers pay legal counsel with respect to the organizing activity to advise them of their legal rights and responsibilities under the National Labor Relations Act and to assist them with union organizing drives and election campaigns in an effort to inform employees of the potential drawbacks of membership in a labor organization and the benefits of maintaining a direct relationship with management.  Some of these employers pay and retain consultants to assist them with organizing and election campaigns in an effort to inform employees of the potential drawbacks of membership in a labor organization and the benefits of maintaining a direct relationship with management. Some of these employers pay their supervisory and management employees to assist in communicating to employees the potential drawbacks of membership in a labor organization and the benefits of maintaining a direct relationship with management.  Some of these employers incur expenses related to the creation and distribution of print and other materials for the purpose of communicating to employees the potential drawbacks of membership in a labor organization and the benefits of maintaining a direct relationship with management.  Some of these employers lease property from the State of California to hold meetings with employees and supervisors for the purpose of informing employees of the potential drawbacks of membership in a labor organization and the benefits of maintaining a

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1   direct relationship with management.  These properties are not equally available to

2   the general public to hold meetings free of charge.  The certification and reporting

3   requirements of AB 1889 will cost these employers significant sums of money and

4   resources.  In order to attempt to comply with the requirements of AB 1889, these

5   employers must expend significant sums of money and resources.  Materials,

6   products and services of these employers affect interstate commerce and cross state

7   lines.

8          9.    The Employers Group is an association of employers whose

9   members include 4,700 employers in California who employ over one million

10  California employees.  One of the purposes of the Employers Group is to assist

11  member employers' efforts to inform employees about labor unions.  Specifically,

12  one of the purposes of the Employers Group is to advise its member employers

13  regarding how to lawfully discuss with their employees the key considerations of

14  unionizing.  The Employers Group further exists to help ease legislative and

15  administrative burdens of California employers.  Protecting member employers'

16  First Amendment free speech rights, National Labor Relations Act rights, equal

17  protection rights and right to counsel is directly germane to the purpose of the

18  Employers Group.

19         10.    More than one of the Employers Group's member employers

20  receive grants of state funds, have contracts with the State of California under

21  which they receive payments from the State in excess of $50,000 and receive state

22  funds in excess of $10,000 in a calendar year on account of their participation in

23  state programs.  Some of these employers provide services to the state in excess of

24  $50,000.  Some of these employers have employees who perform services on

25  service contracts for the state and seek reimbursement from the state.  Some of

26  these employers are currently experiencing organizing activities of labor

27  organizations, and expect to continue to experience such labor organizing activities

28  because a union representation election is scheduled in the future.  Some of these

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF

1    employers have their supervisors and other management personnel inform

2    employees who perform work on state contracts of the potential drawbacks of

3    membership in a labor organization and the benefits of maintaining a direct

4    relationship with management. Some of these employers pay legal counsel with

5    respect to the organizing activity to advise them of their legal rights and

6    responsibilities under the National Labor Relations Act and to assist them with

7    union organizing drives and election campaigns in an effort to inform employees of

8    the potential drawbacks of membership in a labor organization and the benefits of

9    maintaining a direct relationship with management. Some of these employers pay

10   and retain consultants to assist them with organizing and election campaigns in an

11   effort to inform employees of the potential drawbacks of membership in a labor

12   organization and the benefits of maintaining a direct relationship with management.

13   Some of these employers pay their supervisory and management employees to

14   assist in communicating to employees the potential drawbacks of membership in a

15   labor organization and the benefits of maintaining a direct relationship with

16   management. Some of these employers incur expenses related to the creation and

17   distribution of print and other materials for the purpose of communicating to

18   employees the potential drawbacks of membership in a labor organization and the

19   benefits of maintaining a direct relationship with management. Some of these

20   employers lease property from the State of California to hold meetings with

21   employees and supervisors for the purpose of informing employees of the potential

22   drawbacks of membership in a labor organization and the benefits of maintaining a

23   direct relationship with management. These properties are not equally available to

24   the general public to hold meetings free of charge. The certification and reporting

25   requirements of AB 1889 will cost these employers significant sums of money and

26   resources. In order to attempt to comply with the requirements of AB 1889, these

27   employers must expend significant sums of money and resources. Materials,

28

**COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF**

1    products and services of these employers affect interstate commerce and cross state

2    lines.

3              11.    The CHA is an association of healthcare employers whose

4    members include approximately 432 employers in California who employ

5    approximately 380,000 California employees.  One of the purposes of the CHA is

6    to inform employees and assist member employers' efforts to inform employees

7    about labor unions.  Specifically, one of the purposes of the CHA is to inform its

8    member employers regarding how to lawfully advise their employees of the

9    advantages and disadvantages of unionizing.  The CHA further exists to ease

10    legislative and administrative burdens of California healthcare employers.

11    Protecting member employers' free speech rights, National Labor Relations Act

12    rights, equal protection rights and right to counsel is directly germane to the

13    purpose of the CHA.

14              12.    More than one of CHA's member employers receive grants of

15    state funds, have contracts with the State of California under which they receive

16    payments from the State in excess of $50,000 and receive state funds in excess of

17    $10,000 in a calendar year on account of their participation in state programs.

18    Some of these employers provide services to the state in excess of $50,000.  Some

19    of these employers have employees who perform services on service contracts for

20    the state and seek reimbursement from the state.  Some of these employers are

21    currently experiencing organizing activities of labor organizations, and expect to

22    continue to experience such labor organizing activities because a union

23    representation election is scheduled in the future.  Some of these employers have

24    their supervisors and other management personnel inform employees who perform

25    work on state contracts of the potential drawbacks of membership in a labor

26    organization and the benefits of maintaining a direct relationship with management.

27    Some of these employers pay legal counsel with respect to the organizing activity to

28    advise them of their legal rights and responsibilities under the National Labor

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF

Relations Act and to assist them with union organizing drives and election campaigns in an effort to inform employees of the potential drawbacks of membership in a labor organization and the benefits of maintaining a direct relationship with management. Some of these employers pay and retain consultants to assist them with organizing and election campaigns in an effort to inform employees of the potential drawbacks of membership in a labor organization and the benefits of maintaining a direct relationship with management. Some of these employers pay their supervisory and management employees to assist in communicating to employees the potential drawbacks of membership in a labor organization and the benefits of maintaining a direct relationship with management. Some of these employers incur expenses related to the creation and distribution of print and other materials for the purpose of communicating to employees the potential drawbacks of membership in a labor organization and the benefits of maintaining a direct relationship with management. Some of these employers lease property from the State of California to hold meetings with employees and supervisors for the purpose of informing employees of the potential drawbacks of membership in a labor organization and the benefits of maintaining a direct relationship with management. These properties are not equally available to the general public to hold meetings free of charge. Some of these employers are state government hospitals and public employers which receive state funds. The certification and reporting requirements of AB 1889 will cost these employers significant sums of money and resources. In order to attempt to comply with the requirements of AB 1889, these employers must expend significant sums of money and resources. Materials, products and services of these employers affect interstate commerce and cross state lines.

13.    The CMTA is an association of employers whose members include approximately 800 employers in California who employ upwards of one million California employees. The CMTA exists to ease legislative and

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF

administrative burdens of California employers. One of the purposes of the CMTA is to assist member employers' efforts to inform employees about labor unions. Specifically, one of the purposes of the CMTA is to inform its member employers regarding how to advise their employees of the disadvantages of unionizing. Protecting member employers' First Amendment free speech rights, National Labor Relations Act rights, equal protection rights and right to counsel is directly germane to the purpose of the CMTA.

14.    More than one of the CMTA's member employers receive grants of state funds, have contracts with the State of California under which they receive payments from the State in excess of $50,000 and receive state funds in excess of $10,000 in a calendar year on account of their participation in state programs. Some of these employers provide services to the state in excess of $50,000. Some of these employers have employees who perform services on service contracts for the state and seek reimbursement from the state. Some of these employers are currently experiencing organizing activities of labor organizations, and expect to continue to experience such labor organizing activities because a union representation election is scheduled in the future. Some of these employers have their supervisors and other management personnel inform employees who perform work on state contracts of the potential drawbacks of membership in a labor organization and the benefits of maintaining a direct relationship with management. Some of these employers pay legal counsel with respect to the organizing activity to advise them of their legal rights and responsibilities under the National Labor Relations Act and to assist them with union organizing drives and election campaigns in an effort to inform employees of the potential drawbacks of membership in a labor organization and the benefits of maintaining a direct relationship with management. Some of these employers pay and retain consultants to assist them with organizing and election campaigns in an effort to inform employees of the potential drawbacks of membership in a labor

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1  organization and the benefits of maintaining a direct relationship with management.

2  Some of these employers pay their supervisory and management employees to

3  assist in communicating to employees the potential drawbacks of membership in a

4  labor organization and the benefits of maintaining a direct relationship with

5  management.  Some of these employers incur expenses related to the creation and

6  distribution of print and other materials for the purpose of communicating to

7  employees the potential drawbacks of membership in a labor organization and the

8  benefits of maintaining a direct relationship with management.  Some of these

9  employers lease property from the State of California to hold meetings with

10  employees and supervisors for the purpose of informing employees of the potential

11  drawbacks of membership in a labor organization and the benefits of maintaining a

12  direct relationship with management.  These properties are not equally available to

13  the general public to hold meetings free of charge.  The certification and reporting

14  requirements of AB 1889 will cost these employers significant sums of money and

15  resources.  In order to attempt to comply with the requirements of AB 1889, these

16  employers must expend significant sums of money and resources.  Materials,

17  products and services of these employers affect interstate commerce and cross state

18  lines.

19        15.    The CAHF is an association representing approximately 1,600

20  licensed skilled nursing facilities ("SNFs"), intermediate care facilities ("ICFs")

21  and intermediate care for the developmentally disabled facilities("ICF-DDs") in the

22  State of California (collectively, "long term care facilities"). While the CAHF

23  represents member organizations that are organized as both "for profit" and "not for

24  profit" entities, the majority of its membership operates long term care facilities

25  organized as "for profit" entities.  The CAHF members employ approximately

26  72,000 employees.  The CAHF exists to advocate on behalf of its member long

27  term care facilities before all relevant governmental bodies, including the executive,

28  legislative and judicial branches of the state and federal governments in order to

**COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF**

1   ensure that the interests of such facilities are advanced and not impaired in all

2   material respects. One of the fundamental purposes of the CAHF is to protect the

3   interests of its member facilities in their role as participants in the Medicaid

4   program (known as Medi-Cal in California), including ensuring that governmental

5   action involving the Medi-Cal program is consistent with the California State

6   Medicaid Plan ("State Plan") and federal Medicaid laws and regulations. Such

7   governmental action includes the application of federal and state requirements

8   involving the establishment of facility reimbursement under Medi-Cal (such as cost

9   reporting, rate setting and auditing) as well as the quality of care to be provided by

10  facilities in order to participate in the Medi-Cal program. Another fundamental

11  purpose of the CAHF is to protect members in their roles as employers, including

12  ensuring that the public policy defining the relations between member facilities and

13  their employees remains consistent with the rights and privileges secured by the

14  United States and California Constitutions, the National Labor Relations Act and

15  other federal and state labor laws and are not compromised or violated in any

16  manner.  The specific issues raised in this Complaint and the interests underlying

17  the issues are entirely consistent with the CAHF's mission and purpose as well as

18  the services provided to its members.

19          16.    Not only do the vast majority of CAHF's members receive

20  funds in excess of $10,000 through the Medi-Cal program in each calendar year (in

21  the form of reimbursement for services provided to beneficiaries), they are also

22  heavily dependent on the revenue provided through this program.  Numerous

23  CAHF member facilities (including SNFs, ICFs and ICF-DDs) obtain as much as

24  75% to 100% of their revenue through the Medi-Cal program.  The restrictions on

25  the use of such funds has had and will continue to have dramatic effects on member

26  facilities' abilities to exercise their protected Constitutional and statutory rights.

27  For example, some of these member facilities have experienced, are experiencing

28  and/or will likely experience organizing activities of labor organizations which

NB1:557549.4

14

**COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF**

1    have led to or may lead to an union representation election.  Others have

2    experienced, are experiencing and/or will likely experience activity undertaken by

3    employees represented by a labor organization to decertify the union which has led

4    to or may lead to an election.  Facilities faced with either of the above situations

5    regularly pay legal counsel or other professional consultants to advise these

6    employers of their legal rights under the National Labor Relations Act and to assist

7    them with union organizing drives and election campaigns in an effort to inform

8    employees of the potential drawbacks of membership in a labor organization and

9    benefits of maintaining or regaining a direct relationship with management.  Some

10   of these employers pay their supervisory and management employees to assist in

11   communicating to employees the potential drawbacks of membership in a labor

12   organization and the benefits of maintaining or regaining a direct relationship with

13   management.  Some of these employers incur expenses related to the creation and

14   distribution of print and other materials for the purpose of communicating to

15   employees the potential drawbacks of membership in a labor organization and the

16   benefits of maintaining a direct relationship with management.  In addition, in order

17   to attempt to comply with the requirements of AB 1889, these employers must

18   expend significant sums of money and resources.  Employers will also expend

19   significant sums of money and resources in order to attempt to comply with the

20   certification and reporting requirements of AB 1889.  The services provided by

21   CAHF's members and the products and material utilized by such members affect

22   interstate commerce.

23        17.    The CAHSA is a nonprofit, charitable, California corporation

24   that represents the interests of approximately 380 long term care, seniors housing

25   and seniors services members.  The CAHSA members operate approximately

26   10,200 skilled nursing beds in 128 SNF facilities throughout the state, each of

27   which is licensed and regulated by the DHS.  As with the CAHF's members, the

28   CAHSA's members are similarly dependent on the Medi-Cal program for revenue.

NB1:557549.4

15

**COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF**

1    Unlike the CAHF, the CAHSA members must be organized as "not for profit"

2    organizations that are sponsored by religious, fraternal, government, neighborhood,

3    minority or ethnic organizations, and each must be governed by a bona fide

4    volunteer board and be exempt from federal tax.  In advocating for its members, the

5    CAHSA's fundamental purpose and mission is substantially the same as the

6    purpose and mission of CAHF.  Numerous CAHSA member facilities receive a

7    portion of their revenue through the Medi-Cal program.  Some of these member

8    facilities have experienced, are experiencing and/or will likely experience

9    organizing activities of labor organizations which have led to or may lead to a

10    union representation election.  The restrictions AB 1889 places on the use of these

11    facilities funds has had and will continue to have dramatic effects on member

12    facilities' abilities to exercise their protected Constitutional and statutory rights.  In

13    addition, the impact of the provisions of AB 1889 are substantially the same as for

14    the employer members of the CAHF.

15            18.    Plaintiffs US Chamber, California Chamber, Employers Group,

16    CHA, CMTA, CAHF and CAHSA have organizational standing as each has at least

17    one member employer which has standing in its own right to present the claims

18    asserted herein.  Further, the interests sought to be protected are germane to the

19    associations' purposes, and neither the claims asserted nor the relief requested

20    requires that the members participate individually in the suit.

21            19.    Members of Plaintiffs' US Chamber, California Chamber,

22    Employers Group, CHA, CMTA, CAHF, and CAHSA have faced, are currently

23    facing and/or will likely face union organizing and/or decertification activities.  As

24    a result of AB 1889, these members' constitutional and statutory rights are

25    presently being chilled, impaired and impermissibly interfered with.  Further,

26    attempts at compliance with AB 1889 will require significant employer

27    expenditures.

28

20.    Bettec Corporation is the holder of a valid license issued by the Department of Health Services ("DHS") to operate the 99 bed SNF known as Sunray East Convalescent Hospital in Los Angeles, California ("Sunray"). Sunray currently participates in the Medi-Cal program and is heavily dependent on its continued participation in the program.  Sunray expects that it will incur expenditures for services provided by legal counsel and/or professional consultants to advise it of its legal rights under the National Labor Relations Board involving union organizing activity. It will also educate and train its supervisors and other management personnel on such legal rights and the manner of informing employees of the potential drawbacks of membership in a labor organization and the benefits of maintaining a direct relationship with management. It expects to pay its supervisors and other management personnel for these activities. It also expects  to create and distribute print and other materials.  Based upon its heavy reliance on the Medi-Cal program and the prohibitions of AB 1889, it will likely be unable to take any of these protected actions.  In addition, Sunray will be required to expend significant financial resources in order to attempt to comply with the provisions of AB 1889.  It will also be required to spend significant monies to attempt to comply with the certification and reporting requirements of AB 1889.

21.    Marksherm is the holder of a valid license issued by the DHS to operate the 69 bed SNF known as Crescent Bay Convalescent Hospital in Santa Monica, California ("Crescent Bay"). Crescent Bay currently participates in the Medi-Cal program and is heavily dependent on its continued participation in the program.  Certain employees of Crescent Bay are currently represented by a labor organization but no collective bargaining agreement has been reached between the labor organization and the represented employees.  Crescent Bay expects to incur expenditures for services provided by legal counsel as to its rights under the National Labor Relations Act if no agreement can be reached and how to communicate to its employees, through supervisors and other management

NB1:557549.4

17

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1    personnel, or otherwise.  Such communication will likely involve supervisors and

2    other management employees who will need education and training and will need

3    to be paid for these activities.  The creation and distribution of print and other

4    materials may also be necessary.  Based upon its heavy reliance on the Medi-Cal

5    program and the prohibitions of AB 1889, it will likely be unable to take any of

6    these protected actions.  In addition, Crescent Bay will be required to expend

7    significant financial resources to attempt to comply with the provisions of AB

8    1889.  It will also be required to spend significant monies to attempt to comply with

9    the certification and reporting requirements of AB 1889.

10          22.    Zilaco, Inc. is the holder of a valid license issued by the DHS to

11   operate the 46 bed SNF known as CherryLee Lodge Sanitarium in El Monte,

12   California ("CherryLee").  CherryLee currently participates in the Medi-Cal

13   program and is heavily dependent on the continued participation in the program.  In

14   particular, approximately 90% of CherryLee's revenue is received from

15   reimbursement provided through the Medi-Cal program.  Certain employees are

16   currently represented by a labor organization.  However, some of the represented

17   employees are seeking the decertification of the labor organization and have

18   circulated a petition amongst themselves.  CherryLee requires legal advice as to its

19   legal rights under the National Labor Relations Act but, because of its heavy

20   reliance on the Med-Cal program and the prohibitions of AB 1889, cannot obtain

21   such advice.  It likewise needs to communicate with its employees and will need to

22   utilize supervisors and other management personnel to do so.  It may also need  to

23   create and distribute print or other materials for this purpose.  As with legal advice,

24   it may be unable to take any of these protected activities.  If CherryLee could take

25   any of these actions, it would also incur significant expense in attempting to comply

26   with the provisions of AB 1889 and its certification and reporting requirements.

27          23.    Zilaco is the holder of a valid license issued by the DHS to

28   operate the 59 bed SNF known as El Monte Care Center located in El Monte,

California ("El Monte"). El Monte currently participates in the Medi-Cal program and is heavily dependent on the continued participation in the program. In particular, approximately 88% of El Monte's revenue is received from reimbursement provided through the Medi-Cal program. Certain employees are currently represented by a labor organization. However, some of the represented employees are seeking the decertification of the labor organization. El Monte requires legal advice as to its legal rights under the National Labor Relations Act but, because of its heavy reliance on the Medi-Cal program and the prohibitions of AB 1889, cannot obtain such advice. It likewise has a need to communicate with its employees and has a need to utilize supervisors and other management personnel and may need to create and distribute print or other materials for this purpose. However, El Monte may be unable to participate in any of these protected activities. If it could take any of these actions, El Monte will be required to expend significant financial resources to attempt to comply with the provisions of AB 1889 and its certification and reporting requirements.

24.    Del Rio is the holder of a valid license issued by the DHS to operate two facilities known as Del Rio Convalescent, a 99 bed SNF in Bell Gardens, California and Del Rio Gardens Care Center ("Del Rio Gardens"), and 84 bed SNF also located in Bell Gardens. Both facilities participate in the Medi-Cal program and are heavily dependent on their continued participation in the program. They have faced, are currently facing and/or will likely face union organizing and/or decertification activities. As a result of AB 1889, these plaintiffs' constitutional and statutory rights are presently being chilled, impaired and impermissibly interfered with. Further, attempts at compliance with AB 1889 will require significant expenditures.

25.    Beverly Health and Rehabilitation Services, Inc. is the holder of a valid license issued by the DHS to operate the 76 bed SNF known as Beverly Manor in Costa Mesa, California ("Beverly Manor"). It has faced, is currently

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF

1  facing and/or will likely face union organizing and/or decertification activities. As

2  a result of AB 1889, this plaintiff's constitutional and statutory rights are presently

3  being chilled, impaired and impermissibly interfered with. Further, attempts at

4  compliance with AB 1889 will require significant expenditures.

5        26.    The Internext Group ("Internext") holds valid licenses issued by

6  the DHS to operate two facilities know as Lutheran Health Facility, a 50 bed SNF

7  in Alhambra, California ("Lutheran") and Villa Gardens Health Care Unit, a 54 bed

8  SNF in Pasadena, California ("Villa Gardens"). Both facilities participate in the

9  Medi-Cal program and are heavily dependent on their continued participation in the

10  program. Based on recent union organizing activity over the last 15 to 18 months at

11  both Lutheran and Villa Gardens, both facilities expect to make expenditures

12  subject to the prohibitions of AB 1889. As a result of AB 1889, these plaintiffs'

13  constitutional and statutory rights are presently being chilled, impaired and

14  impermissibly interfered with. Further, attempts at compliance with AB 1889 will

15  require significant expenditures. The Attorney General is charged under AB 1889

16  with administering and enforcing its provisions.

17        27.    The DHS is the single state agency designated by the State of

18  California for the purpose of administering the Medi-Cal program. The Medi-Cal

19  program is a joint state-federal program established by the federal government to

20  provide health services, including long term care services to poor and needy

21  individuals who qualify under certain state and federal requirements. DHS

22  implements the federal certification requirements set forth in 42 U.S.C. Section

23  1395 *et sec* and 42 C. F. R. Sections 483.1 *et sec* (1991) in order to determine

24  whether health facilities qualify for participation in the Medi-Cal program based

25  upon the quality of care provided to their residents. It also evaluates whether

26  facilities qualify for licensure under state quality of care requirements. It also

27  establishes facility reimbursement for the purposes of the Medi-Cal program

28  through specifying cost reporting, rate setting and auditing methodologies.

28.    Frank G. Vanacore is the Chief of the Audit Review and
Analysis Section of the DHS and is responsible for sending and processing
certification forms for compliance with the provisions of AB 1889 and
recommending that facilities be terminated from the Medi-Cal program based upon
their failure to comply with the certification requirement set forth in AB 1889.

29.    Diana M. Bontá, R.N., Dr., P.H. is the Director of the California
Department of Health Services, the responsible state official for the activities of the
DHS.  Any decision to terminate a health facility from the Medi-Cal program
would be made and carried out by and under the authority of the Director.

30.    Plaintiffs are unaware of the names or identities of Does 1
through 10.

## IV.
## FACTS

31.    AB 1889 is the successor to remarkably similar legislation (AB
442) which was passed by the Legislature but vetoed by the Governor in 1999, who
cited as his reasons for vetoing AB442:

> This legislation has the potential to impose an
> unreasonable burden on businesses in that they would
> have to maintain minutely-detailed records to track goods,
> services and funds received from the State in order to
> avoid violating the provisions contained therein.  In
> addition, in the absence of a verified complaint, it would
> be extremely difficult, if not impossible, to determine the
> accuracy and truthfulness of any report or fund utilization
> submitted by an employer.
>
> Finally, AB 442 also has the potential to significantly
> increase employers' litigation costs by providing

NB1:557549.4

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF

countless opportunities for disgruntled employees to file civil actions merely in an effort to harass employers.

Governor Gray Davis September 28, 1999 veto letter to California Assembly.  (A true and correct copy is attached hereto as Exhibit B.)

32.    The Governor signed AB 1889 into law on September 28, 2000.

33.    Under AB 1889, State contractors and recipients of State funds are prohibited from incurring costs "to assist, promote, or deter union organizing", unless they establish costly accounting procedures to attempt to document the segregation of funds so that no State funds contribute to the prohibited activity. Cal. Govt. Code §§16645.1(a) and (b), 16645.2(a) and (b).  Moreover, State contractors are required to provide proof of such accounting upon request by the Attorney General. *See id*.  Violators are assessed treble damages—the amount allegedly improperly expended, plus a civil penalty of double that amount. *See* Cal. Gov't Code §§ 16645.1(c), 16645.2(d).  Furthermore, State contractors may not assist, promote, or deter union organizing by employees who are performing work on a service contract for the State or State agency, regardless of whether the employer does so with other sources. *See* Cal. Gov't Code § 16645.3(a).  Penalties are assessed at $1,000 per employee per violation.  An employer who conducts business on State property pursuant to a contract or lease may not use that property to hold a meeting with any employees or supervisors if the purpose is to assist, promote, or deter union organizing. *See* Cal. Gov't Code § 16645.5(a).  Violators are assessed a civil penalty of $1,000 per employee per meeting. *See* Cal. Gov't Code § 16645.5(b).  AB 1889 further prohibits "legal and consulting fees and salaries of supervisors and employees, incurred for research for, or preparation, planning, or coordination of, or carrying out, an activity to assist, promote, or deter

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1    union organizing." *See* Cal. Gov't Code § 16645.6(a). AB 1889 further prohibits

2    private employers which receive in excess of $50,000 pursuant to state contracts

3    and $10,000 pursuant to state programs from using state funds to assist, promote, or

4    deter union organizing. Cal. Gov't Code §§ 16645.4 and 16645.7. Public

5    employers which receive state funds are also prohibited from using state funds to

6    assist, promote or deter unionization, and public officials who knowingly authorize

7    an expenditure which violates that prohibition are personally liable for the

8    expenditures. Cal. Gov't Code § 16646.6. However, AB 1889 does not prohibit

9    activities performed, or expenses incurred, in connection with addressing a

10   grievance or negotiating or administering a collective bargaining agreement. Cal.

11   Gov't Code § 16647. None of these provisions address the quality or manner of

12   providing services. Rather, they restrict employers' expenditures, and therefore any

13   activity, to engage in even non-coercive speech, thus, requiring employer neutrality

14   toward unionization and to forfeit rights they have under Federal law.

15         34.   In marked contrast, AB 1889 explicitly allows an employer to

16   allow unions access to the employer's facilities, including those leased from the

17   State; and it specifically permits an employer to voluntarily enter into an agreement

18   with a union recognizing the union as the exclusive representative of its employees.

19   *See* Cal. Gov't Code §16647.

20         35.   Beginning March 1, 2002, the DHS Services Audit Division

21   began sending out a letter requiring that SNFs and ICFs certify that they will

22   comply with AB 1889, specifically with California Government Code Section

23   16645.7, or forfeit their right to participate in, and receive funds from, the Medi-Cal

24   program. Recipients of this letter were given only forty-five days from the letter's

25   date, February 28, 2002, or until April 15, 2002, to respond. (A true and correct

26   copy of this letter is attached hereto as Exhibit C.) On March 15, 2002, the DHS

27   subsequently sent the identical letters and certification demands to ICF-DDs

28   participating in the Medi-Cal program. (A true and correct copy of the letter is

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1    attached hereto as Exhibit D.)  Based upon statements made by defendant Vanacore

2    and other authorized DHS representatives, plaintiffs are informed and, therefore,

3    believe that identical letters and certification demands will  be sent to acute care

4    hospitals participating in the Medi-Cal program.

5                                             **V.**

6              **CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**

7          36.    AB 1889 is unconstitutional under both the United States and

8    California Constitutions in the following particulars:

9                  a.    AB 1889 violates the Fourteenth Amendment to the

10                United States Constitution which protects the freedom of speech

11                guarantees found in the First Amendment to the United States

12                Constitution and Article I, Section 2(a) of the California Constitution

13                in ways that include, but are not limited to:  (1) engaging in content

14                based discrimination by allowing State funds and State property to be

15                used for expression and other activities to promote unionization (by

16                unions and by employers complicit in extending recognition to unions

17                without employee free choice elections), while repressing expression

18                by employers concerning the merits of unionization; (2) requiring

19                State contractors, grantees of State funds, State program participants

20                and lessees of State property to relinquish their freedom of speech

21                rights as a condition of entering into State service contracts, receiving

22                State monies, participating in State programs and leasing State land;

23                (3) prohibiting public employers and public officials from exercising

24                their constitutional rights to engage in non-neutral speech concerning

25                unionization; (4) exacting a penalty for the exercise of constitutional

26                rights; (5) placing economic and administrative burdens on those who

27                exercise constitutional rights by requiring expensive and onerous

28                record keeping requirements so as to show that constitutionally

protected activities were not funded by State funds; (6) being so vague as to chill the exercise of protected free speech rights; and (7) imposing a prior content based restraint on constitutionally protected expressions.

   b. AB 1889 violates the Equal Protection Clause guarantees of the Fourteenth Amendment of the United States Constitution and Article I, Section 7(a) of the California Constitution in ways that include, but are not limited to:  (1) favoring unions wishing to advance their cause with employees while requiring State contractors, grantees, program participants, public employers, public officials and lessees questioning unionization to remain silent and forego free speech and NLRA rights during union organizing drives and elections; (2) favoring employers who recognize unions without elections over employers who do not; (3) treating differently all California employers who lease, contract with, or receive money from the State than those employers who do not fit within those categories, thus allowing one group constitutional and NLRA rights, while denying the other group theirs; and (4) denying State contractors, fund recipients, program participants, public employers, public officials and lessees the right to consult with and be represented by legal counsel.

   c. AB 1889 violates the Due Process Clause guarantees of the Fourteenth Amendment of the United States Constitution and Article I, Section 7(a) of the California Constitution in ways that include, but are not limited to denying State contractors, fund recipients, program participants and lessees the right to consult with and be represented by legal counsel.

   37. AB 1889 is preempted by the NLRA, including preemption under 8(c) of the NLRA which states, "The expressing of any views, argument, or

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit." 29 U.S.C. section 158(c). AB 1889 is preempted under 8(c) of the NLRA pursuant to the *Garmon* preemption under *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S. Ct. 773, L. Ed. 2d 775 (1959), in that AB 1889 purports to frustrate or prohibit conduct permitted and rights guaranteed to employers under the NLRA. AB 1889 is also preempted under the NLRA pursuant to the *Machinists* preemption under *International Association of Machinists and Aerospace Workers v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 96 S. Ct. 2548, 49 L. Ed. 2d 396 (1976), in that it purports to regulate areas Congress intentionally left to be controlled by the free play of economic forces.

38.    AB 1889 is preempted by the LMRDA, which comprehensively regulates the reports that employers, labor relations consultants, labor organizations, and officers and employees of labor organizations must make to the public regarding labor relations issues. The LMRDA expressly exempts employers from the very record keeping and reporting obligations which are required under AB 1889.

39.    AB 1889 is preempted by the Medicare Act and the Medicaid Act, which regulates provider cost reporting and reimbursement, and so comprehensively occupies the field with its complex regulatory system demonstrating that Congress left no room for the states to supplement it. AB 1889 violates the provisions of the State Plan, Medicaid Act and the Medicare Act by: (a) prohibiting facilities from spending monies for specified purposes when the State Plan allows facilities to report certain costs for the same purposes in establishing Medi-Cal reimbursement rates and (b) making the Office of the Attorney General

1   responsible for its administration and enforcement when the DHS is the single state

2   agency designated for the administration of the Medi-Cal program.

3        40.    Without a declaratory judgment and an injunction enjoining

4   enforcement of AB 1889, Plaintiffs and their members will be deprived of the rights

5   sought to be enforced by this Complaint.

6        41.    Plaintiffs have no adequate remedy at law as to the matters for

7   which they seek an injunction and are now enduring, and in the future will endure.

8        **WHEREFORE,** Plaintiffs hereby request that the Court enter a

9   judgment:

10      a.    Declaring that:

11           (i)    AB 1889 is unconstitutional under the United

12  States Constitution and the California Constitution;

13           (ii)    AB 1889 is preempted by the NLRA, the LMRDA,

14  and the Medicare Act;

15           (iii)    AB 1889 is unenforceable by any party, including,

16  but not limited to the State of California and its subdivisions, the California

17  Department of Health Services,  the Attorney General of California, and

18  private citizens as taxpayers.

19      b.    Temporarily, preliminarily and permanently enjoining the

20  State of California and all of its subdivisions and the Attorney General and all

21  others acting in concert with them, and each of them, from:

22           (i)    enforcing any of the provisions of AB 1889;

23           (ii)    requiring Medi-Cal providers to certify that they

24  will comply with the provisions of AB 1889; and

25           (iii)    terminating a Medi-Cal providers from the Medi-

26  Cal program based upon failure to comply with the certification requirement

27  or any other portion of AB 1889.

28

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1        c.      Granting such further relief to Plaintiffs as may be just

2    and proper under the circumstances.

3        Dated:  April 10, 2002

4                                            STEPHEN P. PEPE
                                             BRENT J. NORTH
5                                            RENEE M. SPIGARELLI
                                             O'MELVENY & MYERS LLP

6                                            MARK E. REAGAN
                                             MARK A. JOHNSON
7                                            HOOPER, LUNDY & BOOKMAN,
                                             INC.
8
                                             STEPHEN A. BOKAT
9                                            NATIONAL CHAMBER
                                             LITIGATION CENTER, INC.
10

11

12    By _____
13                  Brent J. North
      Attorneys for The Chamber of
14    Commerce of the United States,
      California Chamber of Commerce,
15    Employers Group, California
      Healthcare Association, California
16    Manufacturers and Technology
      Association, California Association of
17    Health Facilities, California
      Association of Homes & Services for
18    the Aging, Bettec Corporation,
      Marksherm Corporation, Zilaco, Inc.,
19    Zilaco, Del Rio Healthcare Inc.,
      Beverly Health & Rehabilitation
20    Services, Inc. dba Beverly Manor --
      Costa Mesa, Internext Group.

21

22

23

24

25

26

27

28

NB1:557549.4                                               **COMPLAINT FOR INJUNCTIVE AND
                            28                              DECLARATORY RELIEF**

**Assembly Bill No. 1889**

CHAPTER 872

An act to add Chapter 6 (commencing with Section 16645) to Part 2 of Division 4 of Title 2 of the Government Code, relating to use of state funds.

[Approved by Governor September 28, 2000. Filed with Secretary of State September 29, 2000.]

LEGISLATIVE COUNSEL'S DIGEST

AB 1889, Cedillo.    State funds: unionization.

Nothing in existing law prohibits recipients of state funds from using the funds to discourage unionization.

This bill would prohibit a state contractor that receives $50,000 or more under a state contract, during the term of the contract, including any extension or renewal, from assisting, promoting, or deterring union organizing, as defined, in this state and would prohibit state funds from being used to reimburse those activities. The bill would also prohibit a grant recipient, state contractor, public employer, or private employer who receives state funds and meets other requirements from using state funds to assist, promote, or deter union organizing. The bill would prohibit an employer who conducts business on state property pursuant to a contract or concession agreement with the state or a state agency to use the state property to hold a meeting with any employees or supervisors if the purpose of the meeting is to assist, promote, or deter union organizing. The bill would impose civil penalties for a violation of the above provisions. The bill would make an employee of a public employer that receives state funds personally liable to the state for knowingly authorizing a use of state funds to assist, promote, or deter union organizing.

The bill would require specified recipients of state funds to comply with certification and recordkeeping requirements relating to the use of state funds. The bill would provide that it does not apply to an expenditure made prior to January 1, 2001, or to a grant or contract awarded prior to January 1, 2001, except as specified.

*The people of the State of California do enact as follows:*

SECTION 1.    The Legislature finds and declares the following:

It is the policy of the state not to interfere with an employee's choice about whether to join or to be represented by a labor union. For this reason, the state should not subsidize efforts by an employer to assist, promote, or deter union organizing. It is the intent of the

92

Ch. 872                          — 2 —

Legislature in enacting this act to prohibit an employer from using state funds and facilities for the purpose of influencing employees to support or oppose unionization and to prohibit an employer from seeking to influence employees to support or oppose unionization while those employees are performing work on a state contract.

SEC. 2.   Chapter 6 (commencing with Section 16645) is added to Part 2 of Division 4 of Title 2 of the Government Code, to read:

CHAPTER 6.   PROHIBITION ON USE OF STATE FUNDS AND FACILITIES TO ASSIST, PROMOTE, OR DETER UNION ORGANIZING

16645.   For purposes of this chapter, the following terms have the following meanings:

(a) "Assist, promote, or deter union organizing" means any attempt by an employer to influence the decision of its employees in this state or those of its subcontractors regarding either of the following:

(1) Whether to support or oppose a labor organization that represents or seeks to represent those employees.

(2) Whether to become a member of any labor organization.

(b) "Employer" means any individual, corporation, unincorporated association, partnership, government agency or body, or other legal entity that employs more than one person in the state.

(c) "State contractor" means any employer that receives state funds for supplying goods or services pursuant to a written contract with the state or any of its agencies. "State contractor" includes an employer that receives state funds pursuant to a contract specified in paragraph (2) of subdivision (d). For purposes of this chapter, the contract shall be deemed to be a contract with a state agency.

(d) (1) "State funds" means any money drawn from the State Treasury or any special or trust fund of the state.

(2) "State funds" includes any money appropriated by the state and transferred to any public agency, including a special district, that is used by the public agency to fund, in whole or in part, a service contract in excess of two hundred fifty thousand dollars ($250,000).

(e) "State property" means any property or facility owned or leased by the state or any state agency.

16645.1.   (a) No state funds shall be used to reimburse a state contractor for any costs incurred to assist, promote, or deter union organizing.

(b) Every request for reimbursement from state funds by a state contractor shall include a certification that the contractor is not seeking reimbursement for costs incurred to assist, promote, or deter union organizing. A state contractor that incurs costs to assist, promote, or deter union organizing shall maintain records sufficient to show that no reimbursement from state funds has been sought for

92

Exhibit A
30

— 3 —                    Ch. 872

those costs. The state contractor shall provide those records to the Attorney General upon request.

(c) A state contractor is liable to the state for the amount of any funds obtained in violation of subdivision (a) plus a civil penalty equal to twice the amount of those funds.

(d) This section does not apply to a fixed-price contract or to any other arrangement by which the amount of the payment of state funds does not depend on the costs incurred by the state contractor.

16645.2. (a) The recipient of a grant of state funds, including state funds disbursed as a grant by a public agency, shall not use the funds to assist, promote, or deter union organizing.

(b) For purposes of this section, each recipient of a grant of state funds shall account for those funds as follows:

(1) State funds designated by the grantor for use for a specific expenditure of the recipient shall be accounted for as allocated to that expenditure.

(2) State funds that are not designated as described in paragraph (1) shall be allocated on a pro rata basis to all expenditures by the recipient that support the program for which the grant is made.

(c) Prior to the disbursement of a grant of state funds, the recipient shall provide a certification to the state that none of the funds will be used to assist, promote, or deter union organizing. Any recipient that makes expenditures to assist, promote, or deter union organizing shall maintain records sufficient to show that state funds have not been used for those expenditures. The grant recipient shall provide those records to the Attorney General upon request.

(d) A grant recipient is liable to the state for the amount of any funds expended in violation of subdivision (a) plus a civil penalty equal to twice the amount of those funds.

16645.3. (a) No state contractor shall assist, promote, or deter union organizing by employees who are performing work on a service contract, including a public works contract, for the state or a state agency.

(b) A state contractor that violates subdivision (a) is liable for a civil penalty of one thousand dollars ($1,000) per employee per violation.

16645.4. (a) A state contractor that receives state funds in excess of fifty thousand dollars ($50,000) pursuant to a contract with the state or a state agency shall not use those state funds to assist, promote, or deter union organizing during the life of the contract, including any extensions or renewals of the contract. The dollar threshold in this subdivision, however, does not limit the application of other provisions of this chapter that restrict the use of state funds.

(b) All contracts in excess of fifty thousand dollars ($50,000) and that are awarded by the state or a state agency shall contain the prohibition stated in subdivision (a).

92

Exhibit A
31

Ch. 872                        — 4 —

(c) A state contractor who is subject to subdivision (a) and who makes expenditures to assist, promote, or deter union organizing shall maintain records sufficient to show that no state funds were used for those expenditures. The state contractor shall provide those records to the Attorney General upon request.

(d) A state contractor is liable to the state for the amount of any funds expended made in violation of subdivision (a) plus a civil penalty equal to twice the amount of those funds.

16645.5. (a) An employer conducting business on state property pursuant to a contract or concession agreement with the state or a state agency, or a subcontractor on such a contract or agreement, shall not use state property to hold a meeting with any employees or supervisors if the purpose of the meeting is to assist, promote, or deter union organizing. This section does not apply if the state property is equally available, without charge, to the general public for holding a meeting.

(b) An employer that violates subdivision (a) shall be liable to the state for a civil penalty equal to one thousand dollars ($1,000) per employee per meeting.

16645.6. (a) A public employer receiving state funds shall not use any of those funds to assist, promote, or deter union organizing.

(b) Any public official who knowingly authorizes the use of state funds in violation of subdivision (a) shall be liable to the state for the amount of those funds.

16645.7. (a) A private employer receiving state funds in excess of ten thousand dollars ($10,000) in any calendar year on account of its participation in a state program shall not use any of those funds to assist, promote, or deter union organizing.

(b) As a condition of participating in a state program pursuant to which it will receive state funds in excess of ten thousand dollars ($10,000) in any calendar year, a private employer shall provide a certification to the state that none of those funds will be used to assist, promote, or deter union organizing.

(c) A private employer who is subject to subdivision (a) and who makes expenditures to assist, promote, or deter union organizing shall maintain records sufficient to show that no state funds were used for those expenditures. The private employer shall provide those records to the Attorney General upon request.

(d) A private employer is liable to the state for any funds expended in violation of subdivision (a) plus a civil penalty equal to twice the amount of those funds.

16645.8. (a) A civil action for a violation of this chapter may be brought by the Attorney General, or by any state taxpayer, on behalf of the people of the State of California, for injunctive relief, damages, civil penalties, and other appropriate equitable relief. All damages and civil penalties collected pursuant to this chapter shall be paid to the State Treasury.

92

Exhibit A
32

— 5 —                                       Ch. 872

(b) Before filing an action under this section, a taxpayer shall give written notice to the Attorney General of the alleged violation and the intent to bring suit. If the Attorney General commences a civil action for the same alleged violation within 60 days of receiving the notice, a separate action by the taxpayer shall be barred.

(c) A taxpayer may intervene as a plaintiff in any action brought under this section.

(d) A prevailing plaintiff in any action under this section is entitled to recover reasonable attorney's fees and costs. A prevailing taxpayer intervenor who makes a substantial contribution to an action under this section is entitled to recover reasonable attorney's fees and costs.

16646. (a) For purposes of this chapter, any expense, including legal and consulting fees and salaries of supervisors and employees, incurred for research for, or preparation, planning, or coordination of, or carrying out, an activity to assist, promote, or deter union organizing shall be treated as paid or incurred for that activity.

(b) For purposes of accounting for expenditures, if state funds and other funds are commingled, any expenditures to assist, promote, or deter union organizing shall be allocated between state funds and other funds on a pro rata basis.

16647. This chapter does not apply to an activity performed, or to an expense incurred, in connection with any of the following:

(a) Addressing a grievance or negotiating or administering a collective bargaining agreement.

(b) Allowing a labor organization or its representatives access to the employer's facilities or property.

(c) Performing an activity required by federal or state law or by a collective bargaining agreement.

(d) Negotiating, entering into, or carrying out a voluntary recognition agreement with a labor organization.

16648. This chapter does not apply to an expenditure made prior to January 1, 2001, or to a grant or contract awarded prior to January 1, 2001, unless the grant or contract is modified, extended, or renewed after January 1, 2001. Nothing in this chapter requires employers to maintain records in any particular form.

16649. The provisions of this chapter are severable. If any section or portion of this chapter, or any application thereof, is held invalid, in whole or in part, that invalidity shall not effect any other section, portion, or application that can be given effect.

O

92

Exhibit A
33

Ch. 872                    — 4 —

(c) A state contractor who is subject to subdivision (a) and who makes expenditures to assist, promote, or deter union organizing shall maintain records sufficient to show that no state funds were used for those expenditures. The state contractor shall provide those records to the Attorney General upon request.

(d) A state contractor is liable to the state for the amount of any funds expended made in violation of subdivision (a) plus a civil penalty equal to twice the amount of those funds.

16645.5. (a) An employer conducting business on state property pursuant to a contract or concession agreement with the state or a state agency, or a subcontractor on such a contract or agreement, shall not use state property to hold a meeting with any employees or supervisors if the purpose of the meeting is to assist, promote, or deter union organizing. This section does not apply if the state property is equally available, without charge, to the general public for holding a meeting.

(b) An employer that violates subdivision (a) shall be liable to the state for a civil penalty equal to one thousand dollars ($1,000) per employee per meeting.

16645.6. (a) A public employer receiving state funds shall not use any of those funds to assist, promote, or deter union organizing.

(b) Any public official who knowingly authorizes the use of state funds in violation of subdivision (a) shall be liable to the state for the amount of those funds.

16645.7. (a) A private employer receiving state funds in excess of ten thousand dollars ($10,000) in any calendar year on account of its participation in a state program shall not use any of those funds to assist, promote, or deter union organizing.

(b) As a condition of participating in a state program pursuant to which it will receive state funds in excess of ten thousand dollars ($10,000) in any calendar year, a private employer shall provide a certification to the state that none of those funds will be used to assist, promote, or deter union organizing.

(c) A private employer who is subject to subdivision (a) and who makes expenditures to assist, promote, or deter union organizing shall maintain records sufficient to show that no state funds were used for those expenditures. The private employer shall provide those records to the Attorney General upon request.

(d) A private employer is liable to the state for any funds expended in violation of subdivision (a) plus a civil penalty equal to twice the amount of those funds.

16645.8. (a) A civil action for a violation of this chapter may be brought by the Attorney General, or by any state taxpayer, on behalf of the people of the State of California, for injunctive relief, damages, civil penalties, and other appropriate equitable relief. All damages and civil penalties collected pursuant to this chapter shall be paid to the State Treasury.

92

— 5 —                                        Ch. 872

(b) Before filing an action under this section, a taxpayer shall give written notice to the Attorney General of the alleged violation and the intent to bring suit. If the Attorney General commences a civil action for the same alleged violation within 60 days of receiving the notice, a separate action by the taxpayer shall be barred.

(c) A taxpayer may intervene as a plaintiff in any action brought under this section.

(d) A prevailing plaintiff in any action under this section is entitled to recover reasonable attorney's fees and costs. A prevailing taxpayer intervenor who makes a substantial contribution to an action under this section is entitled to recover reasonable attorney's fees and costs.

16646. (a) For purposes of this chapter, any expense, including legal and consulting fees and salaries of supervisors and employees, incurred for research for, or preparation, planning, or coordination of, or carrying out, an activity to assist, promote, or deter union organizing shall be treated as paid or incurred for that activity.

(b) For purposes of accounting for expenditures, if state funds and other funds are commingled, any expenditures to assist, promote, or deter union organizing shall be allocated between state funds and other funds on a pro rata basis.

16647. This chapter does not apply to an activity performed, or to an expense incurred, in connection with any of the following:

(a) Addressing a grievance or negotiating or administering a collective bargaining agreement.

(b) Allowing a labor organization or its representatives access to the employer's facilities or property.

(c) Performing an activity required by federal or state law or by a collective bargaining agreement.

(d) Negotiating, entering into, or carrying out a voluntary recognition agreement with a labor organization.

16648. This chapter does not apply to an expenditure made prior to January 1, 2001, or to a grant or contract awarded prior to January 1, 2001, unless the grant or contract is modified, extended, or renewed after January 1, 2001. Nothing in this chapter requires employers to maintain records in any particular form.

16649. The provisions of this chapter are severable. If any section or portion of this chapter, or any application thereof, is held invalid, in whole or in part, that invalidity shall not effect any other section, portion, or application that can be given effect.

O

92



GOVERNOR GRAY DAVIS

Los Angeles, CA.

September 28, 1999

To Members of the Assembly

I am returning Assembly Bill No. 442 without my signature.

This bill would prohibit the use of state funds by an employer, either directly or indirectly, in whole or in part, to discourage unionization by an employer or any other employees. It would also require the adoption of regulations to implement these provisions and to respond to complaints by auditing to see if a violation had occurred. Violators are subject to civil damages and taxpayers would be authorized to bring action against employers, with the taxpayers being eligible to recover reasonable attorney's fees and costs as part of the judgement.

This legislation has the potential to impose an unreasonable burden on businesses in that they would have to maintain minutely-detailed records to track goods, services and funds received from the State in order to avoid violating the provisions contained therein. In addition, in the absence of a verified complaint, it would be extremely difficult, if not impossible, to determine the accuracy and truthfulness of any report or fund utilization submitted by an employer.

Finally, AB 442 also has the potential to significantly increase employers' litigation costs by providing countless opportunities for disgruntled employees to file civil actions merely in an effort to harass employers.

Sincerely,



STATE OF CALIFORNIA—HEALTH AND HUMAN SERVICES AGENCY                    GRAY DAVIS, Governor

**DEPARTMENT OF HEALTH SERVICES**
714/744 P STREET
P.O. BOX 942732
SACRAMENTO, CA 94234-7320
(916) 322-4421



February 28, 2002

Dear Administrator:

This letter is to notify you that in accordance with the requirements of Government Code section 16645.7, you are required to certify that no state funds received by your entity are used for any cost incurred to assist, promote, or deter union organizing. In order to comply with this requirement, the enclosed certification form is to be completed, and returned to the Department of Health Services (Department) by 45 days from the date of this letter.

The requirement that state funds shall not be used to assist, promote, or deter union organizing includes:

> A private employer receiving state funds in excess of ten thousand dollars ($10,000) in any calendar year on account of its participation in a state program.

Any expense, including legal and consulting fees and salaries of supervisors and employees, incurred for research for, or preparation, planning, or coordination of, or carrying out, an activity to assist, promote, or deter union organizing shall be treated as paid or incurred for that activity. If state and other funds are commingled, any expenditures to assist, promote, or deter union organizing shall be allocated between state funds and other funds on a pro rata basis.

These requirements do not apply to an activity performed, or to an expense incurred, in connection with any of the following:

(a) Addressing a grievance or negotiating or administering a collective bargaining agreement.
(b) Allowing a labor organization or its representatives access to the employer's facilities or property.
(c) Performing an activity required by federal or state law or by a collective bargaining agreement.
(d) Negotiating, entering into, or carrying out a voluntary recognition agreement with a labor organization.

Further, these requirements do not apply to any expenditure made prior to January 1, 2001, or any grant or contract awarded prior to January 1, 2001.

If it is determined that a recipient of state funds has violated these requirements, the recipient will be liable to the state for any funds expended in violation of these requirements plus a civil penalty equal to twice the amount of those funds.

Exhibit C
37

Failure to return a completed certification to the Department by 45 days of the date of this letter may result in the removal of the facility from the Medi-Cal program [Government Code, section 16645.7(b)] until the certification is completed and filed.

Completed certifications should be mailed to:

> State Department of Health Services
> Audits and Investigations
> Financial Audits Branch
> Audit Review and Analysis Section
> Attention: Gary Wong
> 591 North Seventh Street, First Floor
> Sacramento, CA 94234-7320

Questions regarding the completion of this certification or application of these requirements should be submitted in writing to the above address. As an alternative, you may direct your questions to the following e-mail address: AB1889@dhs.ca.gov.

Sincerely,

Frank G. Vanacore, Chief
Audit Review and Analysis Section
Financial Audits Branch
Audits and Investigations

Enclosure

Exhibit C
38

## CERTIFICATE OF COMPLIANCE

## CALIFORNIA DEPARTMENT OF HEALTH SERVICES ("DHS")

### Government Code Section 16645.7

To be completed by non-governmental health care facility employers receiving funds from the State of California in excess of ten thousand dollars ($10,000) per calendar year.

**EMPLOYER'S PROVIDER NUMBER(S):**

_____

**LEGAL NAME OF EMPLOYER/FACILITY:**

_____

**OTHER NAMES USED, INCLUDING all dba's:**

_____

_____

_____

**ADDRESS OF EMPLOYER/FACILITY:**

_____

_____

I, _____ (NAME OF PERSON AUTHORIZED TO COMPLETE THIS CERTIFICATION), certify that no California State Funds received for this employer's participation in a DHS Program will be used to assist, promote, or deter union organizing.

**Name of Facility** _____

**Signed** _____ **Date** _____

**Title** _____

Exhibit C
39



State of California—Health and Human Services Agency
# Department of Health Services



**DIANA M. BONTÁ, R.N., Dr. P.H.**
Director

**GRAY DAVIS**
Governor

March 15, 2002

Dear Administrator:

This letter is to notify you that in accordance with the requirements of Government Code section 16645.7, you are required to certify that no state funds received by your entity are used for any cost incurred to assist, promote, or deter union organizing. In order to comply with this requirement, the enclosed certification form is to be completed, and returned to the Department of Health Services (Department) by 45 days from the date of this letter.

The requirement that state funds shall not be used to assist, promote, or deter union organizing includes:

A private employer receiving state funds in excess of ten thousand dollars ($10,000) in any calendar year on account of its participation in a state program.

Any expense, including legal and consulting fees and salaries of supervisors and employees, incurred for research for, or preparation, planning, or coordination of, or carrying out, an activity to assist, promote, or deter union organizing shall be treated as paid or incurred for that activity. If state and other funds are commingled, any expenditures to assist, promote, or deter union organizing shall be allocated between state funds and other funds on a pro rata basis.

These requirements do not apply to an activity performed, or to an expense incurred, in connection with any of the following:

(a) Addressing a grievance or negotiating or administering a collective bargaining agreement.
(b) Allowing a labor organization or its representatives access to the employer's facilities or property.
(c) Performing an activity required by federal or state law or by a collective bargaining agreement.
(d) Negotiating, entering into, or carrying out a voluntary recognition agreement with a labor organization.

Further, these requirements do not apply to any expenditure made prior to January 1, 2001, or any grant or contract awarded prior to January 1, 2001.



Do your part to help California save energy. To learn more about saving energy, visit the following web site: www.consumerenergycenter.org/flex/index.html

Exhibit D
40

If it is determined that a recipient of state funds has violated these requirements, the recipient will be liable to the state for any funds expended in violation of these requirements plus a civil penalty equal to twice the amount of those funds.

Failure to return a completed certification to the Department by 45 days of the date of this letter may result in the Department removal from the program [Government Code, section 16645.7(b)] until the certification is completed and filed.

Completed certifications should be mailed to:

> State Department of Health Services
> Audits and Investigations
> Financial Audits Branch
> Audit Review and Analysis Section
> Attention: Gary Wong
> 591 N. 7th Street, First Floor
> P.O. Box 942732
> Sacramento, CA 94234-7320

Questions regarding the completion of this certification or application of these requirements should be submitted in writing to the above address. As an alternative, you may direct your questions to the following e-mail address: AB1889@dhs.ca.gov.

Sincerely,

Frank G. Vanacore, Chief
Audit Review and Analysis Section
Financial Audits Branch
Audits and Investigations

Enclosure

Exhibit C
41

Address (Number, Street), P.O. Box Number, City, CA, ZIP code
Telephone Number
Internet Address: www.dhs.ca.gov

<u>CERTIFICATE OF COMPLIANCE</u>

<u>CALIFORNIA DEPARTMENT OF HEALTH SERVICES ("DHS")</u>

**Government Code Section 16645.7**

To be completed by non-governmental health care facility employers receiving funds from the State of California in excess of ten thousand dollars ($10,000) per calendar year.

EMPLOYER'S PROVIDER NUMBER(S): _____

LEGAL NAME OF EMPLOYER/FACILITY: _____

OTHER NAMES USED, INCLUDING all dba's: _____

_____

_____

ADDRESS OF EMPLOYER/FACILITY: _____

_____

_____

I, _____ (NAME OF PERSON AUTHORIZED TO COMPLETE THIS CERTIFICATION), certify that no California State Funds received for this employer's participation in a DHS Program will be used to assist, promote, or deter union organizing.

Name of Facility _____ Date _____

Signed _____

Title _____

Return completed form to:

**State Department of Health Services**
**Audits and Investigations, Financial Audits Branch**
**Audit Review and Analysis Section, Attention: Gary Wong**
**591 N. 7th Street, First Floor**
**P.O. Box 942732**
**Sacramento, CA 94234-7320**

Exhibit C
42

**CIVIL COVER SHEET**

ORIGINAL

## I (a)  PLAINTIFFS

The Chamber of Commerce of the United States, et al.

## DEFENDANTS

Bill Lockyer in his capacity as Attorney General of the State of California, et al.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Washington, DC
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Sacramento
(IN U.S. PLAINTIFF CASES ONLY)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Stephen P. Pepe (S.B. No. 43615)
Brent J. North (S.B. No. 186249)
O'Melveny & Myers LLP
610 Newport Center Drive, Suite 1700
Newport Beach, CA  92660
949-760-9600

ATTORNEYS (IF KNOWN)

## II.  BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [X] 3  Federal Question (U.S. Government Not a Party)
- [ ] 4  Diversity (Indicate Citizenship of Parties In Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE FOR DEFENDANT)

(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV.  ORIGIN (PLACE AN x IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## V.  REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: [ ] YES [X] NO

## VI.  CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.

DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY) 28 U.S.C. Sections 2201-2202; 29 U.S.C. Sections 151 et seq.; Sections 401 et seq.; 42 U.S.C. Sections 1395 et seq.  Injunctive and declaratory relief under the foregoing.

## VII.  NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| OTHER STATUTES | CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY |
|---|---|---|---|---|---|
| [ ] 400 State Reapportionment | [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 |
| [ ] 410 Antitrust | [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury-Med Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 |
| [ ] 430 Banks and Banking | [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury-Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** |
| [ ] 450 Commerce/ICC Rates/etc. | [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 820 Copyrights |
| [ ] 460 Deportation | [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 630 Liquor Laws | [ ] 830 Patent |
| [ ] 470 Racketeer Influenced and Corrupt Organizations | [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 640 R.R. & Truck | [ ] 840 Trademark |
| [ ] 810 Selective Service | [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 650 Airline Regs | **SOCIAL SECURITY** |
| [ ] 850 Securities/Commodities/ Exchange | [ ] 153 Recovery of Overpayment Of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 660 Occupational Safety/Health | [ ] 861 HIA (1395ff) |
| [ ] 875 Customer Challenge 12 USC 3410 | [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 690 Other | [ ] 862 Black Lung (923) |
| [ ] 891 Agricultural Act | [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | **LABOR** | [ ] 863 DIWC/DIWW (405(g)) |
| [ ] 892 Economic Stabilization Act | [ ] 195 Contract Product Liability | | | [ ] 710 Fair Labor Standards Act | [ ] 864 SSID Title XVI |
| [ ] 893 Environmental Matters | **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 720 Labor/Mgmt. Relations | [ ] 865 RSI (405(g)) |
| [ ] 894 Energy Allocation Act | [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence Habeas Corpus | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** |
| [ ] 895 Freedom of Information Act | [ ] 220 Foreclosure | [ ] 442 Employment | [ ] 530 General | [ ] 740 Railway Labor Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) |
| [ ] 900 Appeal of Fee Determination Under Equal Access to Justice | [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 535 Death Penalty | [ ] 790 Other Labor Litigation | [ ] 871 IRS - Third Party 26 USC 7609 |
| [X] 950 Constitutionality of State Statutes | [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 540 Mandamus&Other | [ ] 791 Empl. Ret. Inc. Security Act | |
| [ ] 890 Other Statutory Actions | [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 550 Civil Rights | | |
| | [ ] 290 All Other Real Property | | [ ] 555 Prison Condition | | |

## VIII(a). IDENTICAL CASES: Has this action been previously filed and dismissed, remanded or closed?  X  No  ____ Yes

If yes, list case number(s): _____    SA 02-377    DOC

CV71 (8/99)    CIVIL COVER SHEET - Continued on Reverse    Page 1 of 2

**FOR OFFICE USE ONLY:**  [ ] Pro Hac Vice fee:  [ ] paid  [ ] not paid

Applying IFP ____  Judge ____  Mag. Judge ____

CCD-JS44

**CIVIL COVER SHEET**
(Reverse Side)

**AFTER COMPLETING THE FRONT SIDE OF FORM JS-44C, COMPLETE THE INFORMATION REQUESTED BELOW.**

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? _____ No __X__ Yes

If yes, list case number(s): SACV 00-1190-GLT (ANX)

CIVIL CASES ARE DEEMED RELATED IF A PREVIOUSLY FILED CASE AND THE PRESENT CASE:

(CHECK ALL BOXES THAT APPLY)

- [X] A. Appear to arise from the same or substantially identical transactions, happenings, or events;
- [X] B. Involve the same or substantially the same parties or property;
- [ ] C. Involve the same patent, trademark or copyright;
- [X] D. Call for determination of the same or substantially identical questions of law, or
- [X] E. Likely for other reasons may entail unnecessary duplication of labor if heard by different judges.

**IX. VENUE:** List the California County, or State if other than California, in which EACH named plaintiff resides. (Use an additional sheet if necessary)

- [ ] CHECK HERE IF THE US GOVERNMENT, ITS AGENCIES OR EMPLOYEES IS A NAMED PLAINTIFF.

See Attached Addendum A

List the California County, or State if other than California, in which EACH named defendant resides. (Use an additional sheet if necessary).

- [ ] CHECK HERE IF THE US GOVERNMENT, ITS AGENCIES OR EMPLOYEES IS A NAMED DEFENDANT.

See Attached Addendum B

List the California County, or State if other than California, in which EACH claim arose. (Use an additional sheet if necessary).

**NOTE:** In land condemnation cases, use the location of the tract of land involved.

*Los Angles, Orange*

**X. SIGNATURE OF ATTORNEY (OR PRO PER): X** _[signature]_    **Date** 04/10/02

**NOTICE TO COUNSEL/PARTIES:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3.3 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| NATURE OF SUIT CODE | ABBREVIATION | SUBSTANTIVE STATEMENT OF CAUSE OF ACTION |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

## Addendum A

The Chamber of Commerce of the United States, Washington, D.C.
California Chamber of Commerce, Sacramento County
Employers Group, Los Angeles County
California Healthcare Association, Los Angeles County
California Manufacturers and Technology Association, Sacramento County
California Association of Health Facilities, Sacramento County
California Association of Homes & Services for the Aging, Sacramento County
Bettec Corporation, Los Angeles
Marksherm Corporation, Los Angeles County
Zilaco, Inc., Los Angeles County
Zilaco, Los Angeles County
Del Rio Healthcare Inc., Los Angeles County
Beverly Health & Rehabilitation Services, Inc., dba Beverly Manor-Costa Mesa, Orange County
Internext Group, Los Angeles County

NB1:558031.1

## **Addendum B**

Bill Lockyer, Sacramento County
The Department of Health Services, Sacramento County
Frank G. Vanacore, Sacramento County
Diana M. Bontá, R.N., Sacramento County

**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44**

Authority for Civil Cover Sheet

The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. (a) PLAINTIFFS - DEFENDANTS. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a Government Agency use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official giving both name and title.

   (b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: in land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   (c) Attorneys. Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section ("see attachment").

II. JURISDICTION. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdiction be shown in pleadings. Place an **"X"** in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

   United States Plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

   United States Defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an **"X"** in this box.

   Federal Question. (3) This refers to suits under 28 U.S.C. 1331 where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, and act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code take precedence and box 1 or 2 should be marked.

   Diversity of Citizenship. (4) This refers to suits under 28 U.S.C. 1332 where parties are citizens of different states. When box 4 is checked, the citizenship of the different parties must be checked. (See Section III below)    (Federal question actions take precedence over diversity cases.)

III. RESIDENCE (CITIZENSHIP) OF PRINCIPAL PARTIES. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. ORIGIN. Place an **"X"** in one of the seven boxes:

   (1) Original Proceedings. Cases which originate in the United States District Courts.

   (2) Removed from State Court. Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C. Section 1441. When the petition for removal is granted, check this box.

   (3) Remanded from Appellate court. Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

   (4) Reinstated or Reopened. Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

   (5) Transferred from Another District. For cases transferred under Title 28 U.S.C. Section 1404(a). DO NOT use this for within-district transfers or multidistrict litigation transfers. When this box is checked, DO NOT check (6) below.

   (6) Multidistrict Litigation. Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, DO NOT check (5) above.

   (7) Appeal to District Judge from Magistrate Judge Judgment. Check this box for an appeal from a magistrate judge's decision.

V. REQUESTED IN COMPLAINT.

   *Class Action.* Place an **"X"** in this box if you are filing a class action under Rule 23, F.R.Cv.P.

   *Demand.* In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

   *Jury Demand.* Check the appropriate box to indicate whether or not a jury is being demanded.

VI. CAUSE OF ACTION. Report the civil statute directly related to the cause of action and give a brief description of the cause of action.

VII. NATURE OF SUIT. Place an **"X"** in the appropriate box. MARK ONE BOX ONLY. If the nature of suit cannot be determined, be sure the description of the cause of action in Section IV above is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause of action fits more than one nature of suit, select the most definitive.

VIII(a) IDENTICAL CASES. Indicate if an identical action has previously been filed and dismissed, remanded or closed. Insert the docket number and judge's name, if applicable.

VIII(b) RELATED CASES. This section of the CV-71 (JS-44) is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge's name for each case. Check all boxes that apply.

IX. VENUE. This section of the CV-71 (JS-44) is used to identify the correct division in which the case will be filed. Please remember to indicate the residence of EACH plaintiff and defendant and the county or state in which each claim arose.

   If the United States government or an agency thereof is a plaintiff or defendant, place an **"X"** in the appropriate box. Indicate the residence of other parties, if any.

   In each category: for each party and claim, indicate the county, if in California. If other than California, you need only to list the state or country.

X. Attorney or party appearing pro per must sign and date this form.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE

Pursuant to the Local Rules Governing Duties of Magistrate Judges, the following Magistrate Judge has been designated to hear discovery motions for this case at the discretion of the assigned District Judge:

☐ Paul L. Abrams (PLAx)            ☐ James W. McMahon (Mcx)

☐ Robert N. Block (RNBx)           ☐ Margaret A. Nagle (MANx)

☐ Rosalyn M. Chapman (RCx)         ☑ Arthur Nakazato (ANx)

☐ Charles F. Eick (Ex)             ☐ Fernando M. Olguin (FMOx)

☐ Marc L. Goldman (MLGx)           ☐ Carolyn Turchin (CTx)

☐ Stephen J. Hillman (SHx)         ☐ Patrick J. Walsh (PJWx)

☐ Jeffrey W. Johnson (JWJx)        ☐ Andrew J. Wistrich (AJWx)

☐ Victor B. Kenton (VBKx)          ☐ Carla M. Woehrle (CWx)

☐ Stephen G. Larson (SGLx)         ☐ Ralph Zarefsky (RZx)

☐ Jennifer T. Lum (JTLx)

Upon the filing of a discovery motion, the motion will be presented to the United States District Judge for consideration and may thereafter be referred to the Magistrate Judge for hearing and determination.

The Magistrate Judge's initials should be used on all documents filed with the Court so that the case number reads as follows:

CV-_____SACV 02-377 DOC (ANx)

### NOTICE TO COUNSEL

<u>A COPY OF THIS NOTICE MUST BE SERVED WITH THE SUMMONS AND COMPLAINT ON ALL DEFENDANTS (IF A REMOVAL ACTION IS FILED, A COPY OF THIS NOTICE MUST BE SERVED ON ALL PLAINTIFFS).</u>

**SUBSEQUENT DOCUMENTS MUST BE FILED AT THE FOLLOWING LOCATION:**

| ☐ **Western Division** | ☑ **Southern Division** | ☐ **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

**FAILURE TO FILE AT THE PROPER LOCATION WILL RESULT IN YOUR DOCUMENTS BEING RETURNED TO YOU.**

Stephen P. Pepe (S.B. No. 43615)
Brent J. North (S.B. No. 186249)
Renee M. Spigarelli (S.B. No. 218036)
O'MELVENY & MYERS LLP
610 Newport Center Drive, Suite 170
Newport Beach, CA  92660

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| The Chamber of Commerce of the United States, California Chamber of Commerce, ( Cont. - See Attachment) | CASE NUMBER |
| PLAINTIFF(S) | CV- SACV 02-377 DOC (ANx) |
| v. | |
| Bill Lockyer in his capacity as Attorney General of the State of California, (Cont. - See Attachment) | **SUMMONS** |
| DEFENDANT(S). | |

TO:  THE ABOVE-NAMED DEFENDANT(S):

   YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney
   Stephen P. Pepe, Brent J. North, Renee M. Spigarelli         , whose address is:

   O'Melveny & Myers LLP
   610 Newport Center Drive, 17th Floor
   Newport Beach, CA  92660
   Tel:  (949) 760-9600
   Fax:  (949) 823-6994

An answer to the  [X] **COMPLAINT**,  [ ] _____ **AMENDED COMPLAINT**,
                                          (1st, 2nd, etc.)

[ ] **COUNTERCLAIM**,  [ ] **CROSS-CLAIM**  which is herewith served upon you within 20 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

CLERK, U.S. DISTRICT COURT

DATE:  APR 1 1 2002  _____

**ERICK MORA**
Deputy Clerk

(SEAL OF THE COURT)

ENTER ON ICMS
1 8 2002

CV-1A (01/01)                        **SUMMONS**                        CCD-1A

**ATTACHMENT TO FACE PAGE OF SUMMONS**
*The Chamber of Commerce of the United States, et al v. Bill Lockyer, et al.*

Employers Group, California
Healthcare Association, California
Manufacturers and Technology
Association, California Association of
Health Facilities, California
Association of Homes & Services for
the Aging, Bettec Corporation ,
Marksherm Corporation, Zilaco, Inc.,
Zilaco, Del Rio Healthcare, Inc.,
Beverly Health & Rehabilitation
Services, Inc. dba Beverly Manor --
Costa Mesa, Internext Group

                Plaintiff,

     v.

The Department of Health Services,
Frank G. Vanacore as the Chief of the
Audit Review and Analysis Section of
the California Department of Health
Services, and Diana M. Bontá, R.N.,
Dr., P.H. as the Director of the
California Department of Health
Services and DOES 1 through 10,

             Defendant.