1   STEPHEN P. BERZON (CSB 46540)
2   SCOTT A. KRONLAND (CSB 171693)
    STACEY M. LEYTON (CSB 203827)
3   ALTSHULER, BERZON, NUSSBAUM,
      RUBIN & DEMAIN
4   177 Post Street, Suite 300
    San Francisco, CA 94108
5   (415) 421-7151

6   Attorneys For Intervenors
    American Federation of Labor and Congress of Industrial
7   Organizations and California Labor Federation, AFL-CIO

8               UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   SOUTHERN DIVISION

11

12

13   THE CHAMBER OF COMMERCE OF    ) Case No. 02-CV-377-GLT (ANX)
     THE UNITED STATES, *et al.*   )
14                                 ) **INTERVENORS'**
        Plaintiffs,                ) **MEMORANDUM IN SUPPORT**
15                                 ) **OF CROSS-MOTION FOR**
        v.                         ) **SUMMARY JUDGMENT OR, IN**
16                                 ) **THE ALTERNATIVE, PARTIAL**
     BILL LOCKYER, *et al.*        ) **SUMMARY JUDGMENT**
17                                 )
        Defendants,                )
18                                 )
        and                        )
19                                 )
     AMERICAN FEDERATION OF        ) Date:    August 26, 2002
20   LABOR AND CONGRESS OF         ) Time:    10:00 a.m.
     INDUSTRIAL ORGANIZATIONS and  ) Place:   Courtroom 10D
21   CALIFORNIA LABOR FEDERATION,  ) Judge:   Hon. Gary L. Taylor
     AFL-CIO,                      )
22                                 )
23      Intervenors.               )

24

25

26

27

28

_Altshuler, Berzon, Nussbaum, Rubin & Demain_
_Attorneys at Law_
_177 Post Street, Suite 300_
_San Francisco, California 94108_

_Filed By_
_**Fax & File**_



**BY FAX**

ENTER ON ICMS

AUG - 9 2002

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

I.    THE COURT MUST RESOLVE JUSTICIABILITY
      ISSUES BEFORE REACHING THE MERITS . . . . . . . . . . . . . .   2

      A.  Abstention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

      B.  Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

      C.  Eleventh Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

II.   AB 1889 IS NOT, ON ITS FACE, PREEMPTED BY
      FEDERAL LAW OR IN CONFLICT WITH THE FEDERAL
      CONSTITUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

      A.  The National Labor Relations Act Does Not Preempt
          AB 1889 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

      B.  The LMRDA Does Not Preempt AB 1889 . . . . . . . . . . .   11

      C.  The Medicare and Medicaid Acts Do Not Preempt
          AB 1889 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

      D.  AB 1889 Does Not Violate The First Amendment . . . . . .   17

      E.  AB 1889 Does Not Violate Equal Protection Or
          Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)                                    i

# TABLE OF AUTHORITIES

## CASES

*Abood v. Detroit Bd. of Educ.*,
   431 U.S. 209 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Alameda Newspapers, Inc. v. City of Oakland*,
   95 F.3d 1406 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Associated Builders & Contractors, Inc. v. City of Seward*,
   966 F.2d 492 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . 9

*Building & Constr. Trades Council v. Associated Builders
   and Contractors*, 507 U.S. 218, 113 S.Ct. 1190 (1993) . . . . . . . . . . . 8, 9

*Building & Constr. Trades Dept. v. Allbaugh*,
   __ F.3d __, 2002 WL 1484942 (D.C. Cir. Jul. 12, 2002) . . . . . . . . . . 9, 11

*Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*,
   136 F.3d 1360 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 3

*Cammarano v. United States*,
   358 U.S. 498, 79 S.Ct. 524 (1959) . . . . . . . . . . . . . . . . . . . 18

*Chamber of Commerce v. Reich*,
   74 F.3d 1322 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 10, 11

*Chicago Teachers Union Local No. 1 v. Hudson*,
   475 U.S. 292, 106 S.Ct. 1066 (1986) . . . . . . . . . . . . . . . . . . 19

*Children's Hosp. and Health Ctr. v. Belshe*,
   188 F.3d 1090 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 14

*Communication Workers v. Beck*,
   487 U.S. 735, 108 S.Ct. 2641 (1988) . . . . . . . . . . . . . . . . . . 19

*Congress of California Seniors v. Catholic Healthcare West*,
   87 Cal. App. 4th 491, 104 Cal.Rptr.2d 655 (2d Dist. 2001) . . . . . 15, 16, 17

*Connecticut Hosp. Assn. v. Weicker*,
   46 F.3d 211 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 15

*Cornwell v. California Bd. of Barbering and Cosmetology*,
   962 F. Supp. 1260 (S.D. Cal. 1997) . . . . . . . . . . . . . . . . . . 2

*Dalton v. Little Rock Family Planning Servs.*,
   516 U.S. 474, 116 S.Ct. 1063 (1996) . . . . . . . . . . . . . . . . . . 14

*Davey v. Locke*,
   __ F.3d __, 2002 WL 1578831 (9th Cir. 2002) . . . . . . . . . . . . . 19, 21

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)     ii

AUG 05 2002 14:47                    4153628064              PAGE.04

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 800
SAN FRANCISCO, CALIFORNIA 94108

*De Veau v. Braisted,*
    363 U.S. 144, 80 S.Ct. 1146 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*Evergreen Presbyterian Ministries Inc. v. Hood,*
    235 F.3d 908 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*FCC v. League of Women Voters,*
    468 U.S. 364, 104 S.Ct. 3106 (1984) . . . . . . . . . . . . . . . . . . 18, 19, 20

*Goldberg v. Kelly,*
    397 U.S. 254, 90 S.Ct. 1011 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Golden State Transit v. City of Los Angeles,*
    475 U.S. 608. 106 S.Ct. 1395 (1986) . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*Good Samaritan Hosp. v. Shalala,*
    508 U.S. 402, 113 S.Ct. 2151 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Great Northern Life Ins. v. Read,*
    322 U.S. 47, 64 S.Ct. 873 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Harris v. McRae,*
    448 U.S. 297, 100 S.Ct. 2671 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hill v. Colorado,*
    530 U.S. 703, 120 S. Ct. 2480 (2000) . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Hoffman Estates v. Flipside,*
    455 U.S. 489, 102 S.Ct. 1186 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hotel Employees, Local 2 v. Marriott Corp.,*
    961 F.2d 1464 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 22

*Lassiter v. Department of Social Servs.,*
    452 U.S. 18, 101 S.Ct. 2153 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Lechmere, Inc. v. NLRB,*
    502 U.S. 527, 1125 S.Ct. 841 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Legal Services Corp. v. Velazquez,*
    531 U.S. 533, 121 S.Ct. 1043 (2001) . . . . . . . . . . . . . . . . . . 18, 19, 21

*Lehnert v. Ferris Faculty Ass'n,*
    500 U.S. 507, 111 S.Ct. 1950 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Linn v. United Plant Guard Workers,*
    383 U.S. 53, 86 S.Ct. 657 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lyng v. Automobile Workers,*
    485 U.S. 360, 108 S.Ct. 1184 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT. No. 02-CV-377-GLT (ANX)                                iii

AUG 05 2002 14:47                                        4153628064              PAGE.05

*Machinists v. Wisconsin Employment Relations Comm'n,*
    427 U.S. 132, 96 S.Ct. 2548 (1976) . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

*Macque-Garcia v. Dominican Santa Cruz Hosp.,*
    2001 WL 406311 (N.D. Cal. Apr. 17, 2001) . . . . . . . . . . . . . . . . . . . 17

*Marin County v. Superior Court,*
    53 Cal.2d 633, 2 Cal.Rptr. 758 (1960) . . . . . . . . . . . . . . . . . . . . 3

*Melugin v. Hames,*
    38 F.3d 1478 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Methodist Hosp. of Sacramento v. Shalala,*
    38 F.3d 1225 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*NLRB v. Gissel Packing Co.,*
    395 U.S. 575, 89 S.Ct. 1918 (1969) . . . . . . . . . . . . . . . . . . . . . . 4

*Near v. State of Minnesota,*
    283 U.S. 697, 51 S.Ct. 625 (1931) . . . . . . . . . . . . . . . . . . . . . . 24

*Palomar Pomerado Health Sys. v. Belshe,*
    180 F.3d 1104 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Pennhurst State School & Hosp. v. Halderman,*
    465 U.S. 89, 104 S.Ct. 900 (1984) . . . . . . . . . . . . . . . . . . . . . . 3

*Regan v. Taxation With Representation,*
    461 U.S. 540, 103 S.Ct. 1997 (1983) . . . . . . . . . . . . . . . . . . . passim

*Reno v. Baird,*
    18 Cal. 4th 640, 76 Cal.Rptr.2d 499 (1998) . . . . . . . . . . . . . . . . . 16

*Republic Aviation v. NLRB,*
    324 U.S. 793, 65 S.Ct. 982 (1945) . . . . . . . . . . . . . . . . . . . . . . 6

*Rust v. Sullivan,*
    500 U.S. 173, 111 S.Ct. 1759 (1991) . . . . . . . . . . . . . . . . . 3, 18, 19, 21

*S.D. Myers v. City and County of San Francisco,*
    253 F.3d 461 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*San Antonio Independent Sch. Dist. v. Rodriguez,*
    411 U.S. 1, 93 S.Ct. 1278 (1973) . . . . . . . . . . . . . . . . . . . . . . 7

*San Diego Building Trades Council v. Garmon,*
    359 U.S. 236, 79 S.Ct. 773 (1959) . . . . . . . . . . . . . . . . . . . . 4, 5, 6

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83, 118 S.Ct. 1003 (1998) . . . . . . . . . . . . . . . . . . . . . 2

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)          iv

*Suarez Corp. Indus. v. McGraw,*
  202 F.3d 676 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 21

*U.S. Airways, Inc. v. National Mediation Board,*
  177 F.3d 985 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . 5

*United States v. Harriss,*
  347 U.S. 612, 74 S.Ct. 808 (1954) . . . . . . . . . . . . . . . . . 24

*United States v. Petrillo,*
  332 U.S. 1, 67 S.Ct. 1538 (1947) . . . . . . . . . . . . . . . . . . 24

*United States v. Salerno,*
  481 U.S. 739, 107 S.Ct. 2095 (1987) . . . . . . . . . . . . . . 1, 3, 4

*Ward v. Rock Against Racism,*
  491 U.S. 781, 109 S.Ct. 2746 (1989) . . . . . . . . . . . . . . . . 24

*Welsh v. Likins,*
  550 F.2d 1122 (8th Cir. 1977) . . . . . . . . . . . . . . . . . . . . 7

*White v. Lee,*
  227 F.3d 1214 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . 6

*White v. Massachusetts Council of Constr. Employers,*
  460 U.S. 204, 103 S.Ct. 1042 (1983) . . . . . . . . . . . . . . . . 20

*Wisconsin Dept. of Industr. v. Gould,*
  475 U.S. 282, 106 S.Ct. 1057 (1986) . . . . . . . . . . . . . . . 9, 10

*Younger v. Harris,*
  401 U.S. 37, 91 S.Ct. 746 (1971) . . . . . . . . . . . . . . . . . . 2

## FEDERAL STATUTES AND REGULATIONS

29 U.S.C.
  §151 *et seq.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  §157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6
  §158 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6
  §158(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6
  §431-§441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
  §433 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
  §433(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
  §433(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  §483 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  §523 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  §1553(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  §2931(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

///

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)                v

AUG 05 2002 14:48                4153628064                PAGE.07

42 U.S.C.
  §1395 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
  §1395a(a)(13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
  §1395g(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
  §1395x(v)(1)(N) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  §1396 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
  §1396a(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
  §1396a(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
  §9839(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  §12634(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

42 CFR
  §§430.10-430.18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
  §430 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## CALIFORNIA STATUTES AND REGULATIONS

California Government Code
  §§16645-16649 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
  §16645(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23
  §16645(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
  §16645.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  §16645.2 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  §16645.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 209
  §16645.4(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  §16645.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
  §16645.5(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
  §16645.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  §16645.7(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  §16646(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
  §16647 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
  §16647(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
  §16647(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
  §16648 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

California Unemployment Insurance Code
  §10200 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Welfare and Institutions Code
  §14126.25(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cal. Stats. 2000, Ch. 872, §1 . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## MISCELLANEOUS

L. Tribe, *American Constitutional Law* (2d ed. 1988) . . . . . . . . . . . . . . 24

*Webster's Collegiate Dictionary* (10th ed. 1997) . . . . . . . . . . . . . . . . 23

143 Cong. Rec. S4000 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)                    vi

AUG 05 2002 14:48                                      4153628064        PAGE.08

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

# INTRODUCTION

The California Legislature declared in its preamble to Assembly Bill 1889 that "[i]t is the policy of the state not to interfere with an employee's choice about whether to join or to be represented by a labor union" and consequently "the state should not *subsidize* efforts by an employer to assist, promote, or deter union organizing." Cal. Stats. 2000, Ch. 872, §1 (emphasis supplied). The various substantive provisions of AB 1889, codified at Government Code §§16645-16649, are tailored to achieve that legitimate statutory purpose by ensuring that "state funds" and "state property" are not used to "subsidize [such] efforts."

To this end, AB 1889 prohibits public and private employers from using "state funds" -- received through appropriations, grants, contracts, state programs, and reimbursements -- to "assist," to "promote," or to "deter" union organizing. The statute also prohibits state contractors from holding meetings about unionization on "state property" that is "not equally available . . . to the general public." And, the statute prohibits employers from attempting to influence employees about unionization while they are "performing work on a [state] service contract." Nothing in AB 1889, however, places restrictions on the use of non-state funds, or private property or state property open to the general public, or the time of employees while they are not being paid to perform services for the state.

Plaintiffs ask the Court for a declaratory judgment striking down AB 1889 in its entirety. To succeed on such a challenge, plaintiffs must "establish that *no set of circumstances* exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987) (emphasis supplied); *S.D. Myers v. City and County of San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001). Plaintiffs cannot meet that standard. Accordingly, if the Court concludes that any plaintiffs have justiciable claims, it should reject their challenge to the statute.

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT. No. 02-CV-377-GLT (ANX)     1

AUG 05 2002 14:49     4153628064     PAGE.09

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

# ARGUMENT

## I.  THE COURT MUST RESOLVE JUSTICIABILITY ISSUES BEFORE REACHING THE MERITS.

We will demonstrate in our opposition to plaintiffs' motion for summary judgment that there are genuine issues of fact as to whether many of plaintiffs' claims are justiciable. These threshold issues must be resolved before the Court turns to the merits of those claims. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). Several other threshold matters can be disposed of now because there are no material facts in dispute.

**A. Abstention:** The Court must abstain, under *Younger v. Harris*, 401 U.S. 37 (1971), from hearing the claims of the California Association of Health Facilities (CAHF). CAHF predicates standing solely on the standing of its members. Complaint, ¶¶15-16. One of those members is Fountain View, Inc., the defendant in a pending state court proceeding to enforce AB 1889. Intervenors' Statement of Uncontroverted Facts ("ISUF"), ¶3. Because the Court would have to abstain from hearing Fountain View's claims, it must abstain from hearing CAHF's derivative claims. *See* July 2, 2002 Order Denying in Part Defendants' Motion to Dismiss at 4-5 (citing *Cornwell v. California Bd. of Barbering and Cosmetology,* 962 F. Supp. 1260, 1270-71 (S.D. Cal. 1997)). CAHF cannot avoid abstention by claiming to represent all its members *except* Fountain View. Fountain View is the member that most clearly would have standing, and CAHF's disclaimer of an interest in representing Fountain View would be a fiction to manipulate the *Younger* doctrine.

**B. Standing:** The Court must dismiss, for lack of standing, plaintiffs' challenge to the provision of AB 1889 that applies to public employers, Gov. Code §16645.6. No plaintiff purports to be a public employer. One plaintiff, the California Healthcare Association, alleges it has public employer members who would have standing to challenge AB 1889. Complaint, ¶12. But those

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)                    2

AUG 05 2002 14:49                              4153628064         PAGE.10

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

members are Palomar Pomerado Health System and Valley Health System. ISUF, ¶6. These two entities are local health care districts (ISUF, ¶7), and consequently lack standing to sue state officials in federal court because they are political subdivisions of the State. *See Palomar Pomerado Health Sys. v. Belshe*, 180 F.3d 1104, 1107 (9th Cir. 1999).

Plaintiffs' interrogatory responses identify a third public employer, Golden Sierra Job Training Agency, as a member of one of the plaintiff associations. ISUF, ¶6. But Golden Sierra is a joint powers authority formed by several counties (ISUF, ¶8), so it is a political subdivision of the State as well. *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1363-64 (9th Cir. 1998) (joint powers authority created by political subdivisions is a political subdivision and lacks standing); *Marin County v. Superior Court*, 53 Cal.2d 633, 638-39 (1960) ("county is merely a political subdivision").

C. **Eleventh Amendment**:  Plaintiffs' pendent claims based on the State Constitution are all barred by the Eleventh Amendment, which prohibits "[a] federal court's grant of relief against state officials on the basis of state law." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

II. **AB 1889 IS NOT, ON ITS FACE, PREEMPTED BY FEDERAL LAW OR IN CONFLICT WITH THE FEDERAL CONSTITUTION.**

The Complaint seeks a judgment prohibiting enforcement of AB 1889 against anyone, under any circumstances. To succeed on such a facial challenge, plaintiffs must "establish that *no set of circumstances exists* under which the Act would be valid." *Salerno*, 481 U.S. at 745 (emphasis supplied); *Rust v. Sullivan*, 500 U.S. 173, 183 (1991). That a statute might be invalid "under some conceivable set of circumstances is insufficient to render it wholly invalid." *Salerno*, 481 U.S. at 754. *See also Hoffman Estates v. Flipside*, 455 U.S. 489, 494 n.5 (1982) ("A 'facial' challenge . . . means a claim that the law is 'invalid in toto — and therefore incapable of any valid application.'").

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT. No. 02-CV-377-GLT (ANX)    3

AUG 05 2002 14:49    4153628064    PAGE.11

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 800
SAN FRANCISCO, CALIFORNIA 94108

1    The Ninth Circuit recently reaffirmed that "high burden of proof" for

2    facial challenges in *S.D. Myers*, rejecting the argument that a plaintiff could

3    prevail by showing that a law "would operate as a substantial obstacle to an

4    otherwise lawful course of action in a large fraction of relevant cases." 253 F.3d

5    at 464. The Ninth Circuit also emphasized that a court must "construe the [law]

6    narrowly and resolve any ambiguities in favor of the interpretation" that supports

7    the law's validity. *Id.* Because plaintiffs cannot meet the burden of showing

8    that "no set of circumstances exists" (*Salerno*, 481 U.S. at 745) under which AB

9    1889 can validly be applied, the Court should (if it concludes that some plaintiffs

10   have justiciable claims) reject their challenge to the statute.

11       A.    **The National Labor Relations Act Does Not Preempt AB 1889.**

12       *Garmon Preemption*:  Plaintiffs' initial submission is that AB 1889 is

13   preempted by the NLRA, 29 U.S.C. §151 *et seq.*, under the *Garmon* doctrine,

14   which forbids state and local regulation of activities that are "protected by §7 of

15   the [NLRA] or constitute an unfair labor practice under §8." *San Diego Building*

16   *Trades Council v. Garmon*, 359 U.S. 236, 244 (1959). The limited purpose of

17   *Garmon* preemption is to prevent state interference with the primary jurisdiction

18   of the National Labor Relations Board (NLRB) to enforce the NLRA. *See*

19   *Golden State Transit v. City of Los Angeles*, 475 U.S. 608, 613 (1986).

20       According to plaintiffs, AB 1889 is preempted because it seeks to regulate

21   employer free speech, a right they claim is "protected by § 8(c)" of the NLRA.

22   Pl. Br. at 9:1. However, §8(c) does *not* establish an affirmative NLRA right of

23   employer free speech enforceable by the NLRB.

24       Section 7 of the NLRA sets out the activities the NLRA protects. Section

25   8 provides that certain activities are unfair labor practices. *See Garmon*, 359

26   U.S. at 244. Section 8(c) of the NLRA does not make employer speech a

27   protected NLRA right; it "merely implements the First Amendment" (*NLRB v.*

28   *Gissel Packing Co.*, 395 U.S. 575, 617 (1969)), by providing that "[t]he

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)                            4

expressing of any views . . . shall not constitute *evidence of an unfair labor practice* under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit." 29 U.S.C. §158(c) (emphasis supplied). As the Ninth Circuit has held, this section "merely states an employer does not commit an unfair labor practice by expressing its views regarding unionization." *Hotel Employees, Local 2 v. Marriott Corp.*, 961 F.2d 1464, 1470 n.9 (9th Cir. 1992). *See also U.S. Airways, Inc. v. National Mediation Board*, 177 F.3d 985, 991 (D.C. Cir. 1999).

Plaintiffs claim that *Linn v. United Plant Guard Workers*, 383 U.S. 53 (1966), stands for the proposition that "preemption under *Garmon* exists when states attempt to regulate either employer or union speech protected by §8(c)." Pl. Br. at 8:27-9:3. But *Linn* — which involved a defamation claim brought by a company's manager against a union, two union organizers, and an employee — addressed a claim of *Garmon* preemption based on the protected status of *employee* speech as established by §7, *not* based on any protection of *employer* speech under §8(c). *See Linn*, 383 U.S. at 60-61 (discussing §7 protections). Indeed, *Linn* contrasted §8(c)'s "narrower purpose" (to establish an evidentiary rule) with "the express protection given union members" by other provisions of federal labor law. *Id.* at 63 n.5.

Some cases do refer in passing to "rights protected by §8(c)," but those cases are referring to First Amendment rights that §8(c) ensures are not impaired by the NLRA – not to special employer free speech rights established by the NLRA. In fact, the plaintiffs have matters backwards: The NLRA restricts employer speech; it does not protect employer speech. Under the NLRA, "[t]he First Amendment rights of employers 'in the context of the labor relations setting' are limited to an extent that would rarely, if ever be tolerated in other

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN

ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)        5

AUG 05 2002 14:50                        4153628064                PAGE.13

contexts." *White v. Lee*, 227 F.3d 1214, 1236-37 (9th Cir. 2000).[1]

The error in plaintiffs' *Garmon* analysis is shown by two points in particular. First, plaintiffs do not cite – nor can we find – *a single reported case* that has held a state law preempted by §8(c) in the 55 years since the provision was adopted. Second, no employer has filed a charge with the NLRB concerning unions' efforts to enforce the state law; nor can plaintiffs describe any charge that could be filed to assert their right to free speech in this situation.

Additionally, §8(c), whatever its force, certainly does not protect an employer's right to use *state* funds and facilities to engage in speech any more than it protects an employer's right to use a private party's money or property to advance the employer's agenda. The State need not provide employers with grants to hire anti-union consultants any more than private foundations must make such grants. Plaintiffs' *Garmon* argument ultimately depends not merely on a non-existent NLRA protection for employer speech but on the existence of an NLRA right to have the State *subsidize* that speech.

*Machinists Preemption:* Plaintiffs also argue that AB 1889 is preempted by the NLRA under the *Machinists* doctrine, which prohibits state and local governments from regulating areas of labor relations that Congress left "to be controlled by the free play of economic forces." *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 140 (1976).

---

[1] Plaintiffs slip in references to an alleged infringement of *employees'* §8(c) rights. *See* Pl. Br. at 9:4-5, 8-9. However, they cite cases that address employee rights under §7, not §8. *See Republic Aviation v. NLRB*, 324 U.S. 793, 803 n.10 (1945) (addressing right of "self-organization" established by §7). Plaintiffs specifically object to Frank Vanacore's letter stating that AB 1889 prohibits employees paid with state funds from assisting, promoting or deterring union organizing "during work hours, i.e., during time that they are being compensated with state funds." Cohen Decl., Ex.2; *see* Pl. Br. at 9:6-9. However, the letter by Mr. Vanacore does not indicate that he was addressing the situation of employees on breaks. Even if Mr. Vanacore *had* erroneously interpreted AB 1889 to forbid discussion of unionization during employee breaks, one state official's opinion would not constitute an authoritative construction of the law.

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)    6

AUG 05 2002 14:51    4153628064    PAGE.14

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

The crucial inquiry with respect to the *Machinists* preemption doctrine is whether Congress intended a particular area to be free from regulation. *See Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608, 614 (1986) (*Machinists* preemption applies when Congress intended to leave certain areas unregulated); *Alameda Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406, 1413 (9th Cir. 1996). Here, there is no indication in the NLRA that Congress intended to preclude states from imposing restrictions upon the permissible uses of their own funds and facilities. *See, e.g., Welsh v. Likins*, 550 F.2d 1122, 1131-32 (8th Cir. 1977) ("In this case we are dealing with the right of a sovereign state to manage and control its own financial affairs. No right of a state is entitled to greater respect by the federal courts . . . .").[2]

In fact, there are powerful indications to the contrary. Congress itself has, on repeated occasions, enacted statutes that impose restrictions upon the uses of federal funds that parallel AB 1889's spending restrictions. *E.g.,* Job Training Partnership Act, 29 U.S.C. §1553(c)(1) ("Each recipient of funds . . . shall provide to the Secretary assurances that none of such funds will be used to assist, promote, or deter union organizing."); Workforce Investment Act, 29 U.S.C. §2931(b)(7) (same restriction); National Community Service Act, 42 U.S.C. §12634(b)(1) (similar restriction); Head Start Programs Act, 42 U.S.C. §9839(e) (similar restriction). Nursing facilities and hospitals are already subject to a federal statutory restriction upon which union-related costs may be reimbursable under the Medicare program. *See* Medicare Act, 42 U.S.C. §1395x(v)(1)(N) ("In

---

[2] A state's sovereign authority to control its own financial affairs has been recognized in a wide range of federalism cases. For example, the Eleventh Amendment protects the state treasury from damage awards even where injunctive relief would be allowed. *See Great Northern Life Ins. v. Read*, 322 U.S. 47, 53-54 (1947) (protecting states from "judicial interference in the vital field of financial administration"). The Supreme Court has also refused to order states to redistribute funds between school districts because, *inter alia,* states' decisions regarding fiscal policy are an area in which the Court has "traditionally deferred to state legislatures." *San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1, 40 (1973).

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, NO. 02-CV-377-GLT (ANX)    7

AUG 05 2002 14:51    4153628064    PAGE.15

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

determining reasonable costs, costs incurred for activities directly related to influencing employees about unionization may not be included.").

"The fact that Congress itself has . . . imposed the same type of restriction . . . as [a state] seeks to impose . . . is surely evidence that Congress does not view such a restriction as incompatible with its labor policies." *De Veau v. Braisted*, 363 U.S. 144, 156 (1960) (plurality opinion). Plaintiffs provide no support for their position that, despite Congress's determination that restrictions upon the use of federal funds "to assist, promote, or deter union organizing" pose no conflict with the NLRA, Congress believed a similar restriction upon the use of state funds would present such a conflict.

In *Alameda Newspapers*, the Ninth Circuit cautioned that it would not "be proper for [the court] simply to assume that Congress intended to say to states and cities: you are required to force your officials, employees, and invitees to cross picket lines or enter boycotted premises against their wishes and yours." 95 F.3d at 1416. Likewise, the Court should not conclude without some evidence in the statute that Congress intended the NLRA to force states to permit grantees, contractors, and other recipients of government funds to use those funds to persuade employees to support or oppose a unionization drive rather than for purposes designated by the relevant grant or contract. Because there is no such evidence, AB 1889 should not be held preempted under *Machinists*.

*Proprietary Activity*: Not only do plaintiffs' *Garmon* and *Machinists* arguments fail on their own terms, those doctrines should not even be applied to AB 1889. When the state acts as a market participant in the service of proprietary interests, its actions are "not subject to preemption by the NLRA, because preemption doctrines apply only to state *regulation*." *Building & Constr. Trades Council v. Associated Builders and Contractors*, 507 U.S. 218, 227 (1993) ("*Boston Harbor*") (emphasis in original). Thus, the Court has held that a state's directive that successful bidders for state-owned construction

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE. PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)    8

AUG 05 2002 14:52    4153628064    PAGE.16

projects agree to terms of a project labor agreement was not preempted by the NLRA, because in adopting this requirement the state "was attempting to ensure an efficient project that would be completed as quickly and effectively as possible at the lowest cost." *Boston Harbor*, 507 U.S. at 232.[3]

In *Boston Harbor*, the Court made clear that the NLRA was not "intended to supplant . . . all legitimate state activity that affects labor." *Id.* at 227. It drew a "distinction between government as regulator and government as proprietor" and made clear that the government acts as proprietor both when it purchases goods and services and when it "owns and manages property." *Id.* In determining whether the state is acting as a proprietor or as a regulator, the inquiry properly focuses "on the question whether the [challenged action] had the sole purpose of regulating conduct that Congress intended to be unregulated or whether '[an]other purpose could credibly be ascribed'" to that action. *Assoc. Builders & Contractors v. City of Seward*, 966 F.2d 492, 496 (9th Cir. 1992) (quoting *Wisconsin Dept. of Industr. v. Gould*, 475 U.S. 282, 287 (1986)).

Here, the purpose of AB 1889 is not to regulate labor relations. California adopted AB 1889 to ensure that *its own funds and facilities* are not used to "subsidize efforts by an employer to assist, promote, or deter union organizing." AB 1889, §1. Legitimate proprietary interests are served by this legislation: Those interests are, among others, avoiding state entanglement in conflicts over unionization, controlling costs, and ensuring that state money is spent for designated purposes.

---

[3] Plaintiffs argue that *Boston Harbor* is inapposite because the Court's holding rested "on the fact that the challenged action was specifically tailored to one particular job." Pl. Br., 12:28-13:1. However, although the Court noted that the legislation was tailored to one project as evidence the state was acting to ensure the project was completed on time and on budget, it did not hold that the breadth of a state-imposed requirement is the dispositive factor in the proprietary versus regulatory inquiry. *See Building & Constr. Trades Dept. v. Allbaugh*, ___ F.3d ___, 2002 WL 1484942 at *7 (D.C. Cir. Jul. 12, 2002) (rejecting argument that "'blanket rule' . . . is somehow inconsistent with the action of a proprietor").

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)    9

AUG 05 2002 14:52    4153628064    PAGE.17

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

1   For example, California has a program in which its Employment Training

2   Panel provides state funds to employers to subsidize the costs of vocational

3   training for employees.  *See* Cal. Unempl. Ins. Code §10200 *et seq.*  If

4   participants in that program could use some of those funds to influence the

5   employees about unionization, the State would be subsidizing an activity it does

6   not wish to subsidize at the expense of the vocational education it intends to

7   fund.  Similarly, when the State's reimbursement rates for a particular program

8   are based on past reportable costs, AB 1889 helps to keep those costs – and,

9   thereby, reimbursement rates – lower than they would be if the State were

10  reimbursing employers for the costs of campaigns for or against unionization.

11  *See, e.g.*, Cal. Welf. & Inst. Code §14126.25(a); Morrow Decl. ¶3.[4]

12      Plaintiffs erroneously contend that similar laws to AB 1889 have been

13  held to be regulatory, but the cases they rely upon are fundamentally different.

14  In *Gould*, 475 U.S. at 283-84, Wisconsin refused to do business with employers

15  found to have violated the NLRA.  In *Chamber of Commerce v. Reich*, 74 F.3d

16  1322, 1338 (D.C. Cir. 1996), the government refused to do business with

17  employers that exercised their NLRA rights to use striker replacements, *even on*

18  *non-government projects*.  Thus, in both cases, the state imposed punishment

19  upon employers because they had engaged in conduct that had nothing to do

20  with government contracts, funds, or facilities.

21      By contrast, in a case directly pertinent to this one, the D.C. Circuit

22  recently upheld, against an NLRA-preemption challenge, President Bush's

---

23

24      [4] That the statute is not an impermissible regulation of labor relations is
    made clear by examining the radical implications of plaintiffs' argument.  If the

25  State cannot prevent its funds and property from being used to promote or deter
    unionization because this would interfere with the balance of power between

26  labor and management, the State similarly cannot allow its funds and property to
    be so used.  If a neutral restriction on the use of funds tips the balance in one

27  direction, it follows logically that a neutral lack of restriction tips the balance in
    the other.  Plaintiffs' argument would place the State in an impossible position

28  and thus cannot be accepted.

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)                    10

AUG 05 2002 14:52                                        4153628064        PAGE.18

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

executive order barring an entity that receives federal funding for a construction project from requiring or prohibiting project labor agreements on that federally funded project. The D.C. Circuit held that "the Government unquestionably is the proprietor of its own funds, and when it acts to ensure the most effective use of those funds, it is acting in a proprietary capacity." *Allbaugh*, 2002 WL 1484942 at *7. The Court distinguished its earlier decision in *Chamber of Commerce v. Reich* because the restriction in *Reich* "disqualified companies from contracting with the Government on the basis of *conduct unrelated to any work they were doing for the Government*." *Id.* at *7 (emphasis supplied).

In this case, as in *Allbaugh*, the government has attached a restriction to how its own funds are used. It has not refused to do business with anyone based on conduct unrelated to the permissible uses of government funds. Since "the Government unquestionably is the proprietor of its own funds," NLRA preemption doctrines do not apply.

**B.     The LMRDA Does Not Preempt AB 1889.**

Title II of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §431-§441, requires employers and labor organizations to file reports with the Secretary of Labor. The LMRDA provision on which plaintiffs focus their attention is 29 U.S.C. §433, entitled "Report of Employers," which requires that employers file reports disclosing certain "payments, loans, promises, agreements, or arrangements" related to, among other matters, efforts to "persuade employees to exercise or not to exercise . . . the right to organize and bargain collectively . . . ." 29 U.S.C. §433(a). Plaintiffs contend that, by adopting LMRDA Title II, Congress preempted the states from requiring employers to keep records of spending on the same "persuader" activities – and of spending on similar "persuader" activities that Congress did not require employers to disclose on LMRDA reports.

Congress, however, expressly addressed the very limited extent to which

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)                               11

AUG 05 2002 14:53                                    4153628064                    PAGE.19

LMRDA Title II preempts state laws, providing in 29 U.S.C. §433(c): "No person shall be required by reason of any law of any State to furnish to any officer or agency of such State any information included in a report filed by such person with the Secretary pursuant to the provisions of this title, if a copy of such report, or of the portion thereof containing such information, is furnished to such officer or agency." Thus, the *sole* preemptive effect of Title II is that is prevents states from burdening employers and labor organizations by requiring them to furnish the same information contained in an LMRDA report if the report itself is furnished.

AB 1889 does not require employers to furnish the same information contained in an LMRDA report; rather it requires employers that receive state funds to "maintain records sufficient to show *that no state funds were used* for those expenditures" and to "provide those records to the Attorney General upon request." Gov. Code §§16645.1(b), 16645.2 (c), 16645.4(c), 16645.7(b) (emphasis supplied). AB 1889 also provides that "[n]othing in this chapter requires employers to maintain records in any particular form." Gov. Code §16648. If there were overlap between the records required by AB 1889 and the information reported on LMRDA forms, the employer could furnish the LMRDA form to satisfy that part of its AB 1889 obligation. Accordingly, AB 1889 is not preempted by LMRDA Title II.

Plaintiffs ask the Court to give Title II a broader preemptive effect than Congress provided in the statute. But, in the LMRDA, "Congress did not leave the solution of questions of preemption to inference. When Congress meant preemption to flow from the 1959 Act it expressly so provided." *De Veau,* 363 U.S. at 156; *see also* 29 U.S.C. §§483, 523. Plaintiffs also do not cite, and we are not aware of, *any* reported decision in the 43 years since the LMRDA was adopted that holds that Title II preempts a state or local law.

The absurdity of plaintiffs' LMRDA Title II field preemption argument is

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

also demonstrated by the range of other state schemes that would be preempted under plaintiffs' theory. For example, a general state requirement that grant recipients keep records of all expenditures for accountability purposes would be preempted, because it would require the keeping of records regarding matters that employers are not required to report by the LMRDA. Similarly, state tax codes would be preempted if they effectively required that records be kept regarding business expenses that need not be reported on LMRDA forms. Congress could not have intended that result.

### C.   The Medicare And Medicaid Acts Do Not Preempt AB 1889.

Plaintiffs contend that AB 1889 is preempted by the Medicare and Medicaid Acts because Congress occupied the field of "provider cost reporting and reimbursement." Complaint at ¶39. This argument blurs the crucial distinction between the Medicare and Medicaid Acts.[5]

Medicare is a federally funded health insurance program for the aged and disabled. *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 404 (1993); *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1226-27 (D.C. Cir. 1994). Under Medicare, health care providers enter into agreements with the "the [federal] Secretary of Health and Human Services [("Secretary")] pursuant to which they are reimbursed for certain costs associated with the treatment of Medicare beneficiaries." *Good Samaritan*, 508 U.S. at 404. Federal statutes and regulations govern this reimbursement system. *See id.* at 404-06; *Methodist Hosp.*, 38 F.3d at 1227-28.

Because Medicare is a program in which no state funds are involved, AB 1889 does not apply to health care providers with respect to their Medicare reimbursements. That being so, it would be bizarre to conclude that Congress

---

[5] Medicare was established in Title XVIII of the Social Security Act, 42 U.S.C. §1395 *et seq.* ("Medicare Act") and Medicaid was created in Title XIX of Social Security Act, 42 U.S.C. §1396 *et seq.* ("Medicaid Act").

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)                                13

AUG 05 2002 14:54                                        4153628064            PAGE.21

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

intended the Medicare Act to preempt a law like AB 1889.  *Cf. Dalton v. Little Rock Family Planning* Servs., 516 U.S. 474, 477 (1996) (Medicaid Act did not preempt state constitution's "application to funding that does not involve the Medicaid program").

Medic*aid* is a distinct program.  A form of "cooperative federalism," Medicaid is a program through which the federal government provides financial assistance to states; the states in turn provide medical treatment to financially needy persons. *See Harris v. McRae*, 448 U.S. 297, 308 (1980).  "Unlike Medicare, which is administered nationally, the Medicaid Act is administered by the individual states that choose to participate in the program."  *Children's Hosp. and Health Ctr. v. Belshe*, 188 F.3d 1090, 1093 (9th Cir. 1999).  To participate in the Medicaid program, a state must establish a "State plan for medical assistance" that conforms to federal requirements.  42 U.S.C. §1396a(a); *see also* 42 CFR §430 *et seq.*; *Harris*, 448 U.S. at 308.  "This plan must detail the state's coverage and include the methodology it will use to reimburse institutional health care providers for the services they render to Medicaid recipients."  *Children's Hosp.*, 188 F.3d at 1093.  Participating states must submit their plans to the federal government; the federal government approves those plans that conform to federal requirements. *See* 42 U.S.C. §1396a(a); 42 CFR §§430.10-430.18; *Children's Hosp.*, 188 F.3d at 1093.

The Medicaid Act allows states freedom to design their own reimbursement schemes so long as the schemes are developed in accordance with a "public process."  42 U.S.C. §1395a(a)(13).  Congress enacted this provision – and repealed the predecessor reimbursement provision, known as the Boren Amendment – in order "to provide States with greater flexibility in setting provider reimbursement rates under the Medicaid Program."  143 Cong. Rec. S4000 (1997) (statement of Sen. Hutchison); *see also Evergreen Presbyterian Ministries Inc. v. Hood*, 235 F.3d 908, 919 n.12 (5th Cir. 2000) ("Congress

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)                                    14

AUG 05 2002 14:54                                              4153628064          PAGE.22

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO CALIFORNIA 94108

intended to free the states from federal regulation"). California is at liberty to
develop reimbursement principles entirely of its own creation or to borrow from
federal Medicare practice. *See Connecticut Hosp. Assn. v. Weicker*, 46 F.3d 211,
218 (2d Cir. 1995) (under Boren Amendment, which gave states less flexibility
than they now have, "New York's Medicaid system [was] one of its own design,
while Connecticut expressly [chose] to follow the federal Medicare principles").

California has incorporated the requirements of AB 1889 into its State
Plan, and that plan has been approved by the United States Centers for Medicare
and Medicaid Services (CMS), the federal agency responsible for administering
the Medicare and Medicaid Acts, as consistent with federal law. ISUF, ¶9; *see
also* 42 U.S.C. §1396a(b) ("The Secretary shall approve any plan which fulfills
the conditions" of participation in the Medicaid program). Accordingly,
California may implement that State Plan, including the AB 1889 restrictions.

Plaintiffs appear to rest their Medicare/Medicaid preemption argument
entirely on overbroad language in *Congress of California Seniors v. Catholic
Healthcare West,* 87 Cal. App. 4th 491 (2d Dist. 2001) ("*CCS*"), a case that
focused primarily on the Medicare Act. In *CCS,* plaintiffs brought suit under
California's Unfair Practices Act seeking state law remedies for the defendant
health care providers' alleged violations of Medicare and Medi-Cal cost
reporting requirements. The Medicare Act requires providers to submit a cost
report to obtain reimbursement. 42 U.S.C. §1395g(a). The plaintiffs in *CCS*
contended, *inter alia,* that defendants violated federal Medicare reporting
requirements, and thus committed conduct remediable under the state Unfair
Practices Act. *CCS,* 87 Cal. App. 4th at 493-94. After examining Medicare's
"enormously complicated" reimbursement system, the state appellate court held
that Congress had occupied the field of Medicare provider cost reporting and
reimbursement. *Id.* at 509. The *CCS* Court then went on to hold, without further
analysis, that plaintiffs' Unfair Practices Act claims predicated on Medi-*Cal*

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)    15

AUG 05 2002 14:54    4153628064    PAGE.23

reporting violations were also preempted. *Id.* at 510. The only reason offered for this later conclusion was that "Medi-Cal reporting and reimbursement is inextricably tied to Medicare cost reporting." *Id.*

In fact, as explained above, Medi-Cal's reimbursement system is *not* "inextricably tied to Medicare." The Court in *CCS* may have misapprehended the relationship between Medi-Cal and Medicare because California has *chosen*, as a matter of *state* law, to adopt Medicare reimbursement principles.[6] Under California's reimbursement system, Medi-Cal providers such as nursing facilities are required to "submit cost reports in the manner approved by the State." California State Plan Under Title XIX of Social Security Act ("State Plan"), Attachment 4.19-D (Hardiman Decl., Ex. C), §II.A at 5. California then sets prospective reimbursement rates for various categories of medical services "on the basis of cost reports submitted by facilities." State Plan, Attachment 4.19-D (Hardiman Decl., Exh. C), §IV at 10. (The state has differing reimbursement formulas for hospitals, but also requires hospitals to submit cost reports. State Plan, Attachment 4.19-A (Hardiman Decl., Exh. A), §I(19) at 1.1 and §II.A at 2). California has chosen, as part of its reimbursement system, to adopt "Medicare reimbursement principles as specified in 42 Code of Federal Regulations (CFR) Part 413," in delineating the reasonable "allowable costs" that Medicaid providers may include in their cost reports and upon which, in turn, California will develop Medicaid reimbursement rates. State Plan, Attachment 4.19-D (Hardiman Decl., Exh. C), §II.B at 7; Attachment 4.19-A (Hardiman Decl., Exh. A), §II.A.2 at 2.

---

[6] Even though California has incorporated, into its state Medicaid reporting requirements, federal Medicare principles, its reporting requirements remain creatures of state law. For instance, although California courts have adopted federal antidiscrimination principles in cases arising under the state antidiscrimination statute, *Reno v. Baird*, 18 Cal. 4th 640, 659 (1998), no one would contend that, by virtue off the incorporation of federal standards into state law, a claim under the state statute is transformed into a claim under federal law.

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)                    16

AUG 05 2002 14:55                                4153628064              PAGE.24

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

California has also chosen, however, to *supplement* Medicare principles through the adoption of AB 1889. California's State Plan for medical assistance reflects that choice and thus prohibits Medi-Cal providers from reporting as "allowable costs" "expenditures to assist, promote, or deter union organizing to the extent such expenditures are paid by the provider with State funds." State Plan, Attachment 4.19-D (Hardiman Decl., Exh. C), §II.B.4(a) at 8; Attachment 4.19-A (Hardiman Decl., Exh. A), §II.L at 3.1. These provisions are as much a part of the State Plan as any other provisions.

That California chose to adopt by reference the Medicare reporting scheme for Medicaid does not preclude the State from adding its own, additional Medicaid cost reporting principles as well. Nor does *CCS*'s holding that the Medi*care* Act preempts the field of Medicare provider reimbursement have any bearing on this case because this case involves only regulation of state Medi*caid* funds. *See Macque-Garcia v. Dominican Santa Cruz Hosp.*, 2001 WL 406311 at *1 n.2, *4 (N.D. Cal. Apr. 17, 2001) (stating, in suit raising state law claims for violations of Medi-Cal reimbursement provision, "[d]efendants' arguments [based on *CCS*] that the state claims are preempted by Medicare law is without merit. . . . Here, there are no Medicare claims to adjudicate . . . .").

### D.   AB 1889 Does Not Violate The First Amendment.

*Unconstitutional Conditions*:   Plaintiffs' primary First Amendment argument is that AB 1889's restrictions on the use of state funds impose an unconstitutional condition. That argument is foreclosed by precedent.

In *Regan v. Taxation With Representation*, 461 U.S. 540 (1983), the Supreme Court held that a restriction on lobbying by organizations that receive tax-exempt status did not violate the First Amendment. The Court reasoned that, although "[a] tax exemption has much the same effect as a cash grant to the organization," the government did not infringe upon the First Amendment by "refus[ing] to pay for lobbying out of public monies." *Id.* at 544, 545. Eight

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)     17

AUG 05 2002 14:55     4153628064     PAGE.25

years later, the Court applied *Regan* in a spending case, holding that the federal government could, consistent with the First Amendment, prohibit the use of federal funds by programs in which abortion was a method of family planning. *See Rust*, 500 U.S. at 193 ("[A] legislature's decision not to subsidize the exercise of a fundamental right does not infringe on that right"); *see also Cammarano v. United States*, 358 U.S. 498, 513 (1959) ("Petitioners are not being denied a tax deduction because they engage in constitutionally protected activities, but are simply being required to pay for those activities out of their own pockets . . . .").

The teaching of these precedents is that the government may control how government funds are spent and government tax deductions targeted, and therefore need not subsidize activities by private parties – even activities protected by the First Amendment. Unconstitutional conditions arise only when a condition prevents the recipient of funds from engaging in the conduct *outside* the government funded program with *non-government* resources. *See Regan*, 461 U.S. at 545-46; *Rust*, 500 U.S. at 197. In *Rust* and *Regan*, the statutes were constitutional because the recipients of government funds or tax benefits could exercise their First Amendment rights by setting up "legally separate" organizations that did not receive federal funds or benefits. *See Regan*, 461 U.S. at 544; *Rust*, 500 U.S. at 196.

By contrast, in the case that plaintiffs rely upon, *FCC v. League of Women Voters*, 468 U.S. 364 (1984), the statute was unconstitutional because television and radio stations could not use *non-federal* funds to editorialize. *See id. at* 401 (distinguishing *Regan* because the law at issue did not permit "a station . . . to segregate its activities according to the source of its funding" but rather "barred [a station] from using even wholly private funds to finance its editorial activity"). Similarly, in *Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001), the Court found it significant that the law would not permit a litigant represented

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)    18

AUG 05 2002 14:56    4153628064    PAGE.26

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

1  by a Legal Services Corporation ("LSC") attorney to present a constitutional

2  challenge to a welfare statute, even through joint representation by a non-LSC

3  attorney, leaving "no alternative channel for expression of the advocacy

4  Congress [sought] to restrict . . . in stark contrast to *Rust*." *Id.* at 544-47. *See*

5  *also Davey v. Locke*, ___ F.3d ___, 2002 WL 1578831, at *7 (9th Cir. 2002)

6  ("Grantees in the *Rust* line of cases could have their cake and eat it, too; that is,

7  they could accept the grant and use it for the program's restricted purpose, yet

8  remain free to tap non-government resources for non-favored activities which

9  could then be conducted independently.").

10       Like the statutes at issue in *Rust* and *Regan*, AB 1889 permits recipients of

11  government funds to use other monies to advance their views. Moreover, the

12  administrative burdens imposed by AB 1889 on the exercise of First Amendment

13  rights are far less than the burdens imposed by the federal statutes held to be

14  valid. Under AB 1889, unlike the schemes upheld in *Rust* and *Regan*, recipients

15  of state funds need not create *separate legal entities* to advance their views; they

16  merely must keep records sufficient to show that state funds are not used for

17  prohibited purposes. *See Regan*, 461 U.S. at 544 n.6 (requiring separate

18  incorporation of affiliate organization "is not unduly burdensome"); *Rust*, 500

19  U.S. at 180 (upholding detailed "program integrity" requirements).[7]

20       Plaintiffs contend this case is analogous to *FCC* because "state

21  contractors and leaseholders are 'barred from using even wholly private funds to

22  finance' speech related to union organizing." Pl. Br. at 18 n.10:25-26 (quoting

23  _____

24       [7] It is ironic that plaintiffs see a First Amendment problem in the minor
     recordkeeping requirements of AB 1889. Not only are they less burdensome
25   than the requirements upheld in *Regan* and *Rust*, but labor unions must adhere to
     far more burdensome recordkeeping requirements if they wish to spend union
26   dues for political or ideological purposes, so as to ensure that no dues money
     received from workers who object to such expenditures are used for those
27   purposes. *See Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977); *Chicago
     Teachers v. Hudson*, 475 U.S. 292 (1986); *Communication Workers v. Beck*, 487
28   U.S. 735 (1988); *Lehnert v Ferris Faculty Ass'n*, 500 U.S. 507 (1991).

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)          19

AUG 05 2002 14:56                                    4153628064          PAGE.27

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

1  *FCC*, 468 U.S. at 400). However, plaintiffs misconstrue the AB 1889 provisions

2  applicable to contractors and leaseholders.

3      Government Code §16645.3 imposes no restrictions on efforts by state

4  contractors to influence employees during time when the employees are

5  *not* being paid to perform services for the State. *See* AB 1889, §1 (statute

6  prohibits "seeking to influence employees to support or oppose unionization

7  *while those employees are performing work on a state contract*") (emphasis

8  supplied). While employees are performing work on a state service contract, the

9  State is entitled to insist that they perform the work for which the State is paying.

10  This restriction fulfills the State's "substantial and important interest in ensuring

11  effective job performance by its own employees." *FCC*, 468 U.S. at 401 n.27.

12  The Supreme Court recognized long ago that employees of state contractors "in a

13  substantial if informal sense, [are] working for the [state]." *White v.*

14  *Massachusetts Council of Constr. Employers*, 460 U.S. 204, 211 n.7 (1983).

15      Similarly, AB 1889 prohibits state contractors from taking advantage of

16  access to "any property or facility owned or leased by the state or any state

17  agency" by holding meetings, the purpose of which are to assist, promote, or

18  deter union organizing, unless the property is equally available to the general

19  public. Gov. Code §16645(a), (e). In other words, state contractors may not

20  help themselves to state meeting facilities rent-free. Thus, §16645.5 is simply

21  another manifestation of the State's decision that it will not subsidize – through

22  funds or the use of its property – pro-union or anti-union campaigns.

23      Plaintiffs also argue that "AB 1889 makes no pretense of being concerned

24  with what the state funds are being expended for" by "condition[ing] the use of

25  state funds for any particular purpose." Pl. Br. at 20:7-11. This misses the point

26  entirely. By enacting AB 1889, the State has determined that assisting,

27  promoting, or deterring union organizing is not part of *any* state program,

28  contract, or grant and made an effort to ensure that state funds are only spent for

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)    20

AUG 05 2002 14:55                    4153628064        PAGE.28

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

designated purposes, whatever those purposes may be in the particular program, grant, or contract at issue; it would make no constitutional difference were the State to amend every authorizing statute to include this statement. The State is free to make such a determination. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000) (public officials "are obviously permitted to require [a] government contractor to submit documentation that no public funds were spent on espousing political views"). In fact, the Supreme Court upheld a very similar restriction that prohibited any §501(c)(3) non-profit organizations from "attempting to influence legislation." *See Regan*, 461 U.S. at 542 n.1.

*Viewpoint Discrimination:* AB 1889 is also viewpoint-neutral, like the restrictions upheld in *Regan* and *Rust* and unlike those invalidated in *Velazquez*. The government is not seeking to facilitate private speech yet control its content, but rather to avoid paying for an activity that it does not wish to subsidize. In *Velazquez*, the restrictions at issue specifically disfavored one viewpoint (amending or challenging existing law), and struck the Court as an attempt to "sift[] out cases presenting constitutional challenges in order to insulate the Government's laws from judicial inquiry." *Id.* at 538, 546. As the Ninth Circuit observed, this lack of viewpoint neutrality was fatal to the law in *Velazquez*, and the Supreme Court "distinguish[ed] *Rust* on the ground that [in *Rust*] Congress did not single out a particular idea for suppression." *Davey*, 2002 WL 1578831, at *6 n.7. In contrast, the restrictions upheld in *Regan* were viewpoint-neutral: the challenged restrictions disallowed tax deductions for donations to organizations involved in "attempting to influence legislation," regardless of whether the organization was attempting to pass, defeat, or modify legislation. 461 U.S. at 542 & n.1. Here, as in *Regan* and *Rust*, the restrictions are viewpoint-neutral; an employer may not use state funds to "assist, promote, or deter" union organizing. The employer that wishes to convince its employees to join a union is in the same position as the employer that wishes to deter union

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX) 21

AUG 05 2002 14:57 4153628064 PAGE.29

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

1    organizing altogether: both may do so, but not with state funds or state facilities.

2    Plaintiffs charge that AB 1889 constitutes "invidious viewpoint

3    discrimination" because it allows use of state funds and property "for expression

4    and other activities favoring unionization." Pl. Br. at 21:5-6. They rely upon

5    two of the exceptions to the statute contained in Government Code §16647, for

6    expenses incurred in connection with "a voluntary recognition agreement" and

7    with "allowing a labor organization or its representatives access to the

8    employer's facilities or property." But both of these provisions are consistent

9    with AB 1889's even-handed approach.

10    First, §16647(d) provides merely that AB 1889 is not implicated by an

11    employer's choice between the two permissible methods under the NLRA for

12    testing a union's majority status. Under the NLRA, it is lawful for an employer

13    to recognize a union on the basis of a "card check" or other showing that the

14    majority of workers wish to be represented by the union, rather than to insist

15    upon a formal, NLRB-supervised election. *See Hotel Employees, Local 2 v.*

16    *Marriot Corp.*, 961 F.2d 1464, 1467-69 (9th Cir. 1992). Section 16647(d)

17    provides merely that AB 1889 should not be construed to prevent an employer

18    from deciding to forego an election. Nothing in AB 1889 requires an employer

19    to do so. More to the point, nothing in AB 1889 allows employers to use state

20    funds to influence employees about whether to support a union, regardless of

21    whether the union seeks recognition by "card check" or formal election.

22    Similarly, nothing in AB 1889 requires employers to allow union access to

23    their property or facilities and, as a general matter, non-employee union

24    representatives have no special right of access to private property. *See*

25    *Lechmere, Inc. v. NLRB*, 502 U.S. 527 (1992). Section 16647(b) simply makes

26    clear that allowing access is not a *per se* violation of AB 1889. Should an

27    individual employer decide to allow unions access to its property, the restrictions

28

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)    22

1   imposed by AB 1889 would still apply to such access.[8]

2       _Vagueness:_  Plaintiffs allege that they cannot understand the precise

3   meaning of the phrase "attempt . . . to assist, promote or deter union organizing,"

4   thereby making AB 1889 "void for vagueness." Pl. Br. at 22:2-8. To succeed on

5   such a facial challenge they "must demonstrate that the law is impermissibly

6   vague in all of its applications." _Melugin v. Hames_, 38 F.3d 1478, 1486 (9th Cir.

7   1994) (internal quotation marks omitted). A plaintiff cannot demonstrate

8   unconstitutional vagueness by proffering "speculation about possible vagueness

9   in hypothetical situations not before the Court." _Hill v. Colorado_, 503 U.S. 703,

10   733 (2000). Here, the _entirety_ of plaintiffs' vagueness challenge rests on

11   "hypertechnical theories as to what the statute covers." _Id._; _see_ Pl. Br. at 22:3-8.

12       The statute defines "[a]ssist, promote or deter union organizing" as "any

13   attempt by an employer to influence the decision of its employees" regarding

14   whether to support, oppose, and/or become a member of any labor organization.

15   Cal. Gov. Code §16645(a). Thus, it uses familiar words.[9] "The likelihood that

16   anyone would not understand any of these common words seems quite remote."

17   _____

18       [8] Thus, just as it would violate AB 1889 for an employer to hold a
19   meeting on (non-public) state property to influence employees about
     unionization, it would violate the statute for the employer to allow a union to use
20   the facilities to hold a similar meeting. _See_ Cal. Gov. Code §16645.5(a). An
     employer also could not allow a union access to its property to present the case
21   for unionization during employees' work time if the employees are being paid by
     state funds, because the employer would be promoting unionization by paying
22   employees to listen to a pro-union message during hours they would otherwise
     be working. _See_ Cal. Gov. Code §16646(a) (payment of salaries may count as
23   expense to assist, promote, or deter union organizing).

24       [9] "Attempt," means "to make an effort to do, accomplish, solve, or effect."
     _Webster's Collegiate Dictionary_ 74 (10th ed. 1997). "Influence" means to
25   "sway" or "to have an effect on the condition or development of." _Id._ at 599.
     Plaintiffs' purported confusion about the meaning of these words is hard to
26   reconcile with the claim that their members comply with LMRDA provisions,
     which are certainly no more definite, applying to "expenditures made for the
27   'purpose of causing' employees 'to exercise . . . the right to organize and bargain
     collectively'" and/or "that 'promote, assist, or deter' unionization." Pl. Br. at 15
28   (quoting 29 U.S.C. §433(a)(2)-(a)(5) & 433(b)).

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)                    23

AUG 05 2002 14:58                              4153628064              PAGE.31

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

*Hill*, 503 U.S. at 732.  Indeed, the very phrase "attempt to influence" has survived First Amendment challenge before.  *See, e.g., Regan*, 461 U.S. at 541 & n.1; *United States v. Harriss*, 347 U.S. 612, 617 n.2 (1954).  Furthermore, that the word "attempt" encompasses an intent element mitigates any possible ambiguity in the remainder of the phrase.  *See Hill*, 503 U.S. at 732.

"[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).  AB 1889 "marks boundaries sufficiently distinct for judges and juries fairly to administer the law" (*United States v. Petrillo*, 332 U.S. 1, 7-8 (1947)), using common terms that have previously survived First Amendment scrutiny.  As a result, it is not unconstitutionally vague on its face.

*Prior Restraint*:  The claim that AB 1889 imposes a "prior restraint" (Pl. Br. at 20) does not aid plaintiffs' First Amendment argument.  The pertinent distinction is between laws, such as licensing laws, that impose "*previous* restraints upon publications," and laws that impose punishment *after* an unlawful publication or speech.  *Near v. State of Minnesota*, 283 U.S. 697, 713-14, 715 (1931) (emphasis in original).  *See also* L. Tribe, *American Constitutional Law* 1042-45 (2d ed. 1988) (special evil of prior restraints is that they prevent speaker from raising First Amendment defenses in a post-publication enforcement proceeding).  AB 1889 provides for enforcement proceedings *after* an alleged violation, during which constitutional defenses could be raised, not for pre-publication restraints.

**E.   AB 1889 Does Not Violate Equal Protection Or Due Process.**

*Equal Protection*:  Plaintiffs' Equal Protection Clause argument is entirely derivative of their meritless First Amendment "viewpoint discrimination" argument.  AB 1889 is a facially neutral law that does not "silenc[e] one side of the debate" or "discriminat[e] between employers and unions" (Pl. Br. at 21 & n. 12), but instead places a generally applicable,

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)          24

AUG 05 2002 14:58          4153628064          PAGE.32

ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108

evenhanded restriction on the use of state funds and facilities.

*Due Process:* According to plaintiffs, AB 1889 violates the Due Process Clause by prohibiting an employer from consulting an attorney for help in opposing a union organizing campaign and thereby denies the employer a "fundamental right." Pl. Br. at 21 & n. 13. Assuming that there is a "fundamental right" to consult a management-side labor lawyer, however, AB 1889 provides merely that the state funds may not be used to pay for that consultation. *See Lyng v. Automobile Workers*, 485 U.S. 360, 368 (1988) ("'[A] legislature's decision not to subsidize the exercise of a fundamental right does not infringe that right'") (quoting *Regan*, 461 U.S. at 549). At least in civil matters, there is no due process right to use *state funds* to pay one's lawyer, even in situations – unlike this one – in which the client cannot otherwise afford to pay the lawyer. *Lassiter v. Department of Social Servs.*, 452 U.S. 18 (1981) (no right to government-funded counsel for parental-status termination proceeding); *Goldberg v. Kelly*, 397 U.S. 254, 270 (1970) (no right to government-funded counsel for welfare hearing).

## CONCLUSION

Intervenors' motion for summary judgment should be granted.

Dated: August 5, 2002

Respectfully submitted,

STEPHEN P. BERZON
SCOTT A. KRONLAND
STACEY M. LEYTON
Altshuler, Berzon, Nussbaum,
Rubin & Demain

By: *Scott Kronland*
Scott A. Kronland

Attorneys for Intervenors

F:\002.00\Chamber of Commerce\Pleadings\Summary Judgment\Memo P&A.wpd

INTERVENORS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, No. 02-CV-377-GLT (ANX)    25

AUG 05 2002 14:58    4153628064    PAGE.33