**ORIGINAL**

1  BILL LOCKYER
   Attorney General of the State of California
2  TAMMY CHUNG RYU
   CATHERINE Z. YSRAEL
3  Supervising Deputy Attorneys General
   SUZANNE M. AMBROSE, State Bar No. 131216
4  REGINA J. BROWN, State Bar No. 169916
   RICHARD T. WALDOW, State Bar No. 108650
5  Deputy Attorneys General
     1300 I Street
6    P.O. Box 944255
     Sacramento, CA  94244-2550
7    Telephone:  (916) 324-0244
     Fax: (916) 327-2319
8
   Attorneys for Defendants
9
                    IN THE UNITED STATES DISTRICT COURT
10
      FOR THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION
11

| | |
|---|---|
| 12  **The Chamber of Commerce of the United States,** *et al.* | Case No. SACV02377GLT(ANx) |
| 13 | MEMORANDUM OF POINTS AND AUTHORITIES IN |
| **Plaintiffs,** | SUPPORT OF DEFENDANTS' |
| 14 | MOTION FOR SUMMARY |
| **v.** | JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL |
| 15 | SUMMARY JUDGMENT |
| 16  **Bill Lockyer in his capacity as Attorney General of the State of California, The Department of Health Services, Frank** | |
| 17  **G. Vanacore as the Chief of the Audit Review and Analysis Section of the** | Hearing:   August 26, 2002 |
| 18  **California Department of Health Services, and Diana M. Bonta, R.N., Dr.,** | Time:      10:00 a.m. Place:     Courtroom 10D |
| 19  **P.H. as the Director of the California Department of Health Services and** | Judge:     Hon. Gary L. Taylor |
| 20  **DOES 1 through 10,** | |
| 21                         **Defendants,** | |
| 22                            **and** | |
| 23  **American Federation of Labor and Congress of Industrial Organizations** | |
| 24  **and California Labor Federal, AFL-CIO,** | |
| 25 | |
| 26                       **Intervenors.** | |

ENTER ON ICMS

AUG – 9 2002

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENTS ....... 1

STATEMENT OF FACTS ....... 2

ARGUMENT ....... 3

I.   LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT ....... 3

II.  PLAINTIFFS' STATE CONSTITUTIONAL CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION ....... 4

III. PLAINTIFF CALIFORNIA ASSOCIATION OF HEALTHCARE FACILITIES' CLAIMS ARE BARRED BY THE ABSTENTION DOCTRINE ....... 5

IV.  THE ARTICLE III "CASE OR CONTROVERSY" REQUIREMENT HAS NOT BEEN MET WITH RESPECT TO GOVERNMENT CODE SECTION 16645.6 ....... 6

V.   AB 1889 IS NOT PREEMPTED BY THE NATIONAL LABOR RELATIONS ACT ....... 8

     A.   AB 1889 Is Not Preempted Under the *Garmon* Preemption Doctrine ....... 8
     B.   AB 1889 Is Not Preempted Under the *Machinists* Preemption Doctrine ....... 10

VI.  AB 1889 IS NOT PREEMPTED BY THE LABOR MANAGEMENT AND REPORTING DISCLOSURE ACT ....... 12

VII. AB 1889 IS NOT PREEMPTED BY EITHER THE MEDICARE ACT, THE MEDICAID ACT, OR THE STATE MEDICAID PLAN ....... 14

VIII. AB 1889 DOES NOT VIOLATE PLAINTIFFS' CONSTITUTIONAL RIGHTS ....... 17

     A.   AB 1889 Does Not Unconstitutionally Infringe on Plaintiffs' First Amendment Rights ....... 17

          1.   AB 1889 Does Not Condition Government Benefits on Relinquishment of Free Speech Rights, Place Unlawful Economic and Administrative Burdens or Exact a Penalty on Employers for Exercising First Amendment Rights ....... 17
          2.   AB 1889 Does Not Constitute An Unlawful Content-Based Restriction on Speech ....... 19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

-i-

# **TABLE OF CONTENTS**

Page

  3.    AB 1889 Is Not Unconstitutionally Vague ............ 21

B.    AB 1889 Does Not Deny Plaintiffs Equal Protection of the Laws ............ 21

C.    AB 1889 Does Not Deny Plaintiffs Due Process of the Law ............ 24

**CONCLUSION** ............ 25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

-ii-

# **TABLE OF AUTHORITIES**

Page

<u>Cases</u>

*Brown v. Hotel & Restaurant Employees & Bartenders Int'l Union*
     468 U.S. 491, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984) ............ 14

*Building & Const. Trades Council v. Associated Builders & Contractors*
     *of Mass./R.I., Inc.*
     507 U.S. 218, 113 S.Ct. 1190, 122 L.Ed2d 565 (1993) ............ 8, 10

*Building and Construction Trades Department, AFL-CIO v. Allbaugh*
     ___ F.3d ___, 2002 WL 1484942 (D.C. Cir. July 12, 2002) ............ 10, 11

*Celotex Corp. v. Catrett*
     477 U.S. 317, 106 S.Ct. 2548, 91L.Ed.2d 265 (1986) ............ 4

*City of South Lake Tahoe v. California Tahoe Regional Planning Agency*
     625 F.2d 231 (9th Cir. 1980) ............ 7

*Civil Service Comm'n v. National Ass'n of Letter Carriers*
     413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) ............ 21

*Cornwell v. California Board of Barbering and Cosmetology*
     962 F.Supp. 1260 (S.D. Cal. 1997) ............ 5, 6

*Federal Election Comm'n v. Int'l Funding Inst., Inc.*
     969 F.2d 1110, (D.C. Cir. 1992), *cert. denied,*
     506 U.S. 1001 (1992) ............ 22

*Felix v. Young*
     536 F.2d 1126 (6th Cir. 1976) ............ 4

*Goldberg v. Kelly*
     397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) ............ 25

*Golden State Transit v. City of Los Angeles*
     475 U.S. 608, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986) ............ 8

*Hoffman Estates v. Flipside*
     455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2 362 (1982) ............ 21

*Hotel Employees and Restaurant Employee Int'l Union v. Nevada Gaming*
     *Comm.*
     984 F.2d 1507 (9th Cir. 1993) ............ 13, 14

*International Ass'n of Machinists and Aerospace Workers v. Wisconsin*
     *Employment Relations Comm'n*
     427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976) ............ 8, 10, 11

# **TABLE OF AUTHORITIES**

<u>Page</u>

*Lassiter v. Department of Social Servs.*
  452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981),
  *rehearing denied* 453 U.S. 927 (1981) .......... 25

*Legal Aid Soc. of Haw. v. Legal Serv. Corp.*
  145 F.3d 1017 (9th Cir. 1998), *cert. denied* 525 U.S. 1015 (1998) .......... 17, 18

*Lechmere, Inc. v. NLRB*
  502 U.S. 527, 112 S.Ct. 841, 117 L.Ed. 2d 79 (1992) .......... 23

*Levald, Inc. v. City of Palm Desert*
  998 F.2d 680, (9th Cir. 1993), *cert. denied,*
  510 U.S. 1093 (1994) .......... 24

*Lyng v. International Union*
  485 U.S. 360, 108 S.Ct. 1184, 99L.Ed2d 380 (1988) .......... 22, 23

*Madarang v. Bermudes*
  889 F.2d 251 (9th Cir. 1990) .......... 21, 22

*Munoz v. Sullivan*
  930 F.2d 1400 (9th Cir. 1991) .......... 24

*NLRB v. Gissel Packing Co.*
  395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969) .......... 9

*Ohio Bureau of Employment Services v. Hodory*
  431 U.S. 471,  97 S.Ct. 1898,  52 L.Ed. 2d 513 (1977) .......... 23

*Palomar Pomerado Health System v. Belshe*
  180 F.3d 1104 (9th Cir. 1999) .......... 3, 7

*Pennhurst v. Halderman*
  451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) .......... 2

*Pennhurst State School & Hospital v. Halderman*
  465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) .......... 4, 5

*Regan v. Taxation with Representation*
  461 U.S. 540, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983) .......... 22

*Rosenberger v. Rector and Visitors*
  515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) .......... 19

*Rust v. Sullivan*
  500 U.S. 173, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) .......... 17, 18, 19, 20

*San Antonio School District v. Rodriquez*
  411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) .......... 22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

-iv-

# TABLE OF AUTHORITIES

Page

*San Diego Bldg. Trades Council v. Garmon*
     359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)     8

*Schwarz v. Kogan*
     132 F.3d 1387 (11th Cir. 1998), *cert. denied,*
     524 U.S. 954 (1998)     22

*S.D. Myers, Inc. v. City and County of San Francisco*
     253 F.3d 461 (9th Cir. 2001)     4

*SEC v. Medical Comm. for Human Rights*
     404 U.S. 403, 92, S.Ct. 577, 30 L.Ed.2d 560 (1972)     6

*Sherwin-Williams Co. v. City and County of San Francisco*
     857 F.Supp. 1355, (N.D. Cal. (1994)     21, 23, 24

*Southern Christian Leadership Conference v. Supreme Court*
     252 F.3d 781 (5th Cir. 2001), *cert. denied,* 122 S.Ct. 464 (2001)     18, 20

*TRM, Inc. v. United States*
     52 F.3d 941 (11th Cir. 1995)     24

*United States v. Salerno*
     481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)     4

*U.S. v. Hays*
     515 U.S. 737, 115 S.Ct. 2431, 132 L.Ed. 2d 635 (1995)     6

*Vance v. Bradley*
     440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)     22

*Warth v. Seldin*
     422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)     6

*White v. Lee*
     227 F.3d 1214 (9th Cir. 2000)     9

*Williamson v. Lee Optical*
     348 U.S. 483, 75 S.Ct. 461, 99 L.Ed.563 (1955),
     *rehearing denied* 349 U.S. 925 (1955)     23, 24

*Wisconsin Dept. of Industry v. Gould, Inc.*
     475 U.S. 282, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986)     8

*Younger v. Harris*
     401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)     5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

-v-

# TABLE OF AUTHORITIES

Page

<u>Statutes</u>

California Health & Safety Code

    Sections 32000 *et seq* ............ 3, 7
    Section 32001 ............ 7
    Section 32121 ............ 7

California Welfare & Institutions Code

    Section 4638 ............ 1

Code of Federal Regulations

    Title 29, sections 405.1-405.6 ............ 13
    Title 29, section 405.9 ............ 13
    Title 29, sections 406.2-406.4 ............ 13
    Title 29, section 406.8 ............ 13

Federal Rules of Civil Procedure

    Rule 56(c) ............ 3, 4

Government Code

    Section 16645 ............ 21
    Sections 16645 through 16649 ............ 1
    Section 16645.1 ............ 1, 13, 18
    Section 16645.2 ............ 1, 13, 18
    Section 16645.4 ............ 1, 13, 18
    Section 16645.5 ............ 13
    Section 16645.6 ............ passim
    Section 16645.7 ............ 1, 13, 18
    Section 16645.8 ............ 2
    Section 16648 ............ 13

United States Code

    Title 29, section 151 ............ 2
    Title 29, section 158, subdivision (c) ............ 9
    Title 29, section 401 ............ 2
    Title 29, sections 401-531 ............ 12
    Title 29, section 402 ............ 12
    Title 29, section 433 ............ 13
    Title 29, section 436 ............ 13
    Title 29, sections 2201-2202 ............ 1
    Title 29, section 1553, subdivision (c)(1) ............ 1
    Title 29, section 2931, subdivision (b)(7) ............ 1
    Title 42, section 1395 ............ 2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

-vi-

1

## **<u>TABLE OF AUTHORITIES</u>**

2                                                                                                              <u>Page</u>

3    <u>Statutes</u>

4    United States Code

5        Title 42, section 1396a(a)(13)                                                  15
         Title 42, section 9839, subdivision (3)                                          1
6        Title 42, section 12634, subdivision (b)(1)                                      1

7    <u>Constitutional Provisions</u>

8    United States Constitution

9        Article III                                                                        6
         First Amendment                                                               passim
10       Eleventh Amendment                                                             4, 5

11   <u>Other Authorities</u>

12   California Assembly Bill 1889                                                     passim

13   California Medi-Cal State Plan, Amendment #02-006                             3, 15, 16

14   National Labor Relations Act

15       Section 7                                                                          8
         Section 8, subdivision (a)                                                        9
16       Section 8, subdivision (c)                                                      8, 9

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

-vii-

## **INTRODUCTION AND SUMMARY OF ARGUMENTS**

California Assembly Bill 1889 ("AB 1889"), codified at California Government Code sections 16645 through 16649, was signed into law and became effective on January 1, 2001.  See Exhibit A to Plaintiffs' Complaint for Injunctive and Declaratory Relief.  AB 1889 was enacted to prohibit certain employers, state grant recipients, and state contractors from using state funds or property to assist, promote, or deter union organizing.  AB 1889 provides for injunctive relief, damages, civil penalties and other appropriate equitable relief for violations of its provisions.  Cal. Gov. Code, §§ 16645-16645.8   AB 1889 also requires state grant recipients, state contractors, and private employers who are subject to the provisions of AB 1889 and who make expenditures to assist, promote, or deter union organizing to maintain records sufficient to show that no state funds were used for those expenditures, and to provide those records to the Attorney General upon request.  Cal. Gov. Code, §§ 16645.1, 16645.2, 16645.4, and 16645.7.

AB 1889 is not a novel law.  The federal government has, in fact, enacted several laws with similar restrictions on the use of public funds, specifically, the Job Training Partnership Act (former 29 U.S.C. § 1553(c)(1)); the Workforce Investment Act (29 U.S.C. §2931(b)(7); the National and Community Service Act (42 U.S.C. § 12634(b)(1); and the Head Start Programs Act (42 U.S.C. § 9839(e).   Similarly, California has comparable spending restrictions in its Welfare and Institutions Code which prohibit nonprofit organizations receiving state developmental disability funds from using those funds in activities related to influencing employees in their decisions to organize.  Cal. Welfare & Inst. Code § 4638.

Plaintiffs seek a declaration under the Declaratory Relief Act, United States Code, title 28, sections 2201-2202, that AB 1889 is unconstitutional under the federal and California Constitutions, is preempted under the National Labor Relations Act,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1

United States Code, title 29, section 151, *et seq.* ("NLRA"), the Labor Management Reporting and Disclosure Act, United States Code, title 29, section 401 *et seq.* ("LMRDA"), and is preempted by and violates the provisions of the California State Medicaid Plan established pursuant to the requirements of the Medicare Act, United States Code, title 42, section 1395 *et seq.* ("Medicaid Act"). Plaintiffs also seek preliminary and permanent injunctive relief enjoining the enforcement of AB 1889 and other related actions undertaken by defendants pursuant to its provisions.

Defendants Attorney General Bill Lockyer, Frank G. Vanacore, and Diana M. Bonta ("defendants") collectively move for summary judgment on several grounds. Before even reaching the merits, the Court should grant summary judgment in favor of defendants as to the state claims for lack of supplemental jurisdiction based on *Pennhurst v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), against plaintiff California Association of Healthcare Facilities (CAHF) pursuant to the abstention doctrine, and as to all plaintiffs' challenge to the validity of Government Code section 16645.6 because they lack standing. The Court should grant defendants summary judgment on the merits because AB 1889 is not preempted by the NLRA, the LMRDA, or the Medicare and Medicaid Act, and is not unconstitutional.

## STATEMENT OF FACTS

On November 19, 2001, defendant Attorney General Bill Lockyer filed a complaint for injunctive and other equitable relief pursuant to Government Code section 16645.8 against Fountain View, Inc, in the Superior Court of the State of California for the County of Los Angeles, Central District. [Uncontroverted Fact ("UF") 2 (Declaration of Suzanne M. Ambrose (hereafter "Ambrose Decl."), ¶ 2, p. 1, and Exhibit 1 attached thereto).]

On or about January 14, 2002, Fountain View, Inc., filed a cross-complaint against Attorney General Bill Lockyer seeking declaratory and injunctive relief that AB 1889 is unconstitutional under the federal and California Constitutions and is

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

2

preempted under the National Labor Relations Act and the Labor Management Reporting and Disclosure Act. [UF 3 (Ambrose Decl., paragraph 3, and Exhibit 2 thereto.)] That case is currently pending, and a trial date has been set for September 16, 2002. [UF 3 (Ambrose Decl., paragraph 4).]

Fountain View, Inc., is a member of plaintiff California Association of Healthcare Facilities (CAHF). [UF 4 (Declaration of Nancy Armentrout in Support of Plaintiffs' Motion for Summary Judgment, ¶¶ 21 and 22, p. 8; Deposition testimony of Nancy Armentrout, attached as Exh. 4, p. 28 (lines 9&10) and p. 29 (lines 6-11), to Ambrose Decl., and ¶ 6 of Ambrose Decl.).]

Plaintiff California Healthcare Association (CHA) asserts that it has associational standing to challenge the validity of Government Code section 16645.6. CHA's only identifiable public employer members are Palomar Pomerado Health System and Valley Health System which are both local health care districts under California law. [UF 5-6 (Deposition Testimony of Art Sponseller attached as Exh. 3, p. 24 (lines 17-21) and p. 25 (lines 8-13), to Ambrose Decl., and ¶ 5 of Ambrose Decl.; Cal. Health & Safety Code § 32000 *et seq; Palomar Pomerado Health System v. Belshe*, 180 F.3d 1104, 1007 (9th Cir. 1999)).]

The Medi-Cal State Plan, which was approved by the federal government, disallows costs incurred to assist, promote or deter union organizing for reimbursement to Medi-Cal providers under the Medi-Cal program. [UF 7-8 (¶ 4 of Amendment #02-006 to the Medi-Cal State Plan attached as Exh. B to Decl. of Gene Morrow).]

## ARGUMENT

### I.

### LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A defendant moving for summary judgment meets it burden by establishing that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91L.Ed.2d 265 (1986). Where, as here, plaintiffs' challenge to the facial validity of a statute raises purely legal questions and does not involve disputed issues of material fact, the issues are ripe for summary judgment. *See Felix v. Young*, 536 F.2d 1126, 1130 ( 6th Cir. 1976).

In order to prevail on a facial challenge to a statute, plaintiffs must establish that no set of circumstances exists under which the statute would be valid. "The fact that the [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461,467 (2001), citing *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Any ambiguities are resolved in favor of the interpretation that most clearly supports constitutionality. *S.D. Myers v. City and County of San Francisco,* 253 F.3d. 461 at p. 468.

## II.

## PLAINTIFFS' STATE CONSTITUTIONAL CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

Plaintiffs claim that AB 1889 violates the freedom of speech, equal protection and due process guarantees found in the California Constitution. See Complaint, ¶ 36, pp. 24-25. The Eleventh Amendment to the United States Constitution bars this Court from considering these state law claims.

In *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Supreme Court held that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Id.* at p. 121. The Court further

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

4

held that "this principle applies as well to state-law claims brought into federal court under pendent jurisdiction." *Id.* at p. 121.

The Court recognized that although "applying the Eleventh Amendment to pendent claims" may result "in federal claims being brought in state court, or in bifurcation of claims," such policy "considerations cannot override the constitutional limitation on the authority of the federal judiciary to adjudicate suits against a State." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. at p. 123.

Consequently, where, as here, the relief sought directly impacts the State itself, "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. at p. 117.

## III.

### PLAINTIFF CALIFORNIA ASSOCIATION OF HEALTHCARE FACILITIES' CLAIMS ARE BARRED BY THE ABSTENTION DOCTRINE.

The Court should decline to accept jurisdiction over plaintiff California Association of Healthcare Facilities' claims under the abstention doctrine enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[1/]

*Younger* abstention has been applied to bar suit by an *associational plaintiff* who seeks relief on behalf of all of its members, where some of the members are parties to a related pending state court action. *Cornwell v. California Board of Barbering and Cosmetology*, 962 F.Supp. 1260, 1271 (S.D. Cal. 1997). There is currently a state court proceeding pending against the California Attorney General that raises the same issues presented in this case. As previously stated, the state court defendant and cross-complainant, Fountain View, Inc., is a member of one of the

---

1. Defendants raised the *Younger* abstention doctrine in its motion to dismiss on which this Court ruled on or about July 2, 2002. See Defendants' Points and Authorities in Support of Motion to Dismiss, pp. 6-8, on file with the Court, and the Court's Order Denying In Part Defendants' Motion to Dismiss, pp. 2-5.

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

5

associational plaintiffs in this action, plaintiff (CAHF). [UF 2-4 (Ambrose Decl.,
paragraphs 3-4, and Exhibit 2 thereto; Armentrout   Decl., ¶¶ 21 and 22, p. 8;
Deposition testimony of Nancy Armentrout, attached as Exh. 4, p. 28 (lines 9 & 10)
and p. 29 (lines 6-11), to Ambrose Decl., and ¶ 6 of Ambrose Decl.).]  CAHF has
brought this suit on behalf of its member employers, whose interests they seek to
protect are allegedly germane to the association's purposes.  See Complaint, ¶ 18,
p. 16.   Under the principle established in *Cornwell*, abstention applies to the
associational plaintiff(s) of which Fountain View, Inc., is a member, and, therefore,
CAHF must be dismissed.

IV.

**THE ARTICLE III "CASE OR CONTROVERSY" REQUIREMENT HAS NOT
BEEN MET WITH RESPECT TO GOVERNMENT CODE SECTION 16645.6**

The federal courts may only exercise jurisdiction where there is a genuine
"case or controversy" within the meaning of Article III of the United States
Constitution. *SEC v. Medical Comm. for Human Rights*, 404 U.S. 403, 407 , 92 S.Ct.
577, 30 L.Ed. 2d 560 (1972).  The burden is on the party who seeks the exercise of
jurisdiction in his or her favor "clearly to allege facts demonstrating that he or she is
a proper party to invoke judicial resolution of the dispute." *U.S. v. Hays,* 515 U.S.
737, 743, 115 S.Ct. 2431, 132 L.Ed. 2d 635 (1995).  An association has standing to
represent its members' interests provided that the members have standing in their
own right. *Warth v. Seldin*, 422 U.S. 490, 516, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).
Though one plaintiff's standing satisfies the standing requirement for all co-plaintiffs
who are proper parties on the same complaint, in this case there are no plaintiffs who
have standing to challenge the validity of Government Code section 16645.6.

Government Code section 16645.6 prohibits "a public employer receiving state
funds" from using those funds to assist, promote, or deter union organizing.  There
are no plaintiffs that have standing to challenge the validity of section 16645.6.  The

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

6

California Healthcare Association (CHA) is the only plaintiff that alleges standing to challenge the validity of Government Code section 16645.6  See Complaint, ¶ 12, pp. 10-11.  The only public employer members that CHA has identified are Palomar Pomerado Health System and Valley Health System which are both local health care districts under California law.  [UF 5-6 (Deposition Testimony of Art Sponseller attached as Exh. 3, p. 24 (lines 17-21) and p. 25 (lines 8-13), to Ambrose Decl., and ¶ 5 of Ambrose Decl.; Cal. Health & Safety Code § 32000 *et seq; Palomar Pomerado Health System v. Belshe*, 180 F.3d 1104, 1007 (9th Cir. 1999)).]  Their powers are limited to those granted by the state.  *See* Cal. Health & Safety Code §§ 32001 and 32121.  As local health care districts, they are "political subdivisions" and agencies of the state.  *Palomar Pomerado Health System v. Belshe*, 180 F.3d 1104 at p. 1008.  It is well established that political subdivisions of the state lack standing to sue the state in federal court.  *Id;  City of South Lake Tahoe v. California Tahoe Regional Planning Agency*, 625 F.2d 231, 233.

*Palomar Pomerado Health System v. Belshe*, 180 F.3d 1104, involved the same associational member identified by CHA that purports to form the basis for its standing to challenge Government Code section 16645.6.  In holding that Palomar Pomerado Health System lacked standing to sue the State of California, the Ninth Circuit stated:

> "Palomar Pomerado is a political subdivision of the State of California.  As such, it lacks standing to bring an action against the state in federal court–at least to the extent that its action challenges the validity of state regulations on due process and Supremacy Clause grounds. [Citations omitted.]
>
> Because Palomar Pomerado lacks standing, the federal courts are without jurisdiction over this action." *Id.* at p. 1108.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

7

1   Since no plaintiff has standing to challenge Government Code section 16645.6,

2   defendants must be granted summary judgment with respect to that provision.

3   ## V.

4   ## AB 1889 IS NOT PREEMPTED BY THE NATIONAL LABOR RELATIONS ACT

5

6   Plaintiffs claim that AB 1889 is preempted by the NLRA under the principles

7   set forth in both *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct.

8   773, 3 L.Ed.2d 775 (1959) and *International Ass'n of Machinists and Aerospace*

9   *Workers v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 96 S.Ct. 2548,

10  49 L.Ed.2d 396 (1976).  See Complaint ¶ 37, pp. 25-26.

11  **A.  AB 1889 Is Not Preempted Under the *Garmon* Preemption Doctrine.**

12  The *Garmon* preemption doctrine "prohibits states from regulating 'activity

13  that the NLRA protects, prohibits, or arguably protects or prohibits'." *Golden State*

14  *Transit v. City of Los Angeles*, 475 U.S. 608, 613-614, 106 S.Ct. 1395, 89 L.Ed. 2d

15  616 (1986), citing *Wisconsin Dept. of Industry v. Gould, Inc.,* 475 U.S. 282, 286, 106

16  S.Ct. 1057, 89 L.Ed.2d 223 (1986).  This rubric grows out of the Court's concern that

17  the jurisdiction of the NLRB must be protected so as to prevent conflict between state

18  regulation on the one hand and the regulation of the NLRA, as implemented by the

19  NLRB, on the other.  *Building & Constr. Trades Council v. Associated Builders &*

20  *Contractors of Mass./R.I., Inc.,* 507 U.S. 218, 225, 113 S.Ct. 1190, 122 L.Ed.2d 565

21  (1993) (hereafter *"Boston Harbor"*).

22  Plaintiffs claim that, because AB 1889 "frustrates or prohibits conduct

23  permitted and rights guaranteed to employers under § 8(c) of the NLRA,"  it is

24  preempted under *Garmon*.  See Complaint ¶ 37, pp. 25-26. Specifically, plaintiffs

25  assert that AB 1889 infringes on the free speech rights "protected" under § 8(c).

26  However, this is a flawed interpretation and application of *Garmon*.  As previously

27  stated, § 7 describes conduct which the NLRA protects; whereas, § 8 defines unfair

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

8

labor practices by the employer.   Specifically, § 8(c) states that "the expression of any views . . . shall not constitute evidence of an unfair labor practice . . . if such expression contains no threat of reprisal or force or promise of benefit." 29 U.S.C. §158(c).  Consequently, § 8(c) does not *protect* employer speech; rather it operates as a sort of savings clause for the First Amendment, clarifying that the provisions of § 8(a), defining unfair labor practices by the employer, may not be interpreted to extend to non-coercive speech within the ambit of the First Amendment.  As the Supreme Court explained in *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), § 8(c) does not provide for an affirmative right of the employer to free speech; it "merely implements the First Amendment."   Any protections on free speech are found in the First Amendment, and not the NLRA.  The NLRA, if anything, restricts employers' speech to non-coercive speech.  Under the NLRA, "(t)he First Amendment rights of employers 'in the context of the labor relations setting' are limited to an extent that would rarely, if ever be tolerated in other contexts." *NLRB v. Gissel Packing Co.*, 395 U.S. 575 at 617; *White v. Lee*, 227 F.3d 1214, 1236-37 (9th Cir. 2000).

Furthermore, even if § 8(c) of the NLRA were interpreted to provide an affirmative protection for employers, AB 1889 does not prohibit covered employers from engaging in speech that assists, promotes or deters union organizing, provided that state funds or property are not used for that purpose. If, contrary to past Supreme Court holdings, § 8(c) is implicated as protecting a right to free speech, it certainly does not protect the right of an employer to use state money to subsidize that speech. AB 1889 does not restrict employers from using other, non-state funds or non-state property  to assist,  promote, or deter union organizing.

///

///

///

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

9

**B.**    **AB 1889 Is Not Preempted Under the *Machinists* Preemption
Doctrine**

Plaintiffs contend that AB 1889 is preempted by the NLRA under the doctrine
set out in *International Ass'n of Machinists and Aerospace Workers v. Wisconsin
Employment Relations Comm'n*, 427 U.S. 132, 146 (1976).  See Complaint, ¶ 37,
pp. 25-26.  The *Machinists* preemption principle prohibits state regulation of areas
that have been left "to be controlled by the free play of economic forces." *Id.,* at 140.
Under this doctrine, the court looks to whether "the exercise of plenary state authority
to curtail or entirely prohibit self-help would frustrate effective implementation of the
[NLRA]'s processes." *Id.*, at 146.  Plaintiff's  position is fundamentally flawed
because AB 1889 is not regulatory.

When the State acts as a proprietor or purchaser, and not as a regulator, its
actions are not preempted even if they impact protected activity. *Building & Constr.
Trades Council v. Associated Builders & Contractors of Mass./R.I., Inc.* (*Boston
Harbor*"), 507 U.S. 218 at 227.  "The NLRA prevents a State from regulating within
a protected zone, whether it be a zone protected and reserved for market freedom, or
for NLRB jurisdiction.  A state does not regulate, however, simply by acting within
one of those protected zones." *Id.*  Similar to *Boston Harbor*, where the Court
determined that the State, acting as the owner of a construction project, was not
preempted by the NLRA, AB 1889 does not regulate an employer's conduct or
speech.  It merely designates how state funds may not be used.

This principle has recently been articulated by the Court of Appeals in *Building
and Construction Trades Department, AFL-CIO v. Allbaugh,* __ F.3d __, 2002 WL
1484942 (D.C.Cir. July 12, 2002).  In *Allbaugh*, labor organizations and the city
challenged the validity of an Executive Order issued by President Bush proscribing
the prohibiting or requiring of project labor agreements (PLAs) in federally-funded
construction contracts.  The court held that it did not need to determine whether the

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Executive Order ran afoul of the principles established in *Garmon* and *Machinists*
because it "clearly constitute[d] proprietary action rather than regulation." *Id.,* at
p. 6.  The court reasoned that:

> "[T]he Government unquestionably is the proprietor of its own funds, and
> when it acts to ensure the most effective use of those funds, it is acting in a
> proprietary capacity." *Id.,* at p. 7.

The court further reasoned that:

> "A condition that the Government imposes in awarding a contract or in
> funding a project is regulatory only when, as the Supreme Court explained in
> *Boston Harbor*, it 'addresse[s] employer conduct unrelated to the employer's
> performance of contractual obligations to the [Government].' [Citations
> omitted.] Here the Government correctly notes that 'the impact of [the]
> procurement policy [expressed in Executive Order No. 13,202] extends only
> to work on projects funded by the government.' Because the Executive Order
> does not address the use of PLAs on projects unrelated to those in which the
> Government has a proprietary interest, the Executive Order establishes no
> condition that can be characterized as 'regulatory'." *Id.*, p. 8.

Similarly, AB 1889 only addresses employer conduct as it relates to
performance of activities connected to the use of state funds and property.  It does not
prohibit any of an employer's activities conducted without the use of state funds or
property.

More importantly, AB 1889 does not alter Congress' "intentional balance
between the uncontrolled power of management and labor to further their respective
interests" preserved by *Machinists* preemption.  *International Ass'n of Machinists
and Aerospace Workers v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132
at 146. The Court in *Machinists* observed that "[i]n selecting which forms of
economic pressure should be prohibited . . . , Congress struck the balance . . . between

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

11

1    the uncontrolled power of management and labor to further their respective interests."

2    *Id.*    By not providing economic support to employers, AB 1889 *preserves* this

3    delicate balance; it does not alter it.  In other words, allowing employers to use state

4    funds to assist, promote, or deter organizing would be the equivalent of assisting

5    employers, impinging on the area of labor relations designed to be free of government

6    interference.  Federal policy of maintaining the balance of power between labor and

7    management would, thereby, be frustrated.

## VI.

## AB 1889 IS NOT PREEMPTED BY THE LABOR MANAGEMENT AND REPORTING DISCLOSURE ACT

11    Plaintiffs claim that AB 1889 is preempted by the Labor Management

12    Reporting and Disclosure Act ("LMRDA") or Landrum-Griffin Act, 29 U.S.C. §§

13    401-531.  See Complaint, ¶ 38, p. 26.  The LMRDA is the federal statute which

14    provides for the reporting and disclosure of certain financial and administrative

15    practices of labor organizations and employers, prevents abuses in the administration

16    of trusteeships by labor organizations, and provides standards with respect to the

17    election of officers of labor organizations, among other purposes.  The LMRDA

18    expressly exempts from the definition of "employer" "any State or subdivision

19    thereof" 29 U.S.C. § 402.  Nothing in the LMRDA expressly or impliedly infringes

20    upon state sovereignty in controlling or maintaining record keeping for the

21    expenditure of state funds.

22    Under Title II of the LMRDA, along with other reporting entities, employers

23    must maintain detailed records and file specific annual reports with the United States

24    Department of Labor ("DOL") on any payments, loans, promise, agreement,

25    arrangement or expenditure which was directly or indirectly used "to persuade

26    employees to exercise or not to exercise, or persuade employees as to the manner of

27    exercising, the right to organize and bargain collectively through representatives of

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

12

their own choosing." 29 U.S.C. §§ 433, 436; 29 C.F.R §§ 405.1-405.6, 405.9. Similarly, labor-relations consultants must also maintain and file such specific records and detailed reports to DOL if they directly or indirectly "supply an employer with information concerning the activities of employees or a labor organization in connection with a labor dispute involving such employer." 29 U.S.C., §§ 433, 436; 29 C.F.R §§ 406.2-406.4, 406.8.

Under AB 1889, employers, contractors and grantees are not required to maintain records in any particular form on state funds expended "to assist, promote or deter union organizing." Cal. Gov. Code §§ 16645.1, 16645.2, 16645.4, 16645.5, 16645.7 and 16648. Such records need only be "sufficient to show that no state funds were used for those expenditures," and need not be filed with the State unless requested to do so by the California Attorney General. *Id.* Private employers and labor-relations consultants in California need not maintain any more records on such expenditures than those already required under the specific forms of the LMRDA. Thus, contrary to plaintiffs' contention, AB1889 causes neither conflict with the LMRDA nor creates additional burdens or costs for employers or contractors. Moreover, because states and their political subdivisions are expressly exempted under the LMRDA, California may control the expenditures of state funds as they relate to labor organizing activities.

In *Hotel Employees and Restaurant Employee Int'l Union v. Nevada Gaming Com.*, 984 F.2d 1507 (9th Cir., 1993), the court upheld Nevada statutes and regulations that provided for extensive reporting disclosure requirements for the owners and key employees of gaming establishments and provided for disqualification based on criminal backgrounds against an LMRDA challenge. The Ninth Circuit explained that:

> "State law is preempted by federal law if Congress explicitly mandated the preemption, or indicated an intent to occupy the field and to displace all

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1    state laws on the subject, or if the state law actually conflicts with federal law.

2    [Citing *Brown v. Hotel & Restaurant Employees & Bartenders Int'l Union*, 468

3    U.S. 491, 501 (1984).]

4         A conflict exists when it is impossible to comply with both the federal

5    and state regulations or when the state law is 'an obstacle to the

6    accomplishment and execution of the full purposes and objectives of

7    Congress.' *Id.* We find no mandate, no intent to displace all state laws, and no

8    conflict here." *Hotel Employees and Restaurant Employee Int'l Union v.*

9    *Nevada Gaming Com.*, 984 F.2d at 1513-14.

10    Here, as in *Hotel Employees and Restaurant Employee Int'l Union v. Nevada*

11    *Gaming Com.*, AB 1889 is not preempted by the LMRDA, because Congress did not

12    explicitly mandate the preemption, nor indicate an intent to occupy the field and to

13    displace all state laws on the subject.  Neither does AB 1889 actually conflict with

14    federal law, because state governments have been expressly exempted from the

15    LMRDA.  Moreover, the record keeping and disclosure requirement for employers,

16    contractors and grantees receiving state funds fall well within the scope of records

17    already required by the LMRDA.  Accordingly, based on plain wording and existing

18    preemption case law on these record keeping provisions, the LMRDA does not

19    preempt AB 1889.

20                                    **VII.**

21    **AB 1889 IS NOT PREEMPTED BY EITHER THE MEDICARE ACT,**
      **THE MEDICAID ACT, OR THE STATE MEDICAID PLAN.**

22

23    Plaintiffs seek a declaration that AB 1889 is preempted by and violates the

24    Medicare and Medicaid Acts and the California State Medicaid Plan.  Complaint,

25    ¶¶ 4 & 39.  There is absolutely no basis for any such declaration.  AB 1889 is patently

26    not preempted by either statute.  To the contrary, the federal government agency

27    which administers the Medicare and Medicaid programs has <u>itself</u> approved an

28

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

14

amendment to the State Medicaid Plan which implements the essential provisions of AB 1889.

At the outset, it must be noted that the plaintiffs fail to point to any provision in either of those statutes, or in California's State Plan, to support their contention. They do not, because they cannot. There is certainly no express preemption present here. Nothing in the Medicare or Medicaid Acts prohibits states from enacting provisions such as those contained in AB 1889 in their state Medicaid plans. The Medicaid Act in fact accords states broad latitude to devise their own reimbursement procedures, and thus to enact provisions such as AB 1889, as long as they comply with the procedural public notice requirements that are set forth in 42 U.S.C. section 1396a(a)(13) and with which California has complied. Decl. of Barbara Hardiman; Exh. B attached thereto. Moreover, the State Plan is expressly consistent with AB 1889. In devising its reimbursement and rate-setting procedures for Medi-Cal, which is the State's Medicaid program, California has elected to utilize certain Medicare principles of reimbursement. Among those longstanding rules is one set forth in the Medicare Provider Reimbursement Manual, which provides that costs to assist, deter or influence unionization of employees are not allowable costs for reimbursement or rate-setting principles. [UF 7-8 (Decl. of Frank Vanacore filed herewith, ¶¶ 5-8; Exh. A thereto).] Nothing in that provision, or in any other provision of either the Medicare or Medicaid Acts, regulations or manuals, expresses any intention to occupy the field of that subject matter.

Nor can any implied preemption be discerned from either statute. Plaintiffs' allegation that the Medicare and Medicaid Acts "comprehensively occupy the field with its (sic) complex regulatory system" (Complaint, ¶ 39) is completely untrue. The states not only are permitted to enact their own regulatory schemes for implementing Medicaid, they do so with the blessing of the federal government. Medi-Cal statutes and regulations literally fill volumes. In fact, the federal

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1   government itself recently underscored the fact that AB 1889 is entirely consistent

2   with, and is not preempted by, federal law. The Centers for Medicare and Medicaid

3   Services (CMS), the federal agency responsible for administering the federal

4   Medicare and Medicaid laws, has given formal federal government approval to

5   Amendment #02-006 to California's Medicaid State Plan. Amendment #02-006 adds

6   to the Medi-Cal State Plan certain provisions defining health provider costs which are

7   not reimbursed by Medi-Cal. These provisions mirror essential provisions of AB

8   1889. [UF 8 (See ¶ 4 of Amendment #02-006 to the Medi-Cal State Plan attached as

9   Exhibit B, pp. 25-26, to Decl. of Gene Morrow).]

10      Plaintiffs allege that AB 1889 violates the Medicare and Medicaid Acts and

11  State Plan in two ways. Neither contention has merit. First, they allege that AB 1889

12  prohibits Medi-Cal providers from spending money for "specified purposes" when

13  the State Plan allows the providers to report "certain (unspecified) costs" for the same

14  purposes in establishing reimbursement rates. To the contrary, the State Plan

15  *disallows* the costs specified in AB 1889 for reimbursement purposes. More

16  important, AB 1889 does not prohibit providers from spending any funds for those

17  purposes; it merely provides that those costs will not be reimbursed with state funds,

18  and that state funds cannot be spent for those purposes. Nor is there any validity to

19  plaintiffs' argument that AB 1889 violates the "single state agency" rule by making

20  the Attorney General responsible for its enforcement. Nothing in AB 1889 purports

21  to make the Attorney General responsible for Medi-Cal administration, or even has

22  that effect. Plaintiffs make that point themselves when they allege (Complaint, ¶35)

23  that the Department of Health Services (not the Attorney General) has been applying

24  the provisions of AB 1889 insofar as they affect Medi-Cal.

25  ///

26  ///

27  ///

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# VIII.

## AB 1889 DOES NOT VIOLATE PLAINTIFFS' CONSTITUTIONAL RIGHTS.

### A.    AB 1889 Does Not Unconstitutionally Infringe on Plaintiffs' First Amendment Rights.

#### 1.    AB 1889 Does Not Condition Government Benefits on Relinquishment of Free Speech Rights, Place Unlawful Economic and Administrative Burdens or Exact a Penalty on Employers for Exercising First Amendment Rights.

Plaintiffs allege that AB 1889 is unconstitutional because it infringes on their free speech rights. See Complaint, ¶ 36(a), pp. 24-25. A similar claim was made and rejected in *Legal Aid Soc. Of Haw. v. Legal Serv. Corp.*, 145 F.3d 1017 (9th Cir. 1998), *cert. denied,* 525 U.S. 1015 (1998).

*Legal Aid* involved a challenge to the validity of federal statutes and regulations that prohibited recipients of federal Legal Services Corporation ("LSC") funds from participating in a wide range of political and advocacy activities, including seeking redistricting, attempting to influence any state or federal regulation or legislation, and participating in welfare reform. *Legal Aid*, 145 F.3d at 1021. In order to engage in any of the proscribed activities, recipients had to set up physically and financially separate organizations. *Id.* at 1023. "Mere bookkeeping separation" of funding sources was insufficient; rather, the two entities were required to maintain separate accounting records, separate facilities, and separate personnel. *Id.* at 1025. The Ninth Circuit concluded that these restrictions did not "infringe on First Amendment rights." *Id.* at 1024.

In *Legal Aid*, as in *Rust v. Sullivan*, 500 U.S. 173, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991), which examined similar restrictions on family planning facilities, the court observed that the regulations applicable in that case did not force anyone to give up prohibited activities. Instead, they provided that if an organization wished to engage in such activities, "it simply is required to conduct those activities through entities that are separate and independent from the organization that receives LSC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

17

1    funds." *Id*. at 1025.

2    Additionally, in *Legal Aid*, the court rejected plaintiffs' assertion that the

3    government was imposing "unconstitutional conditions" on receipt of public funds

4    (*id*. at 1025), observing that recipients were not forced to give up First Amendment

5    protected activities at all. *Id*. at 1026. "A recipient of LSC funds may engage in

6    conduct protected by the First Amendment outside the scope of the federally-funded

7    program if, as in *Rust*, the recipient sets up a separate entity that complies with the

8    program integrity regulations." *Id*. Finally, relying again on *Rust*, the court rejected

9    plaintiffs' arguments regarding hardship, noting that in *Rust*, the Supreme Court had

10   not found the expenditure of the effort necessary to comply with the regulations

11   "constitutionally significant." *Id*. at 1027. Thus, the Ninth Circuit implicitly

12   affirmed the District Court's finding that the regulations' requirement of "separate

13   incorporation" presented a constitutionally insignificant burden. *Id*. at 1023; *see also*

14   *Southern Christian Leadership Conference v. Supreme Court*, 252 F.3d 781, 795 (5th

15   Cir. 2001), *cert. denied*, 122 S.Ct. 464 (2001) [restricting the availability of funds for

16   private speech produces no legally significant chilling effect on the expressive

17   speech].

18   By comparison, the steps necessary to assure compliance with AB 1889 should

19   be simple. AB 1889 does not require incorporation of separate entities as a condition

20   of engaging in speech, it simply requires that, if an employer wishes to engage in the

21   activities described in the statute, it maintain adequate documentation to demonstrate

22   that state funds were not spent on those activities. Cal. Gov. Code, §§ 16645.1,

23   16645.2, 16645.4, and 16645.7. If the statutes and regulations at issue in *Rust* and

24   *Legal Aid* did not present First Amendment issues, it cannot be successfully

25   maintained that AB 1889 does.

26   //

27   //

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1   Under these standards, AB 1889 raises no First Amendment issue. Recipients
2   of state funds are not prohibited from speaking. They are not required to waive their
3   speech rights as a condition of receiving state funds. Nor are they required, as
4   recipients of LSC funds are, to set up entirely distinct organizations to advocate
5   particular views. They simply must be prepared to demonstrate through adequate
6   records that state funds were not spent on assisting, promoting, or deterring union
7   organizing.

8   Similarly, since there is no unconstitutional infringement on free speech rights,
9   the penalty imposed for violating AB 1889 is not an infringement on First
10  Amendment rights. The penalty is not imposed for exercising constitutionally
11  protected rights; rather, the penalty is imposed for misusing state funds.

12  **2.    AB 1889 Does Not Constitute An Unlawful Content-Based Restriction on Speech.**
13

14  Plaintiffs allege that AB 1889 engages in content-based discrimination by
15  promoting unionization while repressing expression by employers concerning the
16  merits of unionization. See Complaint, ¶ 36(a), p. 24.

17  In a government funding case, the court must determine whether the restriction
18  on the government funding at issue is viewpoint neutral or viewpoint discriminatory.
19  Viewpoint discrimination involves discrimination because of a speaker's motivating
20  ideology or opinion. *Rosenberger v. Rector and Visitors*, 515 U.S. 819, 829, 115
21  S.Ct. 2510, 2517, 132 L.Ed.2d 700 (1995). Generally, government suppression of
22  speech is unconstitutional if it is viewpoint discriminatory, as opposed to viewpoint
23  neutral. *Id*. at 829-830, 834.

24  In *Rust v. Sullivan*, the court held that the government was entitled to refuse to
25  fund certain activities that restricted access to information regarding abortion,
26  including speech, which were specifically excluded from the scope of the funded
27  project. 500 U.S. at 194. The court in *Rust* stated:

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

19

1
2
3
4
5
6
7
8
9
10
11
12

"The Government can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way. In so doing, the Government **has not discriminated on the basis of viewpoint; it has merely chosen to fund one activity to the exclusion of the other**. '[A] legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right.' [Citations omitted.] 'A refusal to fund protected activity, without more, cannot be equated with the imposition of a "penalty" on that activity.' [Citation omitted.] 'There is a basic difference between direct state interference with a protected activity and state encouragement of an alternative activity consonant with legislative policy.' [Citation omitted.] *Id.* at 193 [emphasis added].

13
14
15
16
17
18
19
20
21
22
23
24
25
26

AB 1889 does not single out a particular disfavored group on the basis of speech content. AB 1889 simply prohibits the use of state funds and property for activities related to assisting, promoting, *or* deterring union organizing. *See, Rust,* 500 U.S. at 194-195. A refusal to provide funding to promote private speech on the topic of unionization is not the same as a regulation that prohibits or punishes speech, or which excludes a speaker from a public or nonpublic forum. *See, Southern Christian Leadership Conference v. Supreme Court,* 252 F.3d 781, 789 (5th Cir. 2001), *cert. denied,* 122 S.Ct. 464. Rather than stamping out, completely eradicating, or suppressing private speech regarding unionization, AB 1889 has, in a viewpoint-neutral manner, merely prohibited the use of state funds and property to support discussion on the topic of unionization. AB 1889's restriction on the use of state funds and property is equally applicable to speech that promotes union organizing as it is to speech that deters union organizing. Consequently, plaintiffs' contention that AB1889 engages in unlawful content-based discrimination is without merit.

27    ///

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

20

1

### 3.    AB 1889 Is Not Unconstitutionally Vague.

2      Plaintiffs allege that AB 1889 is so vague that it chills free speech.   See

3  Complaint, ¶ 36(a), p. 25. Plaintiffs' vagueness challenge presupposes a First

4  Amendment violation. As noted above, AB 1889 does not implicate the First

5  Amendment. When a statute does not implicate First Amendment freedoms, it may

6  be held unconstitutional only if it is "impermissibly vague in all of its applications."

7  *Hoffman Estates v. Flipside*, 455 U.S. 489, 494-95,499, 102 S.Ct. 1186, 1191, 71

8  L.Ed.2d 362 (1982) (footnotes omitted).

9      Furthermore, due process only requires that the law is stated "in terms that the

10  ordinary person exercising ordinary common sense can sufficiently understand and

11  comply with." *Civil Service Comm'n v. National Ass'n of Letter Carriers,* 413 U.S.

12  548, 579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973).

13      AB 1889 is stated in sufficiently understandable terms. A review of its

14  language and, in particular, the definitions ascribed to specified terms contained in

15  section 16645 reveals that anyone, including plaintiffs, exercising common sense,

16  should know which activities fall within the scope of AB 1889.

17

### B.    AB 1889 Does Not Deny Plaintiffs Equal Protection of the Laws.

18      Plaintiffs' claim that AB 1889 violates the Equal Protection Clause of the

19  federal Constitution.  See Complaint, ¶ 36(b), p. 25.

20      In considering an equal protection challenge to a statute, a court must make

21  two preliminary determinations.    First, it must identify the legislative body's

22  classification of groups. *Madarang v. Bermudes,* 889 F.2d 251, 253 (9th Cir. 1990).

23  Next, it must identify the level of scrutiny applicable to such a classification. *Id.;*

24  *Sherwin-Williams Co. v. City and County of San Francisco,* 857 F.Supp. 1355,1371

25  (N.D. Cal. 1994).

26      Generally, statutes are valid if they have a rational relation to a legitimate

27  governmental purpose.  Statutes are subjected to a higher level of scrutiny if they

28

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1  interfere with the exercise of a fundamental right, such as freedom of speech, or

2  operate to the disadvantage of a suspect class, such as race. *Regan v. Taxation With*

3  *Representation*, 461 U.S. 540, 547, 103 S.Ct. 1997, 2002, 76 L.Ed.2d 129 (1983).

4  Equal protection challenges that do not implicate certain fundamental rights or

5  concern "suspect classifications" are subject only to the same rational basis analysis

6  used for most substantive due process claims. *Schwarz v. Kogan*, 132 F.3d 1387,

7  1393 (11th Cir. 1998), *cert. denied*, 524 U.S. 954 (1998).

8      Here, although plaintiffs attempt to distinguish between employers who receive

9  state funds and lease state property and those who do not, this case does not involve

10  a suspect class. A suspect class is one "saddled with such disabilities, or subjected

11  to such a history of purposeful unequal treatment, or relegated to such a position of

12  political powerlessness as to command extraordinary protection from the majoritarian

13  political process." *San Antonio School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct.

14  1278, 36 L.Ed.2d 16 (1973). Plaintiffs are not members of a suspect class.

15      Moreover, as demonstrated above, AB 1889 does not raise legitimate First

16  Amendment concerns. Therefore, strict scrutiny is inappropriate, and the rational

17  basis test must be applied. *See Federal Election Comm'n v. Int'l Funding Inst., Inc.*,

18  969 F.2d 1110, 1115-16 (D.C. Cir. 1992), *cert. denied,* 506 U.S. 1001 (1992).

19      The rational basis standard is deferential and a challenged statute is presumed

20  to be constitutional. *Lyng v. International Union,* 485 U.S. 360, 379, 108 S.Ct. 1184,

21  99 L.Ed.2d 380 (1988); *Madarang,* 889 F.2d at 253. The plaintiff bears the burden

22  of proving that "the legislative facts upon which the [statute] is apparently based

23  could not reasonably be conceived to be true by the governmental decision maker."

24  *Vance v. Bradley*, 440 U.S. 93, 111, 99 S.Ct. 939, 950, 59 L.Ed.2d 171 (1979). The

25  state is not required to come forth with empirical evidence to show that the facts

26  underlying the restrictions are true. *Id.* at 110-11. Rather, statutes will be upheld if

27  it "might be thought" that enacting them was a rational way to further a legitimate

28

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

interest. See *Williamson v. Lee Optical*, 348 U.S. 483, 488, 75 S.Ct. 461, 99 L.Ed. 563 (1955), *rehearing denied* 349 U.S. 925 (1955).

Here, the Legislature clearly articulated its reasoning for enacting AB 1889 in the uncodified preamble to AB1889.[2]   As evidenced, the Legislature articulated a legitimate governmental interest in enacting this statute. Furthermore, protecting the fiscal integrity of its programs is a legitimate concern of the State. *Lyng*, 485 U.S. 360, 373, citing *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 493, 97 S.Ct. 1898, 1909, 52 L.Ed.2d 513 (1977). AB 1889 is, at a minimum, rationally related to the State's objective of ensuring that State funds are used for its intended purposes, and not used to interfere with employees' decisions to unionize or not unionize.

Furthermore, it is clear that AB 1889 does not favor unions over state funding recipients because labor unions that receive state funds are not exempt from AB 1889, and are prohibited from using state funds to influence its employees. Furthermore, AB 1889 does not require employers to allow a labor organization or union representative access to its property. *See Lechmere, Inc. v. NLRB*, 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992).

Lastly, AB 1889 does not deny state fund recipients and lessees the right to legal counsel; it simply prohibits the use of state funds for the purpose of retaining legal counsel to assist, promote or deter union organizing.

---

2. The uncodified preamble provides:
> "It is the policy of the state not to interfere with an employee's choice about whether to join or to be represented by a labor union. For this reason, the state should not subsidize efforts by an employer to assist, promote, or deter union organizing. It is the intent of the Legislature in enacting this act to prohibit an employer from using state funds and facilities for the purpose of influencing employees to support or oppose unionization and to prohibit an employer from seeking to influence employees to support or oppose unionization while those employees are performing work on a state contract." AB 1889, § 1. See Exh. A to Complaint.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

23

1    Thus, Plaintiffs cannot sustain a claim for violation of their equal protection

2  rights.

3    **C.    AB 1889 Does Not Deny Plaintiffs Due Process of Law.**

4    Plaintiffs' argument that AB 1889 violates the Due Process Clause of the

5  federal Constitution because it prohibits State contractors, recipients, participants, and

6  lessees from consulting with and hiring lawyers is similarly unfounded.

7    Substantive due process challenges that do not implicate fundamental rights

8  are reviewed under the highly deferential "rational basis" standard that is functionally

9  equivalent to the rational basis test in equal protection law.  *Sherwin-Williams Co.,*

10  857 F.Supp. at 1372, citing *Munoz v. Sullivan*, 930 F.2d 1400, 1404 n. 10 (9th Cir.

11  1991).  *See, e.g., TRM, Inc. v. United States*, 52 F.3d 941, 945 (11th Cir. 1995).  In

12  order to survive this minimal scrutiny, the challenged provision need only be

13  rationally related to a legitimate government purpose.  *Id.*  In other words, [t]here is

14  no requirement that the statute actually advance its stated purpose;  rather, the inquiry

15  focuses on whether "the governmental body **could have had no legitimate reason**

16  for its decision."  [In addition], "the law need not be in every respect logically

17  consistent with its aims to be constitutional.  It is enough that there is an evil at hand

18  for correction, and that it **might be thought** that the particular legislative measure

19  was a rational way to correct it."  *Levald, Inc. v. City of Palm Desert,* 998 F.2d 680,

20  690 (9th Cir. 1993), *cert. denied*, 510 U.S. 1093 (1994) (emphasis added) (quoting

21  *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 487-88, 75 S.Ct. 461, 464-65,

22  99 L.Ed. 563 (1955)) (other citations omitted).

23    Contrary to plaintiffs' assertion, AB 1889 does not prohibit a recipient of state

24  funds from exercising its right to consult with and be represented by legal counsel.

25  It does not prohibit state fund recipients from hiring an attorney; they are simply

26  prohibited from using state funds for the purpose of hiring an attorney to assist,

27  promote or deter union organizing.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1    Moreover, there is no due process right to use state funds to consult with or

2  hire an attorney. *Lassiter v. Department of Social Servs.*, 452 U.S. 18, 101 S.Ct.

3  2153, 68 L.Ed.2d 640 (1981), *rehearing denied* 453 U.S. 927 (1981) (Due Process

4  Clause does not require government-funded counsel in parental-status termination

5  proceeding); *Goldberg v. Kelly*, 397 U.S. 254, 270, 90 S.Ct. 1011, 25 L.Ed.2d 287

6  (1970) (Due Process Clause does not require government-funded counsel in welfare

7  hearing). Consequently, plaintiffs cannot establish that AB 1889 violates substantive

8  due process.

9                                  **CONCLUSION**

10   For all the foregoing reasons, defendants respectfully request that this Court

11  grant their motion for summary judgment.

12  DATED:      August 5, 2002            BILL LOCKYER
                                          Attorney General of the State of California
13
                                          TAMMY CHUNG RYU
14                                        CATHERINE Z. YSRAEL
                                          Supervising Deputy Attorneys General
15
                                          SUZANNE M. AMBROSE
16                                        REGINA J. BROWN
                                          RICHARD T. WALDOW
17                                        Deputy Attorneys General

18               By    *[signature]*
19                                        SUZANNE M. AMBROSE
                                          Deputy Attorney General
20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

25