Priority
Send
Enter ——
Closed ——
JS-5/JS-6 ——
JS-2/JS-3 ——
Scan Only——



FILED

SEP 16 2002

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY_____DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| THE CHAMBER OF COMMERCE OF THE U.S., ET AL. <br> Plaintiffs, <br><br> vs. <br><br> BILL LOCKYER, ET AL., <br><br> Defendants. | Case No. SA CV 02-0377-GLT(ANx) <br><br> ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN PART |

ENTER ON ICMS

SEP 18 2002

Plaintiffs' Motion for Summary Judgment is GRANTED in part.

## I.   BACKGROUND

Plaintiffs filed claims for declaratory and injunctive relief regarding Defendants' enforcement of the California Assembly Bill 1889 adding California Government Code § 16645 and following.  AB 1889 prohibits the use of state funds or property to assist, promote, or deter union organizing; allows remedies for such violations; and requires state fund recipients to maintain sufficient records to show

G:\GLTALL\LC1\Civil\2002\02-0377-SJ.wpd

1  state funds were not improperly used under AB 1889.  The Attorney

2  General may request a copy of such records.

3       Plaintiffs bring a Motion for Summary Judgment arguing AB 1889 is

4  unconstitutional under the federal and California Constitutions and

5  preempted by the National Labor Relations Act (NLRA), Labor Management

6  Reporting and Disclosure Act (LMRDA), and the Medicare Act.  Defendants

7  and Intervenors[1] contend Plaintiffs' claims are barred by the 11th

8  Amendment, the abstention doctrine, and Article III standing

9  requirements.[2]

10                          II.  DISCUSSION

11       Summary judgment is proper if "there is no genuine issue as to any

12  material fact and the moving party is entitled to a judgment as a

13  matter of law."  Fed. R. Civ. Proc. 56(c).  A fact is material if it

14  "might affect the outcome of the suit under the governing law."

15  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505,

16  2509, 91 L.Ed.2d 202 (1986).  A factual dispute is genuine "if the

17  evidence is such that a reasonable jury could return a verdict for the

18  nonmoving party."  Id.

19       A.   Preliminary Issues

20       Defendants and Intervenors argue the Court should not consider the

21  merits of the case because Plaintiffs lack standing and Plaintiffs'

22  claims are barred by the Eleventh Amendment and the abstention doctrine.

23

24

25

          [1]The American Federation of Labor and Congress of
26  Industrial Organizations (AFL-CIO) and California Labor Federal,
    AFL-CIO, are Intervenors defending AB 1889.
27
          [2]Defendants and Intervenors motions to strike certain
28  evidence tendered by Plaintiffs is DENIED. Such evidence does not
    change the outcome of this Order.

1        1.    11th Amendment

2        Defendants argue the Eleventh Amendment prevents the Court from

3   considering Plaintiffs' claim based on violations of the California

4   Constitution.   The Eleventh Amendment has been interpreted as a grant of

5   sovereign immunity to the states against suit in federal court.   See

6   Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).   State

7   officials may be subject to suits for declaratory and injunctive relief

8   where enforcement of state law would violated the U.S. Constitution or

9   federal statutes, Ex Parte Young, 209 U.S. 123, 166 (1908); Idaho v.

10  Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 281 (1997), but the Eleventh

11  Amendment bars suits in federal court against state officials based on

12  claimed violations of state law.   Pennhurst State School & Hosp. v.

13  Halderman, 465 U.S. 89, 121 (1984); Central Reserve Life of North

14  America Ins. Co. v. Struve, 852 F.2d 1158, 1161 (9th Cir. 1988).   The

15  Court will not take into account arguments based on violation of state

16  law in considering the parties' motions for summary judgment.

17       2.    Standing

18       Three components compose the constitutional minimum of Article III

19  standing:

20       "First, the plaintiff must have suffered an 'injury in fact'--an

21       invasion of a legally protected interest that is (a) concrete and

22       particularized, and (b) actual or imminent, not conjectural or

23       hypothetical.   Second, there must be a causal connection between

24       the injury and the conduct complained of . . . .   Third, it must

25       be likely, as opposed to merely speculative, that the injury will

26       be redressed by a favorable decision."

27  U.S. v. Hays, 515 U.S. 737, 742-43 (1995)(quoting Lujan, 504 U.S. at

28  560-561).   The party seeking the exercise of jurisdiction in his favor

1  has the burden of demonstrating his standing.  Hays, 515 U.S. at 743.

2  An organization that has not suffered any injury itself may sue in a

3  representative capacity for injuries to its members if at least one

4  member has standing to present the claim asserted by the association,

5  the interests sought to be protected are germane to the association's

6  purpose, and neither the claim asserted nor the relief requested

7  requires the members' individual participation in the suit.  Hunt v.

8  Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977).

9       Plaintiffs apparently would not have standing to challenge

10  §§16645.1, 16645.3, and 16645.4, governing reimbursement, activities,

11  and expenditures of state contractors.  Plaintiffs claims standing to

12  challenge these sections "based on the danger they are applicable" and

13  may be interpreted to cover one or more of Plaintiffs, but do not

14  present facts to support this contention.  The injury posed by this

15  potential interpretation is "conjectural or hypothetical," and is not

16  sufficient to satisfy the injury-in-fact component of standing.  See

17  Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-560 (1992).

18       Plaintiffs also apparently would lack standing to challenge Gov.

19  Code §16645.6, a provision of AB 1889 prohibiting public employers

20  receiving state funds from using those funds to "assist, promote, or

21  deter union organizing," because the only public employers in the case,

22  members of Plaintiff California Healthcare Association (CHA) are

23  political subdivisions of the state.  As political subdivisions of the

24  state, members of Plaintiff CHA do not have standing to sue the state

25  in federal court.  City of South Lake Tahoe v. California Tahoe Regional

26  Planning Agency, 625 F.2d 231, 233 (9th Cir. 1980); Palomar Pomerado

27

28

1  Health System v. Belshe, 180 F.3d 1104, 1108 (9th Cir. 1999).[3/]

2       However, Plaintiffs do have standing to challenge the remaining

3  provisions of AB 1889.  When any plaintiff has standing, the standing

4  requirement is satisfied for all other plaintiffs who are proper parties

5  on the same complaint because "the presence of one party with standing

6  assures that [the] controversy before [the court] is justiciable."

7  Department of Commerce v. United States House of Representatives, 525

8  U.S. 316, 328 (1999); Village of Arlington Heights v. Metropolitan

9  Housing Develop. Corp., 429 U.S. 252, 264 (1977).  At least one

10 Plaintiff, the United States Chamber of Commerce ("U.S. Chamber"), has

11 standing to challenge the remaining provisions of AB 1889, which govern

12 recipients of state funds grants, employers conducting business on state

13 property, and private employers receiving state funds in excess of

14 $10,000.  Various U.S. Chamber members receive grants of state funds,

15 conduct business on state property, receive state funds in excess of

16 $10,000, currently use state funds in union-related activities, and do

17 not keep records of the use of state funds.  See Antonek Decl. ¶¶ 3-6;

18 Hunte Decl. ¶¶2-4; Kampas Decl. Exh. B, C.  The parties do not dispute

19 Defendant Attorney General Lockyer intends to enforce AB 1889, and has

20 done so through accounting demands and litigation.  Plaintiffs have

21 demonstrated an injury in fact redressable by this Court, and have

22 standing to proceed.

23 _____

24 [3/]Plaintiffs incorrectly cite Star-Kist Foods, Inc. v.
   County of Los Angeles, 42 Cal.3d 1, 7-8 (1986), as California
25 Supreme Court authority rejecting South Lake Tahoe.  In Star-
   Kist, the California Supreme Court exempted Supremacy Clause
26 challenges from the South Lake Tahoe "no standing" rule because
   at that time, the Ninth Circuit had not yet applied the rule to a
27 Supremacy Clause challenge.  Id., at 8.  The Ninth Circuit has
   since held no such exemption exists for Supremacy Clause
28 challenges.  See Palomar Pomerado Health System v. Belshe, 180
   F.3d 1104, 1108 (9th Cir. 1999).

3.    <u>Abstention</u>

Defendants and Intervenors contend this Court should abstain from hearing the claims of Plaintiff California Association of Healthcare Facilities (CAHF) pursuant to <u>Younger v. Harris</u>.  401 U.S. 37 (1971)(explaining a federal court should not enjoin or interfere with pending state proceedings).  <u>Younger</u> provides a federal court should abstain from review and dismiss an action if the  federal action would "directly interfere with ongoing state judicial proceedings" involving identical constitutional issues, and the state court can address the federal parties' claims.  <u>See</u> <u>id.</u> If the <u>Younger</u> standard is met, the Court does not have discretion to retain jurisdiction.  <u>See</u> <u>Green v. City of Tucson</u>, 255 F.3d 1086, 1092-93 (9th Cir. 2001).

Defendants and Intervenors argue the Court should dismiss CAHF because Summit Care California, Inc. and Brier Oak Convalescent Inc., defendants and cross-complainants in <u>Lockyer v. Summit Care California, Inc., et al.</u>, a pending state court action concerning AB 1889, are members of CAHF.[4/]  As stated in this Court's July 2, 2002 Order, if membership in a Plaintiff association is established, such relief would directly interfere with the <u>Lockyer</u> action because any relief this Court would award in favor of Plaintiffs would operate to enjoin the pending state proceedings involving Fountain View. <u>See</u> <u>Cornwell v. Cal. Bd. of Barbering and Cosmetology</u>, 962 F.Supp. 1260, 1271 (S.D. Cal. 1997). Defendants have not established such membership. There is evidence the

---

[4/]During the briefing period for the motion and cross-motions for summary judgment, the state action, formerly <u>Lockyer v. Fountain View</u>, was amended to substitute Summit Care and Brier Oak as defendants in place of Fountain View.  Parties to the current state action have stipulated the new defendants will assert the same claims and cross-complaint as did the original defendant Fountain View. <u>See</u> Def. Request for Judicial Notice, Exh. 4, 5.

1  state defendants own or operate three skilled nursing facilities that

2  are members of CAHF, see Armentrout Decl. ¶¶ 6-7., but the Court's view

3  is this is not enough.  There is no evidence the state defendants

4  themselves are members of CAHF.

5      Defendants and Intervenors also argue for the Court's abstention

6  based on Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 500

7  (1941).  Pullman abstention is appropriate only when (1) the complaint

8  involves a sensitive area of social policy, (2) a federal constitutional

9  issue could be mooted or narrowed by a definitive state court ruling on

10 state law issues, and (3) proper resolution of the potentially

11 determinative state law issue is uncertain.  Fireman's Funds Ins. Co. v.

12 City of Lodi, 271 F.3d 911, 928 (9th Cir. 2001).  Abstention is not

13 proper when the issue is one of federal preemption because preemption is

14 not considered a "constitutional issue."  United States v. Morros, 268

15 F.3d 695, 704 (9th Cir. 2001).  Abstention is also inappropriate in

16 First Amendment cases because the guarantee of free expression is an

17 area of particular federal concern rather than simply a sensitive area

18 of state social policy.  See Ripplinger v. Collins, 868 F.2d 1043, 1048

19 (9th Cir. 1989); Yniquez v. Arizonans for Official English, 69 F.3d 920,

20 930-931 (9th Cir. 1995).  Plaintiffs challenge AB 1889 on preemption and

21 First Amendment grounds.  It is proper for the Court to retain

22 jurisdiction over the Plaintiffs' claims.

23     B.    Preemption

24     The Court finds AB 1889 is preempted by the National Labor

25     Relations Act (NLRA).

26     Two types of preemption are recognized under the NLRA.  "Garmon

27 preemption" forbids state regulation of activities actually or

28 "arguably" protected by §7 of the NLRA or constitute an unfair labor

1  practice under §8.  Building & Trades Council v. Associated Builders

2  ("Boston Harbor"), 507 U.S. 218, 224-225 (1993); see also San Diego

3  Building Trades Council v. Garmon, 359 U.S. 236, 243-244 (1959).

4  "Machinist preemption" prohibits state and municipal regulation of

5  activities not protected or regulated by the NLRA if Congress intended

6  for these activities to remain unregulated.  Building & Trades Council,

7  507 U.S. at 225-226; see also Machinists v. Wisconsin Employment

8  Relations Comm'n, 427 U.S. 132, 138 (1976).

9     The NLRA §8(c) provides, "the expressing of any views, argument,

10 or opinion, or the dissemination thereof... shall not constitute or be

11 evidence of an unfair labor practice... if such expression contains no

12 threat of reprisal or force or promise of benefit."  29 U.S.C. §158(c).

13 The Supreme Court has held "the enactment of s 8(c) manifests a

14 congressional intent to encourage free debate on issues dividing labor

15 and management."  Linn v. United Plant Guard Workers of America, Local

16 114, 383 U.S. 53, 62 (1966).

17    AB 1889 would prevent this free debate.  AB 1889 defines "assist,

18 promote or deter union organizing" to mean "any attempt by an employer

19 to influence the decision of its employees" relating to labor

20 organizations.  Gov. Code §16645(a).  The parties do not dispute this

21 definition includes attempts by the employer to influence employee

22 decisions through speech.  The parties also do not dispute AB 1889

23 prohibits such speech while the employer is being compensated with state

24 funds or while the employer is on state property.  AB 1889 is preempted

25 because it regulates employer speech about union organizing under

26 specified circumstances, even though Congress intended free debate.

27    Defendants and Intervenors argue Machinist is inapplicable here

28 because the state is merely controlling the use of state funds, and is

1  acting in a proprietary capacity as a "market participant." <u>See</u> <u>Boston</u>

2  <u>Harbor</u>, <u>supra</u>, at 229 (holding <u>Machinist</u> preemption apply only when the

3  state acts as a regulator rather than as a "market participant with no

4  interest in setting policy").

5      In <u>Boston Harbor</u>, the Supreme Court held the NLRA did not preempt

6  enforcement by the Massachusetts Water Resources Authority, acting as

7  owner of a construction project, of an otherwise lawful prehire

8  collective-bargaining agreement negotiated by private parties. <u>Id.</u> at

9  232.  Unlike the challenged enforcement action in <u>Boston Harbor</u>, AB 1889

10  is not "specifically tailored to one particular job." <u>Id.</u>

11      AB 1889 is a regulatory statute similar to the Wisconsin statute

12  debarring repeat offenders of the NLRA from doing business with the

13  state, held to be preempted by the NLRA in <u>Wisconsin Dept. of Industry</u>

14  <u>v. Gould</u>, 475 U.S. 282, 287 (1986).  The Court rejected Wisconsin's

15  contention the statutory scheme escapes preemption because "it is an

16  exercise of the State's spending power rather than its regulatory

17  power," and focused instead on the "rigid and undiscriminating manner in

18  which the statute operates." <u>Id.</u>  In the Ninth Circuit, regulation

19  for purposes of preemption law includes "traditional enactment of laws,

20  ordinances, rules, and other legislative and administrative measures."

21  <u>Alameda Newspapers, Inc. v. City of Oakland</u>, 95 F.3d 1406, 1413 (9 Cir.

22  1996).[5/]  AB 1889 is a traditional legislative enactment, not a

23  proprietary act.

24

25

26  [5/]The recent D.C. Circuit decision cited by Defendants,
<u>Building & Construction Trades Dept., AFL-CIO v. Allbaugh</u>, 295

27  F.3d 28, 35 (D.C. Cir. 2002)(upholding Executive Order affecting
specific contracts in federally-funded construction contracts,

28  reasoning the government is acting in a proprietary capacity when
it controls the use of its funds), is not controlling.

1    It is true Congress has imposed similar restrictions as AB 1889

2    imposes.    Intervenors cite three federal statutes restricting the use of

3    particular federal program funds to "assist, promote, or deter union

4    organizing."[6]    See 29 U.S.C.§2931(b)(7) ("Each recipient of funds under

5    [the Workforce Investment Act] shall provide to the Secretary assurances

6    that none of such funds will be used to assist, promote, or deter union

7    organizing."); 42 U.S.C. §9839(e) ("Funds appropriated to carry out [the

8    Head Start Programs Act] shall not be used to assist, promote, or deter

9    union organizing."); 42 U.S.C. §12634(b)(1) ("Assistance provided under

10    [the National Community Service Act] shall not be used by program

11    participants and program staff to assist, promote, or deter union

12    organizing."). Such restrictions may show Congress approves of federal

13    restrictions in those areas, but that is not inconsistent with the

14    doctrine of preemption.    If anything, it supports the view that Congress

15    intended to regulate the field, and Congress, rather than the states,

16    will impose the restrictions if they are to be imposed.[7]

17                           III. DISPOSITION

18        Except for Gov. Code §§16645.1, 16645.3, 16645.4, and §16645.6,

19    Plaintiffs' motion for summary judgment that the remaining provisions of

20    //

21    //

22    //

23    //

24

---

25        [6]The fourth statute cited by Intervenors, 29 U.S.C.
26    §1553(c)(1), was repealed in 1998.    Pub.L. 105-220, Title I,
      §199(b)(2), Aug. 7, 1998, 112 Stat. 1059.

27        [7]The express Congressional approval of state provisions in
28    De Veau v. Braisted, 363 U.S. 144 (1960), is distinguishable from
      this case.

G:\GLTALL\LC1\Civil\2002\02-0377-SJ.wpd                    10

1 | AB 1889 are preempted by the NLRA is GRANTED.[8]

2

3 | DATED: September __16__, 2002.

4

5 | GARY L. TAYLOR
UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

_____

25 | [8]AB 1889 contains a severability clause providing If any section or portion of this chapter... is held invalid... that invalidity shall not [a]ffect any other section." Gov. Code §16649. The Court does not decide whether AB 1889 is preempted by the Labor Management Reporting and Disclosure Act or the Medicare and Medicaid Act, whether AB 1889 violates the federal Constitution, or whether declaratory or injunctive relief would be appropriate.

26

27

28

G:\GLTALL\LC1\Civil\2002\02-0377-SJ.wpd

11